# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

Andrew Bridge, et al.,

    *Plaintiffs,*

        v.

Oklahoma State Department of
Education, et al.,

    *Defendants.*

Case No.: CIV-22-787-JD

## <u>PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS</u>

Jon W. Davidson (*pro hac vice*)
(admitted only in California)
Taylor Brown (*pro hac vice*)
American Civil Liberties Union Foundation
120 Broad Street, 18th Floor
New York, NY 10005-3919
Telephone: (323) 536-9880
Facsimile: (212) 809-0055
jondavidson@aclu.org
tbrown@aclu.org

Megan Lambert
Bar Number 33216
Johanna Roberts
Bar Number 33599
American Civil Liberties Union of
Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
Mlambert@acluok.org
Hroberts@acluok.org

Paul D. Castillo (*pro hac vice*)
Lambda Legal Defense and
Education Fund, Inc.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
Telephone: (214) 219-8585
Facsimile: (214) 481-9140
pcastillo@lambdalegal.org

Mitchell A. Kamin (*pro hac vice*)
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
mkamin@cov.com

Isaac D. Chaput (*pro hac vice*)
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
ichaput@cov.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...............................................................1

II.    BACKGROUND ......................................................................................2

III.    LEGAL STANDARD ..............................................................................3

IV.    THE STATE DEFENDANTS FAIL TO GRAPPLE WHATSOEVER WITH THE STUDENTS' FACTUAL ALLEGATIONS ........................................3

V.    THE STUDENTS HAVE MORE THAN ADEQUATELY ALLEGED VIOLATION OF THE EQUAL PROTECTION CLAUSE. ...................................6

    A.    SB 615 and the State Defendants' conduct enforcing it intentionally discriminate against transgender students. ....................................6

    B.    Heightened scrutiny must be applied to SB 615 and the State Defendants' discrimination against the Students. .......................................11

    C.    The State Defendants cannot establish that SB 615 and their conduct enforcing it are constitutional as a matter of law. ........................................13

VI.    THE STUDENTS HAVE PROPERLY PLED FACTS THAT CONSTITUTE SEX DISCRIMINATION UNDER TITLE IX. ..........................17

    A.    *Bostock* applies with considerable, if not decisive, force to Title IX..........19

    B.    SB 615 discriminates against transgender students on the basis of sex................................................................................20

    C.    Title IX's regulation authorizing separate restrooms does not permit sex discrimination against transgender students. .......................................23

    D.    The State Defendants advance the same errors rejected by *Bostock*. .........24

VII.    CONCLUSION ......................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                              Page(s)

*A.M. v. Holmes,*
   830 F.3d 1123 (10th Cir. 2016) .................................................. 9

*Abdi v. Wray,*
   942 F.3d 1019 (10th Cir. 2019) .................................................. 3

*Adams v. Sch. Bd. of St. Johns Cty., Fla.,*
   3 F.4th 1299 (11th Cir. 2021) .................................................. 10

*Alvarado v. KOB-TV, L.L.C.,*
   493 F.3d 1210 (10th Cir. 2007) .................................................. 4

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................. 3

*Auwae v. Metro. Life Ins. Co.,*
   441 F. Supp. 3d 1188 (D. Colo. 2020) .................................................. 3

*Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.,*
   956 F.3d 1228 (10th Cir. 2020) .................................................. 3

*Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.,*
   208 F. Supp. 3d 850 (S.D. Ohio 2016) .................................................. 10

*Bishop v. Okla. ex rel. Edmondson,*
   447 F. Supp. 2d 1239 (N.D. Okla. 2006) .................................................. 5

*Bostock v. Clayton Cty., Ga.,*
   140 S. Ct. 1731 (2020) ..................................................*passim*

*Bray v. Alexandria Women's Health Clinic,*
   506 U.S. 263 (1993) .................................................. 8

*Burlington N. & Santa Fe Ry. Co. v. White,*
   548 U.S. 53 (2006) .................................................. 21

*Carcaño v. Cooper,*
   2019 WL 3302208 (M.D.N.C. July 23, 2019) .................................................. 14

*Carcaño v. McCrory,*
   203 F. Supp. 3d 615 (M.D.N.C. 2016) .................................................. 14

ii

*City of Los Angeles v. Patel*,
576 U.S. 409 (2015) ........................................................................................ 8

*Davis v. Monroe Cty. Bd. of Educ.*,
526 U.S. 629 (1999) ...................................................................................... 20

*Dodds v. U.S. Dep't of Educ.*,
845 F.3d 217 (6th Cir. 2016) ................................................................. 10, 19

*Doe v. Boyertown Area Sch. Dist.*,
897 F.3d 518 (3rd Cir. 2018) ................................................................. 13, 15

*Doe v. Sch. Dist. No. 1, Denver, Colo.*,
970 F.3d 1300 (10th Cir. 2020) ..................................................................... 6

*Doe v. Univ. of Denver*,
1 F.4th 822 (10th Cir. 2021) ........................................................................ 22

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,
884 F.3d 566 (6th Cir. 2018) ......................................................................... 8

*Etsitty v. Utah Transit Auth.*,
502 F.3d 1215 (10th Cir. 2007) ................................................................... 10

*Evancho v. Pine-Richland Sch. Dist.*,
237 F. Supp. 3d 267 (W.D. Pa. 2017) ............................................... 10, 14, 15

*Frappied v. Affinity Gaming Black Hawk, LLC*,
966 F.3d 1038 (10th Cir. 2020) ............................................................. 20, 22

*Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*,
916 F.3d 792 (10th Cir. 2019) ............................................................... 12, 13

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998) ...................................................................................... 20

*Glenn v. Brumby*,
663 F.3d 1312 (11th Cir. 2011) ................................................................... 10

*Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*,
245 F.3d 1172 (10th Cir. 2001) ................................................................... 19

*Grimm v. Gloucester Cty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) ................................................................*passim*

*A.H. ex rel. Handling v. Minersville Area Sch. Dist.,*
    408 F. Supp. 3d 536 (M.D. Pa. 2019) .................................................................. 10, 14

*Hogan v. Okla. Dep't of Corr.,*
    24 F. App'x 984 (10th Cir. 2002) .................................................................. 4

*Johnston v. Univ. of Pittsburg of Commonwealth Sys. of Higher Educ.,*
    97 F. Supp. 3d 657 (W.D. Pa. 2015) .......................................................... 14, 15

*Michael M. v. Superior Ct. of Sonoma Cty.,*
    450 U.S. 464 (1981) ...................................................................................... 14, 15

