# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

Andrew Bridge, et al.,

  *Plaintiffs*,

  v.

Oklahoma State Department of Education, et al.,

  *Defendants*.

Case No.: CIV-22-787-JD

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY <u>INJUNCTION</u>

Jon W. Davidson (*pro hac vice*)
(admitted only in California)
American Civil Liberties Union Foundation
120 Broad Street, 18th Floor
New York, NY 10005-3919
Telephone: (323) 536-9880
Facsimile: (212) 809-0055
jondavidson@aclu.org

Megan Lambert
Bar Number 33216
Johanna Roberts
Bar Number 33599
American Civil Liberties Union of
Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
Mlambert@acluok.org
Hroberts@acluok.org

Paul D. Castillo (*pro hac vice*)
Lambda Legal Defense and
Education Fund, Inc.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
Telephone: (214) 219-8585
Facsimile: (214) 481-9140
pcastillo@lambdalegal.org

Mitchell A. Kamin (*pro hac vice*)
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
mkamin@cov.com

Isaac D. Chaput (*pro hac vice*)
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
ichaput@cov.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     THE STUDENTS DO NOT SEEK A "DISFAVORED" INJUNCTION. ...............2

III.    THE MOTION FOR PRELIMINARY INJUNCTION IS TIMELY.......................4

IV.     THE STUDENTS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON
        THE MERITS OF THEIR EQUAL PROTECTION AND TITLE IX
        CLAIMS. ...............................................................................................................5

        A.      SB 615 and Defendants' Policies unlawfully discriminate against the
                Students in violation of the Equal Protection Clause. ...................................5

                1.      SB 615 and Defendants' Policies impermissibly discriminate
                        on the basis of sex and transgender status..........................................6

                2.      SB 615 and Defendants' Policies bear no substantial, or even
                        rational, relationship to a legitimate government interest................11

        B.      SB 615 and Defendants' Policies unlawfully discriminate against the
                Students in violation of Title IX..................................................................13

V.      THE STUDENTS WILL SUFFER IRREPARABLE HARM ABSENT A
        PRELIMINARY INJUNCTION. ...........................................................................14

        A.      The Students have established irreparable harm arising from the
                continued enforcement of SB 615...............................................................14

        B.      All other Oklahoma transgender students would likewise suffer
                irreparable harm absent a preliminary injunction. ......................................16

VI.     THE BALANCE OF HARMS STRONGLY FAVORS THE STUDENTS. .........17

VII.    THE SCHOOL DEFENDANTS CANNOT ESCAPE LIABILITY HERE. .........18

VIII.   CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B.P.J. v. W. Va. State Bd. of Educ.*,
  550 F. Supp. 3d 347 ......................................................................................... 9

*Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*,
  520 U.S. 397 (1997) ................................................................................. 19, 20

*Bd. of Educ. of the Highland Local Sch. Dist. v. United States Dep't of Educ.*,
  208 F. Supp. 3d 850 (S.D. Ohio 2016) ....................................................... 15

*Beard v. Crow*,
  No. CIV-19-00310-JD (W.D. Okla. Sept. 30, 2020) ..................................... 3

*Begay-Platero v. Gallup McKinley Cty. Sch. Dist.*,
  2019 WL 2008888 (D.N.M. May 7, 2019) .................................................. 13

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*,
  562 F.3d 1067 (10th Cir. 2009) ..................................................................... 2

*Bongo Prods., LLC v. Lawrence*,
  548 F. Supp. 3d 666 (M.D. Tenn. 2021) ...................................................... 18

*Bostock v. Clayton Cty., Ga.*,
  140 S. Ct. 1731 (2020) ............................................................................... 7, 9

*Cacioppo v. Town of Vail, Colo.*,
  528 F. App'x 929 (10th Cir. 2013) .............................................................. 19

*Carcaño v. McCrory*,
  203 F. Supp. 3d 615 (M.D.N.C. 2016) .................................................. 11, 12

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ..................................................................................... 12

*City of Los Angeles, Ca. v. Patel*,
  576 U.S. 409 (2015) ....................................................................................... 8

*D.H. by A.H. v. Williamson Cty. Bd. of Educ.*,
  2022 WL 16639994 (M.D. Tenn. Nov. 2, 2022) ......................................... 10

*Eknes-Tucker v. Marshall*,
    2022 WL 1521889 (M.D. Ala. May 13, 2022) ............................................................ 8

*Evancho v. Pine-Richland Sch. Dist.*,
    237 F. Supp. 3d 267 (W.D. Pa. 2017) ................................................................. 15, 16

*Fabian v. Hosp. of Cent. Conn.*,
    172 F. Supp. 3d 509 (D. Conn. 2016) .................................................................... 9

*Fish v. Kobach*,
    840 F.3d 710 (10th Cir. 2016) ............................................................................. 4

*Fort Defiance Indian Hosp. Bd., Inc. v. Becerra*,
    2022 WL 1690040 (D.N.M. May 26, 2022) ........................................................ 5, 6

*Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*,
    916 F.3d 792 (10th Cir. 2019) ........................................................................... 14

*Grimm v. Gloucester Cty. Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020) ................................................................. 6, 11, 14

*Hecox v. Little*,
    479 F. Supp. 3d 930 (D. Idaho 2020) ................................................................ 20

*J.A.W. v. Evansville Vanderburgh Sch. Corp.*,
    323 F. Supp. 3d 1030 (S.D. Ind. 2018) ............................................................. 15

*James River Ins. Co. v. Rapid Funding, LLC*,
    658 F.3d 1207 (10th Cir. 2011) ........................................................................ 12

*Joelner v. Vill. of Washington Park, Ill.*,
    378 F.3d 613 (7th Cir. 2004) ............................................................................ 18

*Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*,
    31 F.3d 1536 (10th Cir. 1994) ........................................................................ 4, 5

*Kitchen v. Herbert*,
    755 F.3d 1193 (10th Cir. 2014) ........................................................................ 18

*Martinez v. Carson*,
    697 F.3d 1252 (10th Cir. 2012) ........................................................................ 20

*Maryland v. King*,
    567 U.S. 1301 (2012) ....................................................................................... 18

*Mem'l Hosp. v. Maricopa Cty.*,
    415 U.S. 250 (1974) ............................................................................... 20

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ......................................................................... 18, 19

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) ............................................................................ 18

*Petrella v. Brownback*,
    697 F.3d 1285 (10th Cir. 2012) ........................................................... 18

*Planned Parenthood of Ark. & E. Okla. v. Cline*,
    910 F. Supp. 2d 1300 (W.D. Okla. 2012) ............................................. 3

*Roberts v. Clark Cty. Sch. Dist.*,
    215 F. Supp. 3d 1001 (D. Nev. 2016) ................................................... 9

*RoDa Drilling Co. v. Siegal*,
    552 F.3d 1203 (10th Cir. 2009) .................................................... 5, 6, 17

*Roman Catholic Archbishop of Wash. v. Bowser*,
    531 F. Supp. 3d 22 (D.D.C. 2021) ...................................................... 18

*Schneider v. City of Grand Junction Police Dep't*,
    717 F.3d 760 (10th Cir. 2013) ............................................................. 19

*Schrier v. Univ. of Co.*,
    427 F.3d 1253 (10th Cir. 2005) .......................................................... 2, 3

*SECSYS, LLC v. Vigil*,
    666 F.3d 678 (10th Cir. 2012) ............................................................. 10

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017) ............................................ 6, 13, 15, 16

*Whitesel v. Sengenberger*,
    222 F.3d 861 (10th Cir. 2000) ............................................................. 19

*Williams v. Rhodes*,
    393 U.S. 23 (1968) ............................................................................... 18

*Ex parte Young*,
    209 U.S. 123 (1908) ............................................................................. 18

**Other Authorities**

Fed. R. Civ. P. 702(c) ........................................................................................................... 9

## I.    INTRODUCTION

The Students seek narrowly-tailored relief to enjoin Defendants from inflicting further irreparable harm on Oklahoma transgender students while this litigation proceeds. The State Defendants and School Defendants' respective responses confirm that a preliminary injunction should issue.[1]

The State Defendants recite the same legally defective arguments advanced in their Motion to Dismiss. The Students are substantially likely to prevail on the merits of their claims because the State Defendants have, without adequate justification, treated them differently from other students on the basis of their sex and transgender status. The overwhelming weight of the case law favors the Students. Unless enjoined, the State Defendants' continuing discrimination will subject Oklahoma transgender students to irreparable injury. Allowing transgender students to use multiple occupancy restrooms corresponding to their gender while this case proceeds will harm no one.

The School Defendants abstain from any defense of SB 615. Rather, they seek to shift responsibility to the State Defendants and express concern that they may suffer adverse financial consequences if they do not comply with SB 615. Neither response provides grounds for them not to be enjoined, pending resolution of this case, from enforcing disciplinary policies preventing the Students from using multiple occupancy restrooms consistent with their gender.

---

[1] Capitalized terms used but not defined herein shall have the same meanings set forth in the Motion for Preliminary Injunction (ECF No. 24) and Plaintiffs' Opposition to the State Defendants' Motion to Dismiss (ECF No. 53).

## II.   THE STUDENTS DO NOT SEEK A "DISFAVORED" INJUNCTION.

The State Defendants assert, with scant discussion, that the Court should deviate from the traditional preliminary injunction standard because the Students seek a "disfavored" injunction. *See* ECF No. 54 at 7. The State Defendants are mistaken. There are three types of disfavored injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief it could recover at the conclusion of a full trial on the merits. *Id.* The preliminary injunction sought by the Students does not fall within any of those categories.[2]

*First*, the Students seek to *maintain* the status quo, not alter it. "An injunction disrupts the status quo when it changes the last peaceable uncontested status existing between the parties before the dispute developed." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070–71 (10th Cir. 2009). In this case, the Students seek to enjoin Defendants from enforcing SB 615 and Defendants' Policies. The relevant status quo is therefore that which existed prior to SB 615. *Cf. Schrier v. Univ. of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) ("Dr. Schrier's request that he be reinstated as Chair seeks to preserve rather than disturb the status quo, regardless of whether or not he is legally entitled to such reinstatement."). The Motion for Preliminary Injunction seeks to return the parties to the status quo that existed prior to these discriminatory policies.

*Second*, the Students do not seek a mandatory preliminary injunction, but request only that Defendants be "preliminarily restrained and enjoined from enforcing" their illegal

---

[2] Even if it did, the Students would still have satisfied their burden of making a strong showing "on the likelihood of success on the merits and on the balance of the harms." *Id.*

policies. *See* Proposed Order Granting Motion for Preliminary Injunction at 2–3. The Students thus seek a prohibitory injunction against illegal conduct and do not request any particular affirmative action that would amount to a mandatory injunction. *See Schrier*, 427 F.3d at 1261 ("[A]n injunction [i]s mandatory if the requested relief affirmatively require[s] the nonmovant to act in a particular way, and as a result ... place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction."). So long as Defendants refrain from enforcing SB 615 or their discriminatory policies, they can act however they wish. *See Beard v. Crow*, No. CIV-19-00310-JD, ECF No. 70 (W.D. Okla. Sept. 30, 2020) (applying traditional legal standard to motion to enjoin Department of Corrections' use of radio-frequency detection devices). Even if the request for non-enforcement of a policy were characterized as a request for prospective and particular conduct, this narrowly-tailored request does not require ongoing court supervision that could render the injunction disfavored. *Cf. Planned Parenthood of Ark. & E. Okla. v. Cline*, 910 F. Supp. 2d 1300, 1306 (W.D. Okla. 2012) (though motion to enjoin defendant's decision not to renew contract "would require defendant to prospectively act conformably to constitutional standards," request was narrowly tailored and would not require "ongoing court supervision to any significant degree").

*Third*, entering an injunction would not afford the Students full relief in this case, as the Complaint seeks declaratory and permanent relief beyond the relief requested in the Motion. *Compare* Compl. at 40–41, *with* Proposed Order Granting Motion for Preliminary Injunction at 2–3; *Cline*, 910 F. Supp. 2d at 1306 ("[T]he motion for preliminary injunction does not seek declaratory relief, a type of relief which is requested in the complaint.").

### III.    THE MOTION FOR PRELIMINARY INJUNCTION IS TIMELY.

The State Defendants assert that the Students have forfeited their right to a preliminary injunction by filing this litigation on September 6, 2022, a few short months after SB 615 was enacted. *See* ECF No. 54 at 24. This objection is baseless. The Students brought this lawsuit and moved for a preliminary injunction in a timely fashion.

"[T]here is no categorical rule that delay bars the issuance of an injunction." *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016). As the State Defendants know full well, SB 615 mandated that the Oklahoma State Board of Education ("SBOE") promulgate and enforce rules to implement the provisions of SB 615. Each Oklahoma school district was likewise required to adopt a disciplinary policy for individuals who refused to comply with SB 615. *See* ECF No. 24-8, Ex. 1. Accordingly, any dispute regarding SB 615 would not be ripe until those rules and disciplinary policies went into effect. Had the Students filed a lawsuit and moved for a preliminary injunction the day immediately following enactment of SB 615, the State Defendants would have argued that such suit was premature and a preliminary injunction should not issue for that reason. *Cf. Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1544 (10th Cir. 1994) ("We are reluctant to criticize plaintiffs for awaiting specific and concrete documentation of the adequacy of their Medicaid reimbursement rates. Without such documentation, they run the risk of having their claimed injury be deemed speculative."). The SBOE did not adopt emergency rules pursuant to SB 615 until August 25, 2022. *See* ECF No. 24-8, Ex. 2. This lawsuit followed days later on September 6. The final school disciplinary policies affecting the Students were not adopted until September 12, 2022. *See* ECF No. 24-8, Ex. 3 (NPS); ECF

No. 24-8, Ex. 7 (HICD). The Motion for Preliminary Injunction followed two weeks later on September 29. By no means could this be considered an unreasonable delay. *See Kan. Health Care Ass'n*, 31 F.3d at 1544 (three-month delay did not prevent preliminary injunction); *Fort Defiance Indian Hosp. Bd., Inc. v. Becerra*, 2022 WL 1690040, at *57 (D.N.M. May 26, 2022) (four-month delay was "not unreasonable" and did not undercut finding of irreparable injury). Nor has any delay prejudiced the State Defendants' defense of this suit. *See Kan. Health Care Ass'n*, 31 F.3d at 1544 (delay neither altered outcome of proceeding nor disadvantaged defendants); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211–12 (10th Cir. 2009) (delay did not disadvantage parties' interests).

## IV.   THE STUDENTS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION AND TITLE IX CLAIMS.

### A.   SB 615 and Defendants' Policies unlawfully discriminate against the Students in violation of the Equal Protection Clause.

SB 615 and Defendants' Policies prevent Oklahoma transgender students, including Plaintiffs, from using restrooms associated with their gender, discriminating against them on the basis of sex and transgender status. The School Defendants take no position on whether SB 615 violates the Equal Protection Clause. The State Defendants argue that SB 615 does not discriminate on the basis of sex or transgender status, and SB 615 is substantially related to an important government interest. Each argument is unavailing.

*First*, SB 615 and Defendants' Policies discriminate by forbidding the Students from using multiple occupancy restrooms corresponding to their genders. The suggestion that these policies treat similarly-situated people the same is made without regard to the facts of this case or acknowledgment of the vast body of law on this issue. *Second*, SB 615

and Defendants' Policies fail to serve any legitimate government function. The State Defendants' purported justifications are without basis. The shortcomings of the State Defendants' arguments are made plain by their heavy reliance on non-precedential dissenting opinions and their continued refusal to engage with the numerous "favorable district and circuit court rulings" cited by the Students. *See* ECF No. 54 at 13. Rather than address those "favorable" decisions whatsoever or explain why those courts' reasoning should not guide the Court here, the State Defendants attempt to diminish those rulings as simply "non-binding authorities." *Id.* Strangely, the State Defendants then direct the Court to what they deem to be "particularly instructive and persuasive" (and, of course, non-binding) "dissenting opinions." *See id.* at 14–15. The State Defendants "urge" this Court to adopt the same reasoning of a handful of non-binding dissenting opinions while ignoring the overwhelming authority marshalled by the Students in favor of an injunction. *Id.* at 15.

## 1. SB 615 and Defendants' Policies impermissibly discriminate on the basis of sex and transgender status.

No matter the description of SB 615 and Defendants' Policies—whether as being about access to sex-separated restrooms, or as designating the Students' sex for restroom use—they are undeniably about sex. *See Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017), *abrogation on other grounds recognized by Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) (policy barring transgender students from sex-specific restrooms matching their identity "cannot be stated without referencing sex"); *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 608 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021) (same).

6

By definition, SB 615 and Defendants' Policies on their face mandate adverse, different treatment of transgender students than cisgender students. As a result, students with a male gender identity who were assigned female at birth are not allowed to use their schools' multiple occupancy restrooms for males, whereas other students with a male gender identity are permitted to use those restrooms because they were assigned that sex at birth. This is not the same treatment of all male students. The differential treatment rests on the relationship between the sex students were assigned at birth and their gender identity.

*Bostock v. Clayton County, Georgia*, confirms that discrimination based on transgender status is a form of sex discrimination. As the Court recognized, "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." 140 S. Ct. 1731, 1741 (2020). That is because transgender status inherently takes sex into account, *id.* at 1746 (discrimination against transgender persons "unavoidably discriminates against persons with one sex identified at birth and another today"), and discrimination against people who are transgender "necessarily and intentionally applies sex-based rules," *id.* at 1745. "[D]iscrimination based on … transgender status necessarily entails discrimination based on sex; the first cannot happen without the second." *Id.* at 1747.

The State Defendants' exclusion of transgender students from the multiple occupancy restrooms aligned with their gender treats them differently from similarly-situated students who happen to be cisgender. Under Defendants' Policies, students who are cisgender are able to use multiple occupancy restrooms consistent with their gender, but students who are transgender are banned from multiple occupancy restrooms consistent

with their gender. Equal protection review examines whether government discrimination can be appropriately justified as to the group harmed by the challenged exclusion. *City of Los Angeles, Ca. v. Patel*, 576 U.S. 409, 418 (2015). The separation of boys and girls in restrooms—which is not at issue—does not restrict any cisgender boy or cisgender girl's use of the restroom, but only restricts the use of multiple occupancy restrooms by transgender boys like Andy and Mark and transgender girls like Sarah. Given that the Students use multiple occupancy restrooms in public and have used multiple occupancy restrooms at their schools in the past without problem, they are similarly situated with respect to use of such restrooms. *See* ECF No. 24-1 ¶¶ 19, 23; ECF No. 24-3 ¶¶ 13, 16; ECF No. 24-5 ¶¶ 16, 17.

The purported expert opinions of Debra Soh[3] and James Cantor[4] do nothing to save SB 615 from constitutional scrutiny. Each opines on the social transition of transgender children and the appropriate treatment of individuals with gender dysphoria. These opinions have absolutely no relevance to the Students' claims that SB 615 and Defendants' Policies violate the Equal Protection Clause and Title IX as applied to them. "[W]hat is or should be the default treatment for transgender youth is not the question before the court."

---

[3] There is no record of Dr. Soh—a Canadian columnist and podcast host—ever being found qualified as an expert in a U.S. court, let alone to offer expert opinions on gender identity.

[4] Dr. Cantor is likewise unqualified as an expert. He has admitted that: "(1) his patients are, on average, thirty years old; (2) he had never provided care to a transgender minor under the age of sixteen; (3) he had never diagnosed a child or adolescent with gender dysphoria; (4) he had never treated a child or adolescent for gender dysphoria; (5) he had no personal experience monitoring patients receiving transitioning medications; and (6) he had no personal knowledge of the assessments or treatment methodologies used at any [local] gender clinic." *Eknes-Tucker v. Marshall*, 2022 WL 1521889, at \*5 (M.D. Ala. May 13, 2022). Courts have given his testimony "very little weight." *See id.*

*B.P.J. v. W. Va. State Bd. of Educ.*, 550 F. Supp. 3d 347, 351 n.4 (S.D.W. Va. 2021); *see also* Supp. Budge Decl. ¶¶ 5–6 (attesting that Drs. Soh and Cantor are not qualified to opine on the issues discussed in Dr. Budge's opening declaration). Even if Drs. Soh and Cantor were qualified and their opinions relevant, those opinions should still be disregarded because they are not the product of reliable principles and methods. *See* Fed. R. Civ. P. 702(c). Drs. Soh and Cantor misapprehend the relevant scholarly literature on gender identity, relying on outdated, disproven studies and misrepresenting more recent scientific studies. Supp. Budge Decl. ¶¶ 7–9. Drs. Soh and Cantor's critiques of Dr. Budge's opening declaration are also without merit. *Id.* ¶¶ 10–23. Their "opinions" have no bearing on the Students' entitlement to relief.

The State Defendants attempt to disguise their discrimination by claiming that SB 615 merely distinguishes students based on "biology" and "physiology." That claim is fallacious. *Roberts v. Clark Cty. Sch. Dist.*, 215 F. Supp. 3d 1001, 1015 (D. Nev. 2016) (discrimination "based on [plaintiff's] genitalia, not his status as a transgender person, [was] a distinction without a difference"). Discrimination based on sex is "discrimination because of the *properties or characteristics* by which individuals may be classified as male or female." *Fabian v. Hosp. of Cent. Conn.*, 172 F. Supp. 3d 509, 526 (D. Conn. 2016). Nor is assessing and sorting students with respect to "physiology" what SB 615 actually does, since it does not ask any student about their physiology, relying instead solely on an initial birth certificate determination of students' "sex." "[I]t's irrelevant what [a defendant] might call its discriminatory practice, how others might label it, or what else might motivate it." *Bostock*, 140 S. Ct. at 1744. For these reasons, the discrimination

against the Students does not merely have an adverse impact on them, but deliberately targets them for different treatment from other students because they are transgender. "When a distinction between groups of persons appears on the face of a state law or action, an intent to discriminate is presumed and no further examination of legislative purpose is required. … If the evidence shows that a generally applicable law was adopted at least in part because of, and not merely in spite of, its discriminatory effect on a particular class of persons, the first essential step of an equal protection challenge is satisfied." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685–86 (10th Cir. 2012). SB 615 and Defendants' Policies make express sex-based distinctions. Examining intent is therefore unnecessary.

*D.H. by A.H. v. Williamson County Board of Education*, 2022 WL 16639994 (M.D. Tenn. Nov. 2, 2022), newly cited by the State Defendants, is distinguishable from the facts here. Unlike here, the transgender student in *D.H.* did not offer any expert testimony, including on the definition of sex and gender identity. *See id.* at *1. Unlike here, the parties in *D.H.* did not "provide[] any analysis or argument concerning the factors the Supreme Court has considered to determine whether a class of persons is a quasi-suspect class." *Id.* at *8. And unlike here, the *D.H.* court declined to grant an injunction on the student's equal protection claim largely due to the court's focus on "the long history of allowing separate bathroom facilities based on sex," *id.* at *10, which the Students have already demonstrated does not immunize SB 615 from constitutional challenge. *See* ECF No. 53 at 16–17. *D.H.* does not detract from the overwhelming weight of authority holding that restrictions on transgender students' access to multiple occupancy restrooms matching their gender identity violate or likely violate the Equal Protection Clause. *See id.* at 9 & n.4.

**2.    SB 615 and Defendants' Policies bear no substantial, or even rational, relationship to a legitimate government interest.**

Various courts have rejected privacy and safety justifications for excluding transgender individuals from multiple occupancy restrooms, finding those justifications unfounded and unpersuasive. *See, e.g.*, *Grimm*, 972 F.3d at 613–15 (holding that school policy similar to SB 615 was not substantially related to important government interests in protecting privacy and instead was "marked by misconception and prejudice" against transgender student). Even courts that have issued what the State Defendants deem to be favorable rulings, *see* ECF No. 47 at 11, recognized that "rather than protect[ing] privacy, it appears at least equally likely that denying an injunction will create privacy problems, as it would require the individual transgender Plaintiffs, who outwardly appear as the sex with which they identify, to enter facilities designated for the opposite sex (e.g., requiring stereotypically-masculine appearing transgender individuals to use women's bathrooms), thus prompting unnecessary alarm and suspicion." *Carcaño v. McCrory*, 203 F. Supp. 3d 615, 652 (M.D.N.C. 2016); *id.* ("[T]here is no evidence that transgender individuals overall are any more likely to engage in predatory behaviors than other segments of the population. In light of this, there is little reason to believe that allowing the individual transgender Plaintiffs to use partitioned, multiple occupancy bathrooms corresponding with their gender identities … will pose any threat to public safety, which will continue to be protected by the sustained validity of peeping, indecent exposure, and trespass laws."). The purported government "interest" in SB 615 is wholly speculative and false.

The State Defendants concede that the enactment of SB 615 did not include any "findings of fact." ECF No. 54 at 10 n.7. The State Defendants are left to cite three lay declarations of parents of Stillwater Public School District students who purportedly expressed concern about transgender students' use of multiple occupancy restrooms. These declarations do not satisfy the State Defendants' heavy burden in overcoming the constitutional challenges to SB 615.[5] To start, Andy, Mark, and Sarah do not even attend the Stillwater public schools at issue. The purported concerns of these parents are therefore irrelevant to Andy, Mark, and Sarah's respective experiences at school. Furthermore, the declarations fail to explain why permitting transgender students to use restrooms consistent with their gender would be any more likely to give rise to the alleged harms than would allowing SB 615 to remain in effect. Regardless of SB 615, cisgender males could wrongfully enter female restrooms and "peek under the stall or through the crack in the stall door" while female students use the restroom. *See* ECF No. 54-1 ¶ 4. Regardless of SB 615, female students could be sexually assaulted by cisgender male or female students, see "male body parts" of cisgender students who wrongfully enter female restrooms, or hear "crude humor" from inside the bathroom. *Id.* The parents' declarations articulate nothing more than inchoate concerns about speculative harms that might arise based largely on misinformed stereotypes. "[M]ere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable … are not permissible bases" for differential treatment. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985).

---

[5] Nor are the declarations even proper evidence. They are simply inadmissible lay opinion. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011).

The purported expert declaration of Kim Davis is equally unpersuasive. As an initial matter, the Motion seeks relief only as to the ability to access multiple occupancy school restrooms. Any opinions concerning privacy concerns in locker rooms are thus irrelevant. Ms. Davis in fact demonstrates that SB 615 is not narrowly tailored to accomplish the supposed aim of protecting privacy and safety. She concedes that "[t]he problem isn't transgender individuals but predators who may pretend to identify as a different sex to gain access to vulnerable persons they otherwise would not have access to." ECF No. 54-4 ¶ 15. That nefarious conduct has nothing to do with transgender people but rather concerns conduct that is already legally prohibited. SB 615 does nothing to prevent a man from wandering into a bathroom and attacking someone. *Whitaker*, 858 F.3d at 1052. Consistent with Ms. Davis's opinions, numerous law enforcement officials have attested that there is no evidence of increased crime or violence based on transgender persons' use of multiple occupancy restrooms. *See* Decl. of Isaac D. Chaput, Ex. A, Expert Decl. of Michael H. Miner, Ph.D. ¶¶ 46–48; Ex. B, Expert Decl. & Rpt. of Chris Magnus ¶¶ 16–23.[6]

**B.    SB 615 and Defendants' Policies unlawfully discriminate against the Students in violation of Title IX.**

With respect to the Title IX claims, the State Defendants raise the same arguments as those set forth in their Motion to Dismiss. As the Students demonstrated in opposition thereto, their Title IX claims are meritorious. *See* ECF No. 53 at 17–25. In particular, Title

---

[6] These two declarations were filed in support of the United States' motion for preliminary injunction in *United States v. North Carolina*, No. 16-cv-425 (M.D.N.C.), and may be considered by the Court. *See Begay-Platero v. Gallup McKinley Cty. Sch. Dist.*, 2019 WL 2008888, at *2 n.4 (D.N.M. May 7, 2019) ("[T]he court may consider hearsay statements when evaluating a request for preliminary injunctive relief.").

IX's regulation authorizing separate restrooms has no impact on the Students' Title IX claims. The Students do not challenge the existence of sex-separated restrooms at schools. Rather, they challenge SB 615's definition of "sex" as applied to transgender students, which operates to exclude them from school restrooms corresponding with their identity. *Grimm*, 972 F.3d at 618 ("All [§ 106.33] suggests is that the act of creating sex-separated restrooms in and of itself is not discriminatory—not that, in applying bathroom policies to [transgender students], the Board may rely on its own discriminatory notions of what 'sex' means."). Section 106.33 is not a license to discriminate.

## V.  THE STUDENTS WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION.

### A.  The Students have established irreparable harm arising from the continued enforcement of SB 615.

Each of Andy, Mark, and Sarah has demonstrated that they would suffer irreparable harm in the absence of a preliminary injunction. The State Defendants are mistaken in suggesting that the Tenth Circuit has not recognized a presumption that violation of constitutional rights necessarily establishes irreparable harm. *See* ECF No. 54 at 20. In *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, the Tenth Circuit affirmed the presumption that "infringement of a constitutional right … require[s] no further showing of irreparable injury." 916 F.3d 792, 805 (10th Cir. 2019). The court observed: "What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial. Any deprivation of any constitutional right fits that bill." *Id.* at 806 (plaintiff need not show further irreparable harm on equal protection claim).

Beyond legal presumptions, the Students are actually and irreparably harmed by SB 615 and Defendants' Policies. There is nothing speculative about this harm. Each plaintiff and their parents submitted sworn affidavits attesting to the shame, stigma, and invalidation that result from being denied the ability to use restrooms consistent with their gender. *See, e.g.*, ECF No. 24-1 ¶¶ 24–26; ECF No. 24-3 ¶¶ 19–21; ECF No. 24-5 ¶ 23. Far from being "speculative and irrelevant," *see* ECF No. 54 at 20, these concerns are widely regarded as cognizable irreparable harm. *See Whitaker*, 858 F.3d at 1045 (irreparable harm established when exclusionary bathroom policy caused plaintiff "significant psychological distress and place[d] [him] at risk for experiencing life-long diminished well-being and life-functioning"); *J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 323 F. Supp. 3d 1030, 1039 (S.D. Ind. 2018) ("[T]he likely negative emotional consequences of being denied access to the boys' restrooms at school would constitute irreparable harm."); *Bd. of Educ. of the Highland Local Sch. Dist. v. United States Dep't of Educ.*, 208 F. Supp. 3d 850, 878 (S.D. Ohio 2016) ("The stigma and isolation Jane feels when she is singled out and forced to use a separate bathroom … is a clear case of irreparable harm to an eleven-year-old girl."); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 294 (W.D. Pa. 2017) ("This Court is in no position to downplay or minimize the nature or consequence of such harm or the likelihood that Plaintiffs will prove it. Its relatively unquantifiable nature makes the Plaintiffs' harm no less real."); Supp. Budge Decl. ¶¶ 21–23 (further detailing harm of excluding transgender students from restrooms corresponding to their gender identity).

The irreparable harm inflicted upon the Students has only grown since the filing of this lawsuit. As reflected in Sue Stiles's supplemental declaration, on September 27, 2022,

Sarah's principal sent a text message to all students' parents informing them that "[d]ue to the amount of instructional time that is being missed when students are leaving class," all students "must use the restroom and get drinks during passing periods." Sue Stiles Supp. Decl. ¶ 4. The message further noted that any "exceptions" would be addressed "on a case-by-case basis." *Id.* Following this message, Sarah was pulled aside privately and informed that she was the exception to the new policy. *Id.* ¶ 5. This new policy (and the exception made for Sarah, which will be apparent to other students when she is allowed to use the restroom during classes but other students are not) is yet another form of irreparable harm, creating further risk that Sarah's transgender status will be disclosed against her will.

It is irrelevant that a Stillwater parent, based on her daughter's experience at a school the Students do not attend, believes it possible for students to use single-occupancy bathrooms without facing negative consequences. ECF No. 54-1 ¶ 7. The Students have offered evidence demonstrating that not to be the case for them. Sarah, for example, cannot make it to the single-occupancy restroom between classes. ECF No. 24-5 ¶ 21. "Courts have long recognized that disparate treatment itself stigmatizes members of a disfavored group as innately inferior." *Evancho*, 237 F. Supp. 3d at 294; *Whitaker*, 858 F.3d at 1045 (student faced "unenviable choice between using a bathroom that would further stigmatize him and cause him to miss class time, or avoid use of the bathroom altogether").

**B.     All other Oklahoma transgender students would likewise suffer irreparable harm absent a preliminary injunction.**

The State Defendants offer no reason to dispute that other transgender students would experience the same irreparable harm suffered by Andy, Mark, and Sarah. The same

legal presumptions with respect to claims under the Equal Protection Clause and Title IX would apply with equal force to other transgender students. Other transgender students would experience the same irreparable harm with respect to stigma, adverse health consequences, physical discomfort, and interference with educational opportunities. *See* ECF No. 24-7 ¶¶ 54–68; Supp. Budge Decl. ¶¶ 21–23. Neither monetary damages nor permanent injunctive relief following final judgment in this action could compensate the students for those losses.

## VI.     THE BALANCE OF HARMS STRONGLY FAVORS THE STUDENTS.

Given the Students' strong likelihood of success on the merits, the irreparable harm they will suffer if a preliminary injunction does not issue, and the constitutional and civil rights at stake, the balance of harms tilts heavily in the Students' favor. *See* ECF No. 24 at 24–25. Relying on an unsupported parade of horribles, the State Defendants argue that the irreparable harm that supposedly would be imposed on "Oklahoma, Oklahoma schools, Oklahoma parents, and Oklahoma schoolchildren" trumps the specific irreparable harm established by the Students. *See* ECF No. 54 at 24. In contrast to the concrete harms the Students experience on a daily basis, the harms invented by the State Defendants are entirely speculative and cannot support the denial of a preliminary injunction. *See RoDa Drilling*, 552 F.3d at 1210.[7] Nor can there be any "irreparable harm to a [defendant] when

---

[7] In any event, by the admission of the State Defendants' own witnesses, any student, including a cisgender student, who feels uncomfortable using a restroom with other students has an adequate accommodation in single-user restrooms. *See* ECF No. 54-1 ¶ 7; ECF No. 54-2 ¶ 7; ECF No. 54-3 ¶ 9.

it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect" constitutional rights. *Joelner v. Vill. of Washington Park, Ill.*, 378 F.3d 613, 620 (7th Cir. 2004). The State's supposed "sovereign right to see that its laws are enforced" cannot shield a statute from legal scrutiny. *See* ECF No. 54 at 24–25.[8] "[E]nforcing the United States Constitution against a state government is a vindication, not a derogation, of the enduring importance of state autonomy." *Bongo Prods., LLC v. Lawrence*, 548 F. Supp. 3d 666, 687 (M.D. Tenn. 2021); *Williams v. Rhodes*, 393 U.S. 23, 29 (1968) (State "powers are always subject to the limitation that they may not be exercised in a way that violates other specific provisions of the Constitution").

## VII.   THE SCHOOL DEFENDANTS CANNOT ESCAPE LIABILITY HERE.

The School Defendants concede that they are "carrying out their obligations" to enforce SB 615. *See* ECF No. 52 at 2. On that basis alone, the School Defendants admit that they "have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014). Thus, the School Defendants are proper defendants and subject to a prospective, non-monetary preliminary injunction. *Petrella v. Brownback*, 697 F.3d 1285, 1293–94 (10th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 161 (1908)). The School Defendants seek to avoid liability by suggesting they are not liable for enforcing a municipal policy or custom under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Aside from

---

[8] *Maryland v. King*, 567 U.S. 1301 (2012), and *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977), cited by the State Defendants, *see* ECF No. 54 at 25, represent the view of only one member of the Supreme Court, not precedent binding on lower courts. *Roman Catholic Archbishop of Wash. v. Bowser*, 531 F. Supp. 3d 22, 31 n.5 (D.D.C. 2021).

acting as an enforcement arm of the State, the School Defendants are also liable for their own actions that violate federal law. *Monell* imposes three requirements: (1) the existence of an official policy or custom, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Each is met here.

The School Defendants knowingly adopted disciplinary policies for students who do not comply with SB 615. *See* ECF No. 24-8, Exs. 3–7, 15–17. The School Defendants acknowledge this but assert they cannot be held liable because "it was not School Defendants' policymaking that caused the alleged constitutional deprivation at issue." *See* ECF No. 52 at 10. However, the Students have "demonstrate[d] a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). All they must show is that "the municipality was the 'moving force' behind the injury alleged." *Schneider*, 717 F.3d at 770.[9] In other words, "the challenged policy … must be closely related to the violation of the plaintiff's federally protected right." *Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 932 (10th Cir. 2013). Here, the School Defendants' policies are closely related to the violation of equal protection. The policies "set in motion [the] series of events that [the School Defendants] knew or reasonably should have known would cause [the superintendents and school staff] to deprive [the Students] of [their] constitutional rights."

---

[9] The School Defendants ignore Tenth Circuit *Monell* causation precedent in favor of an analysis employed in the Second Circuit. *See* ECF No. 52 at 10. Additionally, the School Defendants' reliance on *Whitesel v. Sengenberger*, 222 F.3d 861 (10th Cir. 2000), is misplaced. The more recent Tenth Circuit cases cited above, which apply the "moving force" standard, support the Students' position.

*Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). "That conduct of other people may have concurrently caused the harm does not change the outcome as to [the School Defendants]." *Id.* Finally, the Students have established the requisite "state of mind" by showing the School Defendants enacted policies that deprive them of equal protection. *See Brown*, 520 U.S. at 404–05. "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Id.* at 405.[10]

With respect to the Title IX claims, the question is whether the School Defendants subjected the Students to discrimination on the basis of sex. The School Defendants do not dispute that they will enforce SB 615 nor that they knowingly passed their own policies, which will exclude the Students from multiple occupancy restrooms on the basis of their sex and cause them harm. The Students therefore are entitled to seek an injunction to prevent the School Defendants from enforcing SB 615 and their own policies. *See Hecox v. Little*, 479 F. Supp. 3d 930 (D. Idaho 2020) (denying motion to dismiss Title IX claims and issuing preliminary injunction against school district). The School Defendants cannot escape liability where their own policies violate Title IX.

## VIII.   CONCLUSION

For the foregoing reasons, the Motion for Preliminary Injunction should be granted.

---

[10] The School Defendants' assertion that "compliance with [SB 615] is substantially related to the important government interest of safeguarding public funds," *see* ECF No. 52 at 13, does not justify discrimination against transgender students. *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 263 (1974) ("[A] State may not protect the public fisc by drawing an invidious distinction between classes of its citizens.").

DATED: December 2, 2022

Respectfully submitted,

/s/ Isaac D. Chaput
Isaac D. Chaput

Jon W. Davidson (*pro hac vice*)
(admitted only in California)
American Civil Liberties Union
Foundation
120 Broad Street, 18th Floor
New York, NY 10005-3919
Telephone: (323) 536-9880
Facsimile: (212) 809-0055
jondavidson@aclu.org

Paul D. Castillo (*pro hac vice*)
Lambda Legal Defense and
Education Fund, Inc.
3500 Oak Lawn Ave., Ste. 500
Dallas, TX 75219
Telephone: (214) 219-8585
Facsimile: (214) 481-9140
pcastillo@lambdalegal.org

Megan Lambert
Bar Number 33216
Johanna Roberts
Bar Number 33599
American Civil Liberties Union of
Oklahoma Foundation
PO Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
Mlambert@acluok.org
Hroberts@acluok.org

Mitchell A. Kamin (*pro hac vice*)
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
mkamin@cov.com

Isaac D. Chaput (*pro hac vice*)
Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
ichaput@cov.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2022, I electronically filed Plaintiffs' Reply in Support of Motion for Preliminary Injunction with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.


/s/ Isaac D. Chaput
Isaac D. Chaput