UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

A<small>NDREW</small> B<small>RIDGE</small>, *et al.*,

        *Plaintiffs,*

 v.            No.  CIV-22-787-JD

O<small>KLAHOMA</small> S<small>TATE</small> D<small>EPARTMENT OF</small>
E<small>DUCATION</small>, *et al.*

        *Defendants.*

## STATE DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS

Submitted by:

Z<small>ACH</small> W<small>EST</small>, OBA #30768
 *Solicitor General*
O<small>FFICE OF</small> A<small>TTORNEY</small> G<small>ENERAL</small>
 S<small>TATE OF</small> O<small>KLAHOMA</small>
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Zach.West@oag.ok.gov

K<small>YLE</small> P<small>EPPLER</small>, OBA #31681
 *Assistant Solicitor General*
O<small>FFICE OF</small> A<small>TTORNEY</small> G<small>ENERAL</small>
 S<small>TATE OF</small> O<small>KLAHOMA</small>
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Kyle.Peppler@oag.ok.gov

A<small>UDREY</small> W<small>EAVER</small>, OBA #33258
 *Assistant Solicitor General*
O<small>FFICE OF</small> A<small>TTORNEY</small> G<small>ENERAL</small>
 S<small>TATE OF</small> O<small>KLAHOMA</small>
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Audrey.Weaver@oag.ok.gov

W<small>ILLIAM</small> F<small>LANAGAN</small>, OBA #35110
 *Assistant Solicitor General*
O<small>FFICE OF</small> A<small>TTORNEY</small> G<small>ENERAL</small>
 S<small>TATE OF</small> O<small>KLAHOMA</small>
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
William.Flanagan@oag.ok.gov

**COUNSEL FOR STATE DEFENDANTS**          December 2, 2022

In their response, Plaintiffs engage in word games and misdirection, seemingly seeking to avoid dismissal by stoking conceptual confusion. Pushing through the haze, it appears that Plaintiffs are in essence demanding that this Court accept either the irrational proposition that biological boys are the exact same as biological girls (even for purposes of restrooms), or the irrational proposition that sex is an amorphous term that States are prohibited—by the Constitution—from defining based on biology. Or both. Whichever it is, Plaintiffs' view requires a finding that truths that have been understood for centuries are now invidious.

Precedent does not require this, but rather dictates the opposite, and dismissal is proper. Their radical theories aside, Plaintiffs have admitted that the sex of the minors in question was, at birth (*i.e.*, *biologically*), different from the sex designation of the multiple-occupancy restrooms they now demand to use. That is enough, under binding precedent, to merit dismissal. No additional fact that Plaintiffs could establish would entitle them to relief.

**I.      Plaintiffs' contradictory allegations, unwarranted inferences, and barely disguised legal conclusions are not entitled to an assumption of truth.**

To begin, Plaintiffs repeatedly attempt to convert their labels and legal conclusions into factual allegations that must be accepted as true. *See, e.g.*, Doc. 53 at 5, 13 (claiming an allegation of "pretext" is factual). But "hyperbole or legal conclusions[,]" "unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them[,]" "mere conclusions characterizing pleaded facts[,]" and internally contradictory allegations are not well-pled facts entitled to the assumption of truth. *Lockett v. Fallin*, 841 F.3d 1098, 1104 n.2 (10th Cir. 2016); *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (citation omitted).

Among other things, Plaintiffs argue that this Court must accept as true that the stated purpose in SB 615 is an "unfounded pretext to target students who are transgender . . . ." Doc.

1

53 at 5 (quoting Doc. 1 at ¶ 52). This is a legal conclusion, not a fact entitled to the assumption of truth. *See, e.g., Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) ("general allegations of racial animus and discriminatory treatment are too vague and conclusory to state a claim"); *Jones v. Hosemann*, 812 F. App'x 235, 240 (5th Cir. 2020) (unpublished) (allegation of "pretext" is a "purely legal conclusion[]"). Furthermore, Plaintiffs' speculation about legislative purpose is baseless, as Plaintiffs fail to plead any facts to show the purpose of SB 615 is discriminatory rather than "[t]o ensure privacy and safety." OKLA. STAT. tit. 70, § 1-125(B).

This Court is not required to accept as true Plaintiffs' self-contradicting conclusion that their gender identity *is* their sex. *See* Doc. 53 at 6, 18. Instead, one fact pled by each Plaintiff is fatal to their claims for relief:

- "At birth, Andy was designated as 'female' on his birth certificate," Doc. 1 at ¶ 63;
- "At birth, Mark was designated as 'female' on his birth certificate," *id.* at ¶ 75;
- "At birth, Sarah was designated as 'male' on her birth certificate," *id.* at ¶ 94.

*See also id.* at ¶¶ 12-14, 60, 72, 91 (describing Plaintiffs as "transgender"); *and id.* at ¶¶ 27-28 (acknowledging that transgender individuals have "a gender identity that does not align with their sex assigned at birth."); *see also* Doc. 53 at 18 ("[T]he Students each alleged that they are transgender," and "their gender is different than the sex they each were assigned at birth ….").

The only reasonable inference this Court can draw from these factual allegations is that Plaintiff Bridge is a biological female, Plaintiff Miles is a biological female, and Plaintiff Stiles is a biological male.[1] The terms "biological female[,]" "biological male[,]" or "biological sex,"

---

[1] Even if Plaintiffs' gender identity and transgender status are properly pled factual allegations entitled to the assumption of truth, in other words, those facts are irrelevant to the language and application of SB 615, and therefore do not save their implausible claims from dismissal.

as used by State Defendants incorporate the definition relevant to this dispute: the one contained in SB 615.[2] Accordingly, each Plaintiff is either a biological female or biological male "based on genetics and physiology, as identified on the individual's original birth certificate." OKLA. STAT. tit. 70, § 1-125. As a result, Plaintiffs' barebones assertions that "Andy Bridge is a boy, . . . Mark Miles is a boy, . . . Sarah Stiles is a girl[,]" Doc. 53 at 6, do not somehow create a fact dispute sufficient to survive dismissal. *See also id.* (acknowledging Plaintiffs are "transgender."); *see also id.* at 11 (admitting that "sex and gender identity are not identical concepts"). In sum, this Court must reject Plaintiffs' attempt to save their Complaint by improperly conflating their biological sex with their gender identity, in no small part because Plaintiffs fail to identify a single case that embraces this specific point.

Likewise, Plaintiffs cannot dodge the inescapable legal conclusion that their biological sex renders them dissimilar to members of the opposite sex in the context of multiple occupancy restroom and changing area use by representing the conflation of sex and gender identity as a "fact" the Court must accept as true. *See* Doc. 53 at 6 (alleging that separating multiple occupancy restroom use based on biological sex "treats students who are transgender differently from similarly-situated students who happen to be cisgender" (quoting Doc. 1 at ¶ 131)). Plaintiffs, by their own repeated admissions, are not similarly situated in the relevant respect here. As the Supreme Court has explained: "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal citation and marks omitted).

---

[2] Plaintiffs, on the other hand, casually interchange terms such as "gender," "gender identity," "sex," "true sex," "sex assigned at birth," sex "identified at birth," "boys," "girls," "male[s]," and "female[s]," none of which they ever clearly define. *See, e.g.,* Doc. 53 at 1-2, 5-7, 18, 22.

3

## II. Plaintiffs have not and cannot plead any set of facts to establish SB 615 intentionally discriminates in violation of equal protection.

At base, Plaintiffs' legal argument is that sex-based classifications necessarily entail classification based on transgender status. *See* Doc. 53 at 6-7, 22. The obvious import of Plaintiffs' argument is that *all* sex-based classifications inherently, intentionally, and invidiously discriminate based on gender identity. Plaintiffs offer no limiting principle for their theory, nor do they ever identify a single sex-based classification that would be constitutional. *Contra Kahn v. Shevin*, 416 U.S. 351, 356 n.10 (1974) ("Gender has never been rejected as an impermissible classification in all instances."). Rather, Plaintiffs openly compare separating restrooms based on biological sex to invidious racial segregation, *see, e.g.,* Doc. 53 at 7-9 and 16-17, which telegraphs quite plainly where Plaintiffs' logic leads. In sum, if sex-based classification *is* transgender-based equal protection discrimination, then no law recognizing the inherent physical differences between males and females could ever pass constitutional muster, directly contradicting binding precedent. *See also* Doc. 54 at 10-13.

Plaintiffs make no real effort to grapple with binding precedent contradicting their sweeping legal theory, choosing instead to focus on non-binding cases. For example, Plaintiffs ignore *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) and *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 73 (2001), cited by State Defendants as expressly confirming immutable physiological differences between the two sexes are real. *Compare* Doc. 47 at 10 *with* Doc. 53. Although Plaintiffs make a half-hearted attempt to distinguish the facts of *Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464 (1981), they do nothing to establish its legal principles are inapposite here. *Compare* Doc. 47 at 11 (quoting *Michael M.* for the point that "the sexes are not similarly situated in certain circumstances") *with* Doc. 53 at 15 (declaring *Michael M.* "completely

4

inapposite."). Plaintiffs similarly cite *United States v. Virginia*, 518 U.S. 515 (1996), when it suits them, *see* Doc. 53 at 8, 12, while ignoring its unequivocal declaration that "[p]hysical differences between men and women . . . are enduring: '[t]he two sexes are not fungible . . . .'" Doc. 47 at 10 (quoting *Virginia*, 518 U.S. at 533). Finally, Plaintiffs fail to explain why the Tenth Circuit's ruling on bathrooms does not control. *See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215 (10th Cir. 2007). In a footnote, Plaintiffs' only response is that *Bostock*'s reasoning would "equally apply" here. *See* Doc. 53 at 10 n.5 (citing *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731 (2021)). But that misses the point. *Etsitty* is binding on the district court until it is overruled, and neither *Bostock* nor the Tenth Circuit overruled *Etsitty*'s bathroom conclusion. *See* Doc. 47 at 12.

To be sure, Plaintiffs claim in a footnote "that they will not seek any relief in this action that applies beyond multiple occupancy restrooms . . . ." Doc. 53 at 5, n.2. This is a hollow assurance. Plaintiffs offer no explanation for how this Court could logically enjoin only part of SB 615 applying to multiple occupancy restrooms, given that students disrobe or undress, at least partially, in all three of these communal spaces.[3] Nor, importantly, do they even concede that shower or locker room separation based on biology *is* constitutional. Simply put, Plaintiffs cannot distance themselves from the sweeping legal consequences of their facial challenge by disclaiming it as applied to a certain factual scenario.

Because sex-based classifications do not *per se* establish transgender-based discrimination as a matter of law, Plaintiffs fail to plead any set of facts to establish SB 615's sex-separation intentionally discriminates against transgender status or gender identity. *See*

---

[3] Plaintiffs' statement that "[s]tudents do not disrobe or shower in multiple occupancy restrooms in Oklahoma schools," Doc. 53 at 14, is uncited and obviously false. Virtually every use of a urinal or toilet will involve disrobing of some sort.

5

Doc. 47 at 4-8. And contrary to Plaintiffs' conclusory assertions, SB 615 applies equally to and affects all students. *Contra* Doc. 53 at 8-9 (claiming SB 615 "affects only transgender students"). Every student, regardless of gender identity, is prohibited from using the multiple occupancy restroom of the opposite biological sex. A non-transgender boy is affected, for example, because he cannot enter the restroom for girls, and vice versa.

Again, Plaintiffs offer nothing to plausibly establish SB 615 intentionally discriminates based on transgender status. A law is not "unconstitutional Solely because it has a . . . disproportionate impact." *Washington v. Davis*, 426 U.S. 229, 239 (1976); *see also* Doc. 47 at 5. Furthermore, members of the opposite biological sex are not similarly situated when it comes to the use of restrooms and changing areas. Because "the legitimate noninvidious purpose" of SB 615 "cannot be missed[,]" and is unambiguously stated in the plain language, Plaintiffs cannot establish intentional discrimination under any set of facts. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 275 (1979); *see also United States v. O'Brien*, 391 U.S. 367, 383 (1968) ("It is a familiar principle of constitutional adjudication that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.").

Moreover, it is worth reiterating that the Supreme Court held that discrimination based on transgender status is discrimination **based on sex**—not the inverse, or a separate category entirely. *See* Doc. 54 at 13 (citing *Bostock*, 140 S. Ct. 1731). In light of *Bostock*, the Tenth Circuit echoed that "transgender discrimination … is discrimination 'because of sex' prohibited under Title VII." *Tudor v. Se. Oklahoma State Univ.*, 13 F.4th 1019, 1028 (10th Cir. 2021). To go further, to make transgender status an entirely separate category, would require objective sex to yield

6

entirely to subjective gender identity—a position that would obliterate the very sex-based classifications upon which equal protection is predicated in the first place.

In the end, Plaintiffs' equal protection claim is foreclosed by binding precedent, and SB 615 is rationally related to safety and privacy interests which "are legitimate interests." Doc. 53 at 15; *see also* OKLA. STAT. tit. 70, § 1-125 (describing the purpose of SB 615 "[t]o ensure privacy and safety . . . ."); *Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007) (affirming dismissal of equal protection claims because the policy was rationally related to the putative state interest). After all, a law "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quotation omitted).

As to intermediate scrutiny, Plaintiffs *concede* that they "do not challenge the existence of sex-separated facilities at schools." Doc. 53 at 23. To the extent this is taken seriously, rather than treated as another play on words, this Court need not even *reach* the issue of whether the sex-separation within SB 615 withstands intermediate scrutiny. Nevertheless, if intermediate scrutiny is utilized, Plaintiffs cannot create a fact dispute over whether the State "actually" has a substantial interest in privacy and safety, or whether the law is "actually" substantially related to achieving that purpose. Doc. 53 at 15.[4] Plaintiffs openly admit that "safety and privacy of students are legitimate interests[,]" and binding precedent is in agreement. *See, e.g., Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) ("Our precedents also leave no room for doubt that

---

[4] Plaintiffs' arguments on these points are at times hopelessly contradictory. *See, e.g.*, Doc. 53 at 13, 15 (arguing that non-binding courts found justifications of privacy and safety "unfounded and unpersuasive" but conceding that "the safety and privacy of students are legitimate interests").

7

the protection of potential clients' privacy is a substantial state interest.") (quotation omitted); *see also* Doc. 47 at 11-17; *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 604 (6th Cir. 2005) ("Students of course have a significant privacy interest in their unclothed bodies"). Nor is the interest in shielding students' bodily privacy from the presence of the opposite sex "irrelevant" in a place where students literally disrobe to perform bodily functions. *Contra* Doc. 53 at 14.

And it is "almost axiomatic" that SB 615 achieves its privacy and safety interests here by ensuring that students are not forced to disrobe in the presence of members of the opposite sex. *See Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001) ("None of our gender-based classification equal protection cases have required that the statute under consideration must be capable of achieving its ultimate objective in every instance."); *see also* Doc. 54 at 16-19 (describing "that by separating multiple occupancy restroom and changing facilities on the basis of sex, SB 615 eliminates the opportunity for involuntary bodily exposure to the opposite sex in the most common areas where such bodily exposure may take place."); *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 437 (2002) (stating the government "does not bear the burden of providing evidence that rules out every theory ... that is inconsistent with its own").

### III. *Plaintiffs cannot save their Title IX claims by collaterally attacking binding regulations and/or re-defining sex as it is used in Title IX.*

As to Plaintiffs' Title IX claims, Plaintiffs appear to concede that binding regulations expressly permit laws like SB 615 that "separate toilet, locker room, and shower facilities on the basis of sex . . . ." Doc. 53 at 23 (citing 34 C.F.R. § 106.33). Plaintiffs nonetheless attempt to save their Title IX claims by implicitly and collaterally attacking the validity of 34 C.F.R. § 106.33's approval of sex-separated facilities. They do so by arguing that the term "sex" must include gender identity. This, of course, is just a roundabout way of saying that a regulation

8

(or a state statute) separating toilets, locker rooms, and showers based on biological sex is unconstitutional. Plaintiffs' word games continue apace.

Of course, 34 C.F.R. § 106.33 draws support from 20 U.S.C. § 1686, which expressly permits sex-separating "living facilities." Since Title IX's enactment, living facilities have consistently been understood to include restrooms and locker rooms. *See, e.g., Implementing Title IX: The Hew Regulations*, 124 U. PA. L. REV. 806, 810 (1976) ("The term 'living facilities' may include restrooms, lockers, and other school areas where disrobing takes place . . . ."); Jonathan H. Adler, *Auer Evasions*, 16 GEO. J.L. & PUB. POL'Y 1, 20 (2018) ("Title IX expressly allows for the maintenance of single-sex living facilities, such as dormitories, bathrooms, and the like."). Interpreting "living facilities" as encompassing restrooms and the like is further consistent with the legislative intent for Title IX "to permit differential treatment by sex . . . in sports facilities or other instances **where personal privacy must be preserved.**" 118 Cong. Rec. 5,807 (Feb. 28, 1972) (statement of Sen. Birch Bayh) (emphasis added); *see also* Doc. 47 at 20-23. Plaintiffs do virtually nothing to rebut the unassailable evidence that "sex" as used in Title IX meant biological sex. *See* Doc. 47 at 21-22.

Plaintiffs do cite *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), but in doing so they inadvertently reveal why *Grimm* is entirely unpersuasive. *See* Doc. 53 at 23. To say, as *Grimm* did, that sex-separated facilities are permitted but that they can't be applied based on sex (or based on a State's supposedly "discriminatory notions of what 'sex' means") is sophistry at its worst. *Grimm*, 972 F.3d at 618. It is a ruling that sex-separated facilities are not permitted by the U.S. Constitution—despite all the history and binding precedent to the contrary—dressed up in flimsy rhetoric. Although State Defendants do not have the space to

9

fisk every single court decision cited by Plaintiffs, their reasoning is often similarly weak and porous. In the abrogated *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1052 (7th Cir. 2017), for example, Plaintiffs cite the Seventh Circuit's reliance on "[c]ommon sense" for the proposition that a bathroom stall is sufficient for privacy. Doc. 53 at 16. But if common sense is the measuring stick, then is it really "common sense" that underage boys and girls should be required to disrobe and shower in the same room as each other? Of course not. Common sense here, if that is what is being relied on, goes entirely in Defendants' favor.[5]

Plaintiffs also have little answer for the two district court decisions from Tennessee that State Defendants cited. The first, issued one month ago, rebutted the very Title IX arguments Plaintiffs make here: "Any argument that the statute merely allows for the existence of separate restrooms, but does not allow schools to limit access to the restroom to the sex for which it is designated is untenable and appears to contradict the very purpose of allowing separate facilities." *D.H. by A.H. v. Williamson Cnty. Bd. of Educ.*, No. 3:22-CV-00570, 2022 WL 16639994, at *10 (M.D. Tenn. Nov. 2, 2022). For the second, Plaintiffs claim that the court's decision was based solely on procedural grounds. Doc. 53 at 24. But they ignore the court's findings that "*Bostock* does not require" the same warped interpretation of Title IX put forth by Plaintiffs here, and that the federal entities—in touting that warped view—"fail[ed] to cabin themselves to *Bostock*'s holding" and instead "advance[d] *new* interpretations of Titles VII and IX and impose[d] *new* legal obligations on regulated entities." *Tenn, v. U.S. Dep't of Educ.*, No. 3:21-CV-308, 2022 WL 2791450, at *16 (E.D. Tenn. July 15, 2022) (emphasis in original).

---

[5] Moreover, in criticizing State Defendants for citing older decisions or dissents, Plaintiffs appear to forget that non-binding case law is only good so far as it is persuasive—and a dissent or even an "outdated" decision can be just as persuasive if not more so than a majority.

Respectfully submitted,

*s/ Audrey Weaver*
ZACH WEST, OBA #30768
  *Solicitor General*
KYLE PEPPLER, OBA #31681
AUDREY A. WEAVER, OBA #33258
William Flanagan, OBA #35110
  *Assistant Solicitors General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Zach.West@oag.ok.gov
Kyle.Peppler@oag.ok.gov
Audrey.Weaver@oag.ok.gov
William.Flanagan@oag.ok.gov
*Counsel for State Defendants*