*Miss. Univ. for Women v. Hogan,*
    458 U.S. 718 (1982) ...................................................................................... 12

*N. Haven Bd. of Educ. v. Bell,*
    456 U.S. 512 (1982) ...................................................................................... 25

*Obergefell v. Hodges,*
    576 U.S. 644 (2015) ...................................................................................... 8, 16

*Olmstead v. L.C. ex rel. Zimring,*
    527 U.S. 581 (1999) ...................................................................................... 19

*Oncale v. Sundowner Offshore Servs., Inc.,*
    523 U.S. 75 (1998) ........................................................................................ 21

*Parents for Privacy v. Barr,*
    949 F.3d 1210 (9th Cir. 2020) .................................................................... 13

*Price Waterhouse v. Hopkins,*
    490 U.S. 228 (1989) ...................................................................................... 8

*Ray v. McCloud,*
    507 F. Supp. 3d 925 (S.D. Ohio 2020) ...................................................... 12

*United States ex rel. Reed v. KeyPoint Gov't Sols.,*
    923 F.3d 729 (10th Cir. 2019) .................................................................... 3

*Roberts v. Clark Cty. Sch. Dist.,*
    215 F. Supp. 3d 1001 (D. Nev. 2016) ........................................................ 7

*Sch. of the Ozarks, Inc. v. Biden,*
    41 F.4th 992 (8th Cir. 2022) ........................................................................ 19

*Smith v. City of Salem, Ohio*,
378 F.3d 566 (6th Cir. 2004) ................................................................ 8, 10

*Sommers v. Budget Mktg., Inc.*,
667 F.2d 748 (8th Cir. 1982) .................................................................... 10

*Tennessee v. United States Dep't of Educ.*,
2022 WL 2791450 (E.D. Tenn. July 15, 2022) .......................................... 24

*Tudor v. Se. Okla. State Univ.*,
13 F.4th 1019 (10th Cir. 2021) .......................................................... 10, 22

*Turner v. Randolph*,
195 F. Supp. 677 (W.D. Tenn. 1961).......................................................... 17

*Ulane v. E. Airlines, Inc.*,
742 F.2d 1081 (7th Cir. 1984) .................................................................. 10

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988).................................................................................... 20

*United States v. Gordon*,
638 F.2d 886 (5th Cir. 1981) .................................................................... 24

*United States v. Virginia*,
518 U.S. 515 (1996)................................................................................ 8, 12

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013).................................................................................... 19

*Vitolo v. Guzman*,
999 F.3d 353 (6th Cir. 2021) .................................................................... 12

*Walker v. BOKF, Nat'l Ass'n*,
30 F.4th 994 (10th Cir. 2022) ...................................................................... 6

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
858 F.3d 1034 (7th Cir. 2017) ..........................................................*passim*

## STATUTES

20 U.S.C. § 1681 ......................................................... 17, 21, 22, 23

42 U.S.C. § 2000e-2 ........................................................................ 22

**OTHER AUTHORITIES**

34 C.F.R. § 106.33 ................................................................................................. 23, 24

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 3, 4, 5, 16

## I.     PRELIMINARY STATEMENT

Plaintiffs Andy Bridge, Mark Miles, and Sarah Stiles (collectively, the "Plaintiffs" or "Students") are Oklahoma public school or public charter school students. Like any other Oklahoma student, each is entitled to an education free from discrimination. But SB 615 prevents the Students from being treated like other Oklahoma students and violates their constitutional and statutory rights. As alleged in the Complaint, the State Defendants have refused to treat the Students like other similarly-situated Oklahoma students based solely on certain sex- and gender-related characteristics—the fact that their true sex and gender identity are incongruent with the sex they were assigned at birth, their transgender status, and their nonconformity with certain sex stereotypes. The State Defendants' policies and actions have denied the Students equal protection of the law based on their sex and transgender status in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and subjected the Students to discrimination on the basis of sex, in violation of Title IX of the Education Amendments of 1972 ("Title IX").

In moving to dismiss the Complaint, the State Defendants rely on ad hominem attacks against transgender people, bald assertions that directly conflict with the Students' factual allegations, and legal arguments that have been rejected by countless courts across the country addressing the exact type of discrimination alleged here. Because the Students' factual allegations must be accepted as true at this juncture and because the Students have more than adequately pled claims under the Equal Protection Clause and Title IX, the State Defendants' Motion to Dismiss should be denied.

## II.     BACKGROUND[1]

Plaintiff Andy Bridge is a registered student at Noble High School. ECF No. 1 ¶ 61 (the "Compl."). Andy is a boy who is transgender. *Id.* ¶ 60. Andy consistently used the boys' restroom at school for the entire 2021 school year with the knowledge and support of school administration. *Id.* ¶ 68. Plaintiff Mark Miles is a high school student enrolled at Moore Public Schools. *Id.* ¶ 73. Mark is a boy who also is transgender. *Id.* ¶ 72. Mark began using the boys' restroom at the start of the 2021 school year. He always used one of the stalls, as he continues to do in every other setting where he uses the male restrooms. *Id.* ¶ 82. Plaintiff Sarah Stiles is a student enrolled at Independence Charter Middle School ("ICMS"), which is operated by Harding Independence Charter District, Inc. ("HICD"). *Id.* ¶ 92. Sarah is a girl who is transgender as well. *Id.* ¶ 91. Prior to enrolling at ICMS for the 2022 school year, Sarah's mother was assured by school administration that Sarah would be able to use the multiple occupancy girls' restrooms. *Id.* ¶ 99. On August 10, 2022, Sarah used the girls' restroom at ICMS without incident during the school day. *Id.* ¶ 100.

On May 25, 2022, SB 615 went into effect, mandating that each Oklahoma public school and public charter school serving pre-kindergarten through twelfth grade students designate all multiple occupancy restrooms exclusively for the use of either the "male sex" or the "female sex," defined by SB 615 as "the physical condition of being male or female based on genetics and physiology, as identified on the individual's original birth certificate." *Id.* ¶ 3. On August 25, 2022, the State Board of Education adopted emergency

---

[1] The Students incorporate by reference the Statement of Facts set forth in their Motion for Preliminary Injunction. *See* ECF No. 24 at 3–11.

rules governing the implementation of SB 615 in public schools and public charter schools. *Id.* ¶ 54. Each of the Students' respective schools has since implemented disciplinary policies effectuating SB 615. *Id.* ¶¶ 69, 88–89, 101.

## III.   LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint does not need "detailed factual allegations," *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020); rather, "so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard." *Auwae v. Metro. Life Ins. Co.*, 441 F. Supp. 3d 1188, 1191 (D. Colo. 2020). The Court must view "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff], accepting the plaintiff's well-pled facts as true and drawing all reasonable inferences in the non-moving party's favor." *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019).

## IV.   THE STATE DEFENDANTS FAIL TO GRAPPLE WHATSOEVER WITH THE STUDENTS' FACTUAL ALLEGATIONS.

As the State Defendants concede, the relevant inquiry on a motion to dismiss is whether the complaint contains "sufficient factual matter" to withstand a challenge to the

pleadings. *See* ECF No. 47 at 3 (the "Mot."). Accordingly, in seeking dismissal, the defendant must demonstrate that the particular factual allegations fail to state a plausible claim for relief. Yet the Motion completely ignores the Students' factual allegations. Nor do the State Defendants argue that the Students' claims fail as a matter of law, assuming all of the factual allegations were accepted as true. The State Defendants have failed to satisfy their burden under Rule 12(b)(6). The Motion should be denied on this basis alone.

The State Defendants cite only a few stray paragraphs from the nearly 150-paragraph complaint. *See* Mot. at 8, 13, 15, 18, 19, 20 (citing Compl. ¶¶ 24–25, 52, 59, 131–33). The Motion does not once address the Students' experiences of discrimination by Oklahoma schools on the basis of their gender. The Motion disregards the policies adopted by Noble Public Schools, Moore Public Schools, and HICD in response to SB 615. And the Motion is devoid of any explanation for why the factual allegations, accepted as true, fail to give rise to claims under the Equal Protection Clause or Title IX. The State Defendants cannot carry their burden of demonstrating the inadequacy of the Students' factual allegations by ignoring those allegations. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007) ("[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.").

Rather than confronting the Students' factual allegations, the Motion rests on the State Defendants' bald assertions that the Students cannot ultimately prevail on their constitutional and statutory claims. Such arguments are entirely premature at this initial stage of the proceedings and must await summary judgment, at the earliest. *See Hogan v. Okla. Dep't of Corr.*, 24 F. App'x 984, 985 (10th Cir. 2002) ("Factual disputes between

the parties cannot be resolved in a motion to dismiss."); *see also Bishop v. Okla. ex rel. Edmondson*, 447 F. Supp. 2d 1239, 1258 (N.D. Okla. 2006), *rev'd on other grounds*, 333 F. App'x 361 (10th Cir. 2009) (denying motion to dismiss equal protection claim because "such challenges are more appropriately decided at the summary judgment stage").

The State Defendants argue that SB 615 should withstand constitutional scrutiny because the legislation purportedly "protect[s] the privacy of students to disrobe and shower outside of the presence of the opposite sex." Mot. at 11. But the Students allege that purported "privacy" and "safety" concerns "are unfounded pretext to target students who are transgender" and that "SB 615 and Defendants' respective policies do not promote the safety or privacy of students or any other valid governmental interest." Compl. ¶¶ 52, 134.[2] This factual dispute cannot be resolved at the pleadings stage and will require discovery to resolve. Moreover, the State Defendants repeatedly reference the amorphous term "biological sex" as the relevant focus for the Students' claims. *See, e.g.*, Mot. at 1.[3] But the Students made specific, factual allegations regarding their sex. Compl. ¶¶ 60, 72, 91. The State Defendants simply ignore these well-pled allegations and instead attack the pleadings based on their counsel's *ipse dixit*. Such an approach is divorced from the Rule

---

[2] Additionally, while the Complaint occasionally refers to multiple occupancy facilities or changing rooms, the Students clarify that they will not seek any relief in this action that applies beyond multiple occupancy restrooms because none of the Students currently has any occasion or need to access multiple occupancy facilities at their schools other than restrooms. This is consistent with the Motion for Preliminary Injunction, which seeks relief as to the ability to access multiple occupancy school restrooms. *See* ECF No. 24 at 25.

[3] The Motion repeatedly uses the term "biological sex" to distinguish those who are male from those who are female. That meaning of "biological sex" is a politicized one, not one grounded in science (or even reflected in SB 615). As the Students allege, "there is a medical consensus that there is a significant *biologic* component underlying gender identity." Compl. ¶ 25 (emphasis added). This factual allegation must be accepted as true.

12(b)(6) standard. The Court's role at this stage "is not to weigh potential evidence that the parties might present at trial" but instead to assess whether the "complaint alone is legally sufficient to state a claim for which relief may be granted." *Walker v. BOKF, Nat'l Ass'n*, 30 F.4th 994, 1002 (10th Cir. 2022); *see also Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1311 (10th Cir. 2020) ("[T]he plaintiff is not required to prove her case at the motion-to-dismiss stage."). The Complaint easily clears this threshold.

## V.   THE STUDENTS HAVE MORE THAN ADEQUATELY ALLEGED VIOLATION OF THE EQUAL PROTECTION CLAUSE.

### A.   SB 615 and the State Defendants' conduct enforcing it intentionally discriminate against transgender students.

The Students allege that Andy Bridge is a boy, Compl. ¶¶ 12, 60; Mark Miles is a boy, *id*. ¶¶ 13, 72; and Sarah Stiles is a girl, *id*. ¶¶ 14, 91. The Students further allege that each of them is transgender. *Id.* ¶¶ 12–14, 60, 72, 91. The Students also allege that "Defendants' exclusion of students who are transgender, including Plaintiffs, from the multiple occupancy facilities aligned with their gender treats students who are transgender differently from similarly-situated students who happen to be cisgender" because "[u]nder Defendants' discriminatory policies, students who are cisgender are able to use multiple occupancy facilities consistent with their gender, but students who are transgender are banned from multiple occupancy facilities consistent with their gender." *Id.* ¶ 131. Thus, the State Defendants' contention that, under SB 615, "all male classmates are treated the exact same regardless of their gender identity," Mot. at 5, is simply incorrect according to the Students' well-pled allegations. As a result of SB 615, students with a male gender identity who were identified at birth as female are not allowed to use their schools' multiple

occupancy restrooms for males, whereas other students with a male gender identity are permitted to use those restrooms because they were identified as that sex at birth. This is not the same treatment of all male students. The differential treatment rests on the relationship between the sex students were assigned at birth and their gender identity. This necessarily constitutes discrimination based on sex because SB 615 explicitly takes sex into account in its restriction on access to multiple occupancy restrooms, whether that refers to the sex a student was identified as at birth or the difference between that sex and their gender identity. Compl. ¶ 132(a)–(b). It does not matter that SB 615 references "physiology" in distinguishing who may use which restroom. *Roberts v. Clark Cty. Sch. Dist.*, 215 F. Supp. 3d 1001, 1015 (D. Nev. 2016) (discrimination "based on [plaintiff's] genitalia, not his status as a transgender person, [was] a distinction without a difference").

The Students further allege that SB 615 discriminates against them based on transgender status, gender conformity, and sex stereotypes, which the Motion ignores. Compl. ¶¶ 132(c)–(d), 133. SB 615 and the State Defendants' conduct enforcing it deny the Students access to multiple occupancy restrooms they would otherwise use because they are transgender rather than cisgender, which discriminates against them based on transgender status. SB 615 and the State Defendants' enforcement of it also discriminate based on gender conformity and sex stereotypes because SB 615 treats worse those who do not conform to the gender-based expectation and the sex stereotype that people will forever identify as, and act consistently with, the sex they were identified as at birth, as well as treating them worse based on the gender-based expectation and sex stereotype that people should always have identified as, and been identified as, the sex they know

themselves to be. These forms of discrimination are independent grounds for finding a violation of the Equal Protection Clause, and they have been recognized by various courts as forms of sex discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 272 (1989) (discrimination based on gender non-conformity and sex stereotyping is a form of sex discrimination); *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 566, 576–77 (6th Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731 (2020) (same); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 572–74 (6th Cir. 2004) (same).

This discrimination is not simply due to a disparate impact of SB 615. Mot. at 9. Rather, the Students allege that this discrimination *targets* them because they are transgender. Compl. ¶ 2. A statute need not expressly reference the group it discriminates against to constitute intentional disparate treatment that discriminates against members of that group. *Obergefell v. Hodges*, 576 U.S. 644, 675 (2015) (restricting marriage to different-sex couples discriminates based on sexual orientation even though heterosexuals were equally constrained from marrying someone of the same sex); *United States v. Virginia*, 518 U.S. 515, 542 (1996) (men's college discriminates based on sex even though "many men would not want to be educated" there); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) ("A tax on wearing yarmulkes is a tax on Jews."). A law must be evaluated by those it harms, not those it does not affect. *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015) ("The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant.").

SB 615 solely restricts the ability of students whose original birth certificate does not match their gender identity from accessing multiple occupancy school restrooms. SB

615 and the State Defendants' conduct enforcing it restrict the ability of a boy like Plaintiff Andy Bridge to use the boys' restroom at school—something he regularly did in the past, Compl. ¶ 68—only because he is transgender, whereas boys who are not transgender are not so restricted. *Id.* ¶¶ 54, 58, 131. SB 615 affects only transgender students and therefore intentionally treats them differently than students who are not transgender. This violates the U.S. Constitution's core guarantee regarding governmental action burdening "certain classes of citizens." *A.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016).

Numerous federal appellate and district courts—which the State Defendants almost totally ignore, *see* Mot. at 24–25—have held that restrictions on transgender students' access to multiple occupancy restrooms matching their gender identity discriminate based on sex, transgender status, gender conformity, and/or sex stereotypes and violate or likely violate the Equal Protection Clause. *See Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051, 1054 (7th Cir. 2017), *abrogation on other grounds recognized by Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) (limitation on use of restroom based upon sex on birth certificate "is inherently based upon a sex-classification" because it "cannot be stated without referencing sex," and transgender student likely would succeed on equal protection claim).[4] By contrast, the State Defendants

---

[4] *See also, e.g.*, *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 608, 610, 616 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021) (holding that school's refusal to allow transgender boy to use boys' restroom at school "on its face" created "sex-based classification[]," that transgender boy was "similarly situated to other boys, but was excluded from using the boys restroom facilities based on his sex-assigned-at-birth," and that district court was correct in granting summary judgment in boy's favor on equal protection claim); *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (denying stay of preliminary injunction requiring school to allow transgender girl to use

rely on widely rejected, non-precedential dissenting opinions and outdated cases.[5]

*Bostock* confirms that discrimination based on transgender status is a form of sex discrimination. While it is true that *Bostock* involved the context of termination of employees in violation of Title VII, the *reasoning* the Supreme Court employed is equally applicable to sex discrimination claims brought under the Equal Protection Clause and Title IX.[6] That reasoning did not rest upon unique provisions of Title VII, but rather the

---

girls' restroom at school because her exclusion from that restroom treated her unequally based on failure to act consistently with, or to identify with, sex she was assigned at birth and therefore constituted "impermissible discrimination" based on transgender status); *A.H. ex rel. Handling v. Minersville Area Sch. Dist.*, 408 F. Supp. 3d 536, 578 (M.D. Pa. 2019) (granting partial summary judgment in favor of transgender girl because school district's exclusion of her from girls' restroom while on school field trip violated Equal Protection Clause); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 293 (W.D. Pa. 2017) (holding that transgender students showed likelihood of success on equal protection claim challenging denial of access to school restrooms matching their gender identity); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 877 (S.D. Ohio 2016) (same, as to transgender girl).

[5] *See, e.g.*, *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1028 (10th Cir. 2021) (holding that the conclusion in *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215 (10th Cir. 2007), that discrimination based on transgender status is not sex discrimination has been overruled); *Glenn v. Brumby*, 663 F.3d 1312, 1318 n.5 (11th Cir. 2011) (recognizing that *Sommers v. Budget Mktg., Inc.*, 667 F.2d 748 (8th Cir. 1982), is no longer good law); *Smith*, 378 F.3d at 572–73 (recognizing that *Sommers* and *Ulane v. E. Airlines, Inc.*, 742 F.2d 1081 (7th Cir. 1984), are no longer good law); Mot. at 25 (relying on dissenting opinion in *Adams v. Sch. Bd. of St. Johns Cty., Fla.*, 3 F.4th 1299 (11th Cir. 2021)). The State Defendants' argument that *Etsitty* remains good law because it was only overruled "to the extent that [it] conflicts with *Bostock*," Mot. at 12, ignores that the Tenth Circuit explained that "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex" and that discrimination against transgender people is intentional treatment of those individuals differently "because of their sex." *Tudor*, 13 F.4th at 1028 (quoting *Bostock*, 140 S. Ct. at 1741–42). That the Supreme Court said that it did not "purport to address bathrooms, locker rooms, or anything else of the kind," *Bostock*, 140 S. Ct. at 1753, was only because those specific issues were not then before it, not because *Bostock*'s reasoning would not equally apply to cases involving those settings.

[6] The State Defendants completely misapprehend *Bostock*. That decision was not "built on the foundational fact that 'sex' at a baseline refers to 'biological distinctions between male and female,'" as the State Defendants contend. Mot. at 6. To the contrary, that was the argument of the employers in that case, which the Supreme Court simply assumed to be true as it conducted its analysis. 140 S. Ct. at 1739 ("[W]e proceed on the assumption that

recognition that "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." 140 S. Ct. at 1741. That is because one cannot categorize someone as transgender without taking sex into account, *id.* at 1746 (discrimination against transgender persons "unavoidably discriminates against persons with one sex identified at birth and another today"), and because discrimination against those who are transgender "necessarily and intentionally applies sex-based rules," *id.* at 1745. That sex and gender identity are not identical concepts does not matter. As the Supreme Court observed, "discrimination based on … transgender status necessarily entails discrimination based on sex; the first cannot happen without the second." *Id.* at 1747.

### B. Heightened scrutiny must be applied to SB 615 and the State Defendants' discrimination against the Students.

Discrimination based on sex and discrimination based on transgender status both receive heightened judicial scrutiny. The State Defendants appear to agree that heightened scrutiny applies to the Students' equal protection claim to the extent it states a claim for sex discrimination. *See* Mot. at 11. However, they fail to address the Students' claim that the discrimination additionally denies the Students' equal protection based on their transgender status. Compl. ¶ 133. That claim independently requires strict, or at least heightened, scrutiny. *See* ECF No. 24 at 14–16; *see also, e.g.*, *Ray v. McCloud*, 507 F. Supp. 3d 925, 937 (S.D. Ohio 2020) ("[T]ransgender individuals are a quasi-suspect class

---

'sex' signified what the employers suggest."). In addition, *Bostock* did not depend on sex-stereotyping arguments, as the State Defendants suggest, Mot. at 6–7, but rather on the recognition that discrimination against transgender people necessarily involves discrimination based at least in part on sex. 140 S. Ct. at 1743 ("For an employer to discriminate against employees for being … transgender, the employer *must* intentionally discriminate against individual men and women in part because of sex." (emphasis added)).

entitled to heighted scrutiny.").

Heighted scrutiny imposes a stringent standard. "[S]ex-based discrimination is presumptively invalid." *Vitolo v. Guzman*, 999 F.3d 353, 364 (6th Cir. 2021). The government "must demonstrate an exceedingly persuasive justification" for government policies that discriminate based on sex. *Virginia*, 518 U.S. at 531. To meet this burden, the government must prove that (1) the sex-based classification serves "important governmental objectives," and (2) the classification is "substantially and directly related" to the achievement of those objectives. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724, 730 (1982); *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 799 (10th Cir. 2019). Moreover, the government's justification must be "genuine, not hypothesized." *Virginia*, 518 U.S. at 533. The State Defendants cannot meet that heavy burden in this case, much less at the pleadings stage.

That SB 615 draws distinctions based on physical differences does not lessen the required scrutiny. As the Tenth Circuit has explained, "the arc of the Court's equal-protection jurisprudence … bends toward requiring more—not less—judicial scrutiny when asserted physical differences are raised to justify gender-based discrimination." *Fort Collins*, 916 F.3d at 805. Indeed, "[a]ny law premised on generalizations about the way women are—or the way men are—will fail constitutional scrutiny because it serves no important governmental objective." *Id.* at 801.

C.    **The State Defendants cannot establish that SB 615 and their conduct enforcing it are constitutional as a matter of law.**

Whether SB 615 and the State Defendants' conduct substantially and directly further governmental interests in protecting privacy or safety depends on contested facts that cannot be resolved on a motion to dismiss. *See, e.g.*, Compl. ¶¶ 45–47, 52, 68, 80, 82, 97, 100, 134. In particular, the Students allege that the "purported 'privacy' and 'safety' concerns" identified in SB 615 "are unfounded pretext to target students who are transgender" and that "Students who are transgender pose no risks to the privacy or safety of other students, whether in using multiple occupancy facilities or in any other context." *Id*. ¶ 52. Those factual allegations must be accepted as true, requiring denial of the Motion.

The State Defendants fail to address the multitude of federal courts that have rejected privacy and safety justifications for excluding transgender individuals from multiple occupancy restrooms, finding those justifications unfounded and unpersuasive. *See Grimm*, 972 F.3d at 613–15 (holding that school policy similar to SB 615 was not substantially related to important government interests in protecting privacy and instead was "marked by misconception and prejudice" against transgender student).[7] In support of

---

[7] *See also, e.g.*, *Parents for Privacy v. Barr*, 949 F.3d 1210, 1226 (9th Cir. 2020) (affirming dismissal of privacy claims of cisgender students opposed to school district's plan to allow transgender male student to use boys' restroom at school); *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 527–33 (3rd Cir. 2018) (affirming denial of preliminary injunction sought by cisgender students who objected to sharing restrooms with transgender students on privacy grounds); *Whitaker*, 858 F.3d at 1052 (granting preliminary injunction against enforcement of school policy similar to SB 615 as likely violating Equal Protection Clause and concluding that "the School District's privacy argument [wa]s based upon sheer conjecture and abstraction"); *A.H.*, 408 F. Supp. 3d at 578 (granting partial summary judgment that school district's prohibition on transgender girl using female restrooms on school field trips violated Equal Protection Clause because district "failed to demonstrate an exceedingly persuasive justification for its field-trip policy"); *Evancho*, 237 F. Supp. 3d

their contention that SB 615 is justified by privacy and safety concerns, the State Defendants rely on inapposite cases and rulings that have been widely discredited.

Arguing that SB 615 protects the "privacy of students to disrobe and shower outside of the presence of the opposite sex," Mot. at 11, the State Defendants cite *Carcaño v. McCrory*, 203 F. Supp. 3d 615 (M.D.N.C. 2016); *Johnston v. Univ. of Pittsburg of Commonwealth Sys. of Higher Educ.*, 97 F. Supp. 3d 657 (W.D. Pa. 2015); and *Michael M. v. Superior Ct. of Sonoma Cty.*, 450 U.S. 464 (1981). As the Students are seeking relief only regarding the restriction on their use of multiple occupancy restrooms that accord with their gender identity, the State Defendants' purported concern is irrelevant, since the Students do not disrobe or shower in multiple occupancy restrooms in Oklahoma schools. Even were that not the case, the State Defendants neglect to mention that, three years after the preliminary injunction ruling they cite in *Carcaño*, the parties entered into a settlement under which the State of North Carolina agreed to stop enforcing the challenged restroom restrictions and instead to allow transgender people to use restrooms in accordance with their gender identity. *Carcaño v. Cooper*, 2019 WL 3302208, at *6 (M.D.N.C. July 23, 2019). The State Defendants also ignore the subsequent holding of the Fourth Circuit a year later in *Grimm* that a school board's policy requiring transgender students to use bathrooms based on their biological sex "[wa]s not substantially related to its important interest in protecting students' privacy." 972 F.3d at 613. Likewise, *Johnston*, which

---

at 294–95 (granting preliminary injunction on transgender students' equal protection claim that they should not be excluded from restroom consistent with their gender identity and stating that doing so would be unlikely to cause harm, including to any privacy interests).

included claims regarding access to sex-segregated locker rooms, was found unpersuasive by the same district court two years later in *Evancho*. 237 F. Supp. 3d at 287. It also is impossible to square *Johnston* with *Boyertown*, 897 F.3d 518 (3rd Cir. 2018), in which the Third Circuit affirmed the denial of injunctive relief to cisgender students claiming that their school's policy allowing transgender students to access multiple occupancy restrooms and locker rooms consistent with their gender identity violated their privacy. As for *Michael M.*, it is completely inapposite. That case dealt with a sex-based equal protection challenge to a statutory rape law and has no bearing on the Students' challenge to a restriction on transgender students' access to multiple occupancy school restrooms.

While the safety and privacy of students are legitimate interests, the State Defendants cannot meet their burden at this stage to prove that SB 615 and their conduct enforcing it actually substantially and directly further those interests. Allowing transgender students to enter a multiple occupancy restroom, go into a stall to relieve themselves behind a closed door, and wash their hands and leave poses no risk to anyone's safety or privacy. *Whitaker*, 858 F.3d at 1052. It bears no resemblance to government officials strip-searching students. *See* Mot. at 14. It has nothing to do with reported incidents of illegal assaults by cisgender individuals. *Id.* at 16. Any student who engages in illegal or prohibited conduct in multiple occupancy school restrooms can be punished regardless of SB 615. Likewise, schools can easily distinguish between those who are transgender, which the Complaint alleges are those who "have a consistent, persistent, and insistent understanding that their sex is different from the sex they were assigned as at birth," Compl. ¶ 28, from those who

15

may falsely claim to be transgender to engage in prohibited conduct that they could just as readily engage in without claiming to be transgender. *See* Mot. at 15.

The State Defendants argue that "the mere presence of a member of the opposite sex in a restroom or changing area is a violation of privacy, regardless of whether any incident occurs." *Id*. As with their other arguments, this entirely ignores that the Students specifically alleged their gender. The State Defendants' factual disagreement with those allegations does not supplant the Rule 12(b)(6) standard. The State Defendants also fail to explain how sharing a restroom with a student who identifies as, appears like, and is otherwise accepted as the same sex as other students in that restroom violates anyone's privacy. *Whitaker*, 858 F.3d at 1052 ("Common sense tells us that the communal restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall."). Indeed, students are more likely to have concerns if a student whom they know as someone of a different sex enters a restroom simply because it is consistent with the sex listed on that student's original birth certificate.

That it may have been "long recognized as permissible," Mot. at 1, to separate restrooms according to aspects of an individual's anatomy does not immunize the State Defendants' discrimination. It of course was long recognized as permissible to restrict marriage to different-sex couples, but that did not shield those restrictions from being held unconstitutional. *Obergefell*, 576 U.S. at 673 ("[I]n interpreting the Equal Protection Clause, the Court has recognized that new insights and societal understandings can reveal unjustified inequality within our most fundamental institutions that once passed unnoticed and unchallenged."). It also was long recognized as permissible to segregate restrooms

according to race because of the purported dangerousness of Black people, the false belief

that Black people carried diseases white people did not naturally carry, and a belief in Black

men's innate predatory nature towards white women. That such practices and beliefs were

longstanding could not stop them from being tested factually and legally. *See Turner v.

Randolph*, 195 F. Supp. 677, 679–80 (W.D. Tenn. 1961) (public library's safety rationale

for racial segregation in restrooms was unsupported by any scientific or reliable data). That

same principle applies here. The government's interest in privacy cannot be "examined in

the abstract" but instead "must be weighed against the facts of the case" to determine

"whether this justification is genuine." *Whitaker*, 858 F.3d at 1052. The State Defendants

should not be permitted to evade that examination here.

## VI.   THE STUDENTS HAVE PROPERLY PLED FACTS THAT CONSTITUTE SEX DISCRIMINATION UNDER TITLE IX.

When a school provides restrooms on the basis of sex, it must do so in a manner that

does not subject individual students to unequal treatment that causes harm. Title IX

provides that "[n]o person … shall, on the basis of sex, be excluded from participation in,

be denied the benefits of, or be subjected to discrimination under any education program

or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To prove a claim

under Title IX, the Students must show (1) discrimination in an educational program "on

the basis of sex"; (2) that the program receives Federal financial assistance; and (3) the

exclusion harmed the Students. *See Grimm*, 972 F.3d at 616. The Complaint contains

sufficient factual information to draw a reasonable inference that the Oklahoma State

Department of Education ("OSDE")—the only State Defendant sued by the Students under Title IX—is liable for sex discrimination prohibited by that statute.

Plaintiffs Andy, Mark, and Sarah, as transgender students, experience sex-based discrimination as a result of SB 615. Each of them asserted that SB 615 bars them from the restroom at school congruent with their identity. Specifically, the Students each alleged that they are transgender, *see* Compl. ¶¶ 60, 72, 91, their gender is different than the sex they each were assigned at birth, *id.* ¶¶ 28, 63, 75, 94, and gender identity is not only one of multiple sex-related characteristics but is the most important and determinative factor of a person's sex, *id.* ¶¶ 24, 28. Further, Andy and Mark have pled that they are boys, *id.* ¶¶ 60, 72, and generally perceived and treated as boys, *id.* ¶¶ 67–68, 80–82, but SB 615 prohibits them from using the boys' multiple occupancy restroom at school (unlike cisgender boys), *id.* ¶¶ 2–5, 28, 47, 69, 85, 88, 143. Sarah has pled that she is a girl, *id.* ¶ 91, and generally perceived and treated as a girl, *id.* ¶¶ 95, 99–100, but SB 615 prohibits her from using the girls' multiple occupancy restroom at school (unlike cisgender girls), *id.* ¶¶ 2–5, 28, 47, 101, 107, 143. Taken together, these factual allegations establish the first element of a Title IX claim. Although OSDE does not contest the second and third elements of Title IX, the Students have sufficiently pled those facts as well. OSDE is a recipient of Federal financial assistance, *id.* ¶¶ 15, 139, and SB 615, as enforced by the State Defendants, harms the Students, *id.* ¶¶ 2, 43–44, 69–71, 86–89, 103–08. The Students' Title IX claims are not only plausible but meritorious. *See, e.g.*, *Grimm*, 972 F.3d at 616–19; *Whitaker*, 858 F.3d at 1049–50; *Dodds*, 845 F.3d at 220–22.

### A.    *Bostock* applies with considerable, if not decisive, force to Title IX.

The State Defendants suggest that *Bostock* is "distinguishable" because it "concerned only Title VII." Mot. at 24. That the Supreme Court addressed only Title VII and reserved judgment about sex-separated restrooms as applied to transgender individuals does not "deprive it of all persuasive force." *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351 (2013). The Supreme Court and Tenth Circuit have "looked to [their] Title VII interpretations of discrimination in illuminating Title IX." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 617 n.1 (1999); *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001) ("Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims."). *Bostock* thus illuminates the Title IX claims. *Cf. Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 1001 (8th Cir. 2022) (emphasizing importance of "consider[ing] the meaning of the Fair Housing Act in light of *Bostock* and its interpretation of similar statutory language").

The reasoning in *Bostock* applies with considerable, if not decisive, force to Title IX. *See, e.g.*, *Grimm*, 972 F.3d at 616 (noting *Bostock* "guides [the] evaluation of claims under Title IX" and finding "little difficulty holding that a bathroom policy precluding [a transgender boy] from using the boys restrooms discriminated against him 'on the basis of sex'"). First, *Bostock* is the Supreme Court's most recent pronouncement of statutory interpretation principles applicable to anti-discrimination statutes that prohibit sex discrimination. Second, *Bostock* applies a straightforward test to conclude that transgender status is "inextricably bound up with sex" and "necessarily entails discrimination based on sex; the first cannot happen without the second." 140 S. Ct. at 1742, 1747. Third, the State

19

Defendants' arguments, discussed further below, replicate the same "repackage[d] errors" that *Bostock* and other Supreme Court "precedents have already rejected." *Id.* at 1744–45. Ultimately, *Bostock* provides compelling guideposts for this Court to apply Title IX's nondiscrimination guarantee and deny the Motion to Dismiss.

    **B.**    **SB 615 discriminates against transgender students on the basis of sex.**

The State Defendants claim that SB 615 "treats all students the exact same regardless of transgender status or gender identity." Mot. at 1–2. Not only does this assertion conflict with the Students' factual allegations, but it also fails to adhere to the principles of statutory construction set forth in *Bostock*. "Statutory construction … is a holistic endeavor." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). By focusing exclusively on the term "sex" in isolation, the State Defendants overlook that "[t]he question isn't just what 'sex' mean[s], but what [a statute barring sex discrimination] says about it." *Bostock*, 140 S. Ct. at 1739.

Consistent with its expansive purpose, the Supreme Court has construed Title IX broadly to bar any practice that, on the basis of sex, denies students equal access to educational opportunities. *See, e.g.*, *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). "Title IX focuses more on 'protecting' individuals from discriminatory practices carried out by recipients of federal funds." *Gebser*, 524 U.S. at 287; *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1050 (10th Cir. 2020) ("As we have explained, *Bostock* requires us to focus our analysis on individuals, not groups.").

Focusing on each of the Students as individuals accords with the requirement that "[n]o person" be subjected to sex discrimination. 20 U.S.C. § 1681(a). As transgender students, the Students are subjected to sex discrimination precisely because of the way SB 615 defines "sex." Importantly, Title IX's statutory term "discrimination" might mean one thing "in one context" and "something different in another context." *See Bostock*, 140 S. Ct. at 1750; *cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68–69 (2006) ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."). In other words, an "act that would be immaterial in some situations is material in others." *Id*. at 69. Harm that rises to the level of a Title IX violation "depends on a constellation of surrounding circumstances." *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998). SB 615's restriction of restrooms based on birth-assigned sex is material to Andy, Mark, and Sarah, even though it is immaterial to their cisgender peers who do not suffer injury due to SB 615.

SB 615 discriminates against the Students "on the basis of sex." In *Bostock*, the Supreme Court applied "the 'simple' and 'traditional' standard of but-for causation" to show that transgender status is "inextricably bound up with sex." 140 S. Ct. at 1739, 1742. In short, "sex is necessarily a but-for cause," and discrimination against transgender people "inescapably *intends* to rely on sex in its decisionmaking." *Id*. at 1742 (emphasis in original). "So long as the plaintiff's sex was one but-for cause … that is enough to trigger

the law." *Id.* at 1739.[8] *Bostock* forecloses the State Defendants' contention that the Students have no "textual support" and "attempt to rewrite the plain and ordinary understanding of 'sex' as one and the same as 'gender identity.'" Mot. at 18–19. So long as sex plays a role, there is "no significance here if another factor … might also be at work, or even play a more important role." *Bostock*, 140 S. Ct. at 1744; *Frappied*, 966 F.3d at 1046 (applying *Bostock* to ADEA claim); *Tudor*, 13 F.4th at 1028.

Though presented by the State Defendants as a neutral measure that sorts students based on their sex assigned at birth, SB 615 subjects the Students to discrimination based on their transgender status. SB 615 "intentionally penalizes" the Students, as transgender individuals whose identities do not match their sex assigned at birth, for sex-related "traits or actions it tolerates" in cisgender students whose identities match their sex assigned at birth. *Bostock*, 140 S. Ct. at 1741. By intentionally discriminating against the Students on the basis of their transgender status, the State Defendants "unavoidably discriminate[] against persons with one sex identified at birth and another today." *Id.* at 1746.

---

[8] While the State Defendants raise in passing the textual distinction between Title VII's prohibition of discrimination "because of" sex," 42 U.S.C. § 2000e-2(a)(1), and Title IX's prohibition of discrimination "on the basis of" sex, 20 U.S.C. § 1681(a), they do not wrestle with the question. *See* Mot. at 24. Examining the text and analytical framework of Title IX, the Tenth Circuit construes "on the basis of" sex as simply asking whether "sex was a motivating factor." *Doe v. Univ. of Denver*, 1 F.4th 822, 830 (10th Cir. 2021). As noted in *Bostock*, "motivating factor" causation is a "more forgiving standard," where "liability can sometimes follow even if sex wasn't a but-for cause of the … challenged decision." *Bostock*, 140 S. Ct. at 1740. If a transgender employee can establish causation applying the more rigorous "but for" causation standard under Title VII, a transgender student may establish causation under Title IX.

C.   **Title IX's regulation authorizing separate restrooms does not permit sex discrimination against transgender students.**

The State Defendants claim that OSDE cannot be subject to liability under Title IX because one of Title IX's implementing regulations states that schools "may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33. The Students do not challenge the existence of sex-separated facilities at schools. Rather, the Students challenge SB 615's definition of "sex" as applied to transgender students, which operates to exclude them from the restroom corresponding with their identity. *See Grimm*, 972 F.3d at 618 ("All [§ 106.33] suggests is that the act of creating sex-separated restrooms in and of itself is not discriminatory—not that, in applying bathroom policies to [transgender students], the Board may rely on its own discriminatory notions of what 'sex' means."). OSDE cannot justify the intentional exclusion of Andy and Mark as boys who are transgender from the boys' restroom, and Sarah as a girl who is transgender from the girls' restroom, by asserting that SB 615 simply "separates restroom facilities on the basis of biological sex." Mot. at 18. The State Defendants "cannot escape liability by demonstrating that [SB 615] treats males and females comparably as groups." *Bostock*, 140 S. Ct. at 1744.

Additionally, the State Defendants' invocation of Title IX's statutory exemptions does not alter the meaning of "sex" in Title IX. Mot. at 19–20. Unlike the statutory exemptions in 20 U.S.C. § 1681(a)(2)–(9), where the broad prohibition on sex discrimination "shall not apply," 34 C.F.R. § 106.33 merely authorizes schools to "provide

separate toilet facilities ... on the basis of sex," while leaving the sweeping statutory prohibition on "discrimination" undisturbed. The regulation must be read consistently with Title IX's prohibition on sex discrimination. *See United States v. Gordon*, 638 F.2d 886, 888 (5th Cir. 1981) ("Whatever effect the agency regulation may have under other circumstances, it cannot supersede a statute.").

The State Defendants also suggest that a Tennessee federal court has substantively ruled in favor of the State of Oklahoma, among others, by purportedly "rejecting" the U.S. Department of Education's "new interpretation of 34 C.F.R. § 106.33." Mot. at 18. However, that court ruled solely on procedural APA grounds. *Tennessee v. United States Dep't of Educ.*, 2022 WL 2791450, at *20 (E.D. Tenn. July 15, 2022) ("The Court begins, and ends, with assessing Plaintiffs' notice and comment claim."), *appeal docketed*, No. 22-5807 (6th Cir. Sept. 13, 2022). The *Tennessee* court expressly stated that it was "not tasked" with determining whether any party violated Title IX, but instead focused on "the procedures Defendants needed to follow before issuing the guidance." *Id*. at *10. In fact, the *Tennessee* court agreed with the agency that whether a recipient violates Title IX in a case involving transgender students "would likely require further factual development." *Id.*

### D.    The State Defendants advance the same errors rejected by *Bostock*.

In an attempt to shift the focus away from Title IX, the State Defendants rely upon the same "repackage[d] errors" rejected in *Bostock*. 140 S. Ct. at 1744. First, the State Defendants refer to other later-enacted laws that explicitly "protect against gender-identity discrimination" and surmise that reference to "gender identity" in subsequent laws shows

"Congress means something different when it fails to use that term—as it did in Title IX."[9] Mot. at 19. However, the Supreme Court rejected that same argument as "speculation" and "a 'particularly dangerous' basis on which to rest an interpretation of an existing law." *Bostock*, 140 S. Ct. at 1747. Next, the State Defendants emphasize the "original understanding" of "sex" by referring to a litany of dictionary definitions "[a]t the time Title IX was enacted in 1972." Mot. at 20–22. Even assuming that "sex" meant "biological sex," Title IX liability does not "turn[] on the outcome" of that term. *Bostock*, 140 S. Ct. at 1739. The State Defendants also canvas legislative history with statements from the statute's proponents seeking to honor Title IX's expected applications. Mot. at 22–23. But the State Defendants are "not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork about expectations." *Bostock*, 140 S. Ct. at 1754. However framed, "it is ultimately the provisions of those legislative commands rather than the principal concerns of our legislators by which we are governed." *Id*. at 1749. The Supreme Court has rejected any notion that Title IX's protections are limited to applications foreseen at the time of its enactment. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) ("There is no doubt that if we are to give Title IX the scope that its origins dictate, we must accord it a sweep as broad as its language.").

## VII.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied.

---

[9] This argument is belied by the State Defendants' assertion that "[t]he phrase 'gender identity' did not exist" in 1972. Mot. at 22.

DATED: November 16, 2022

Respectfully Submitted,

 /s/ Isaac D. Chaput
Isaac D. Chaput

Jon W. Davidson (*pro hac vice*)
(admitted only in California)
Taylor Brown (*pro hac vice*)
American Civil Liberties Union
Foundation
120 Broad Street, 18th Floor
New York, NY 10005-3919
Telephone: (323) 536-9880
Facsimile: (212) 809-0055
jondavidson@aclu.org
tbrown@aclu.org

Megan Lambert
Bar Number 33216
Johanna Roberts
Bar Number 33599
American Civil Liberties Union of
Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
Mlambert@acluok.org
Hroberts@acluok.org

Paul D. Castillo (*pro hac vice*)
Lambda Legal Defense and
Education Fund, Inc.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
Telephone: (214) 219-8585
Facsimile: (214) 481-9140
pcastillo@lambdalegal.org

Mitchell A. Kamin (*pro hac vice*)
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
mkamin@cov.com

Isaac D. Chaput (*pro hac vice*)
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
ichaput@cov.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2022, I electronically filed Plaintiffs' Opposition to State Defendants' Motion to Dismiss with the Court of Clerk via the Court's CM/ECF system, which effects service upon all counsel of record.


*/s/ Isaac D. Chaput*
Isaac D. Chaput