**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| Andrew Bridge, et al., *Plaintiffs*, v. Oklahoma State Department of Education, et al., *Defendants*. | Case No.: CIV-22-787-JD |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *ADAMS V. SCHOOL BOARD OF ST. JOHNS COUNTY***

This brief responds to the Court's January 5, 2023 order (the "January 5 Order") asking the parties to address whether the en banc decision in *Adams v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc), impacts any issues or filings before this Court and procedural sameness or differences between *Adams* and this case, as well as other recent opinions relevant to the issues raised in the briefs. *See* ECF No. 68. As explained below, nothing in the *Adams* decision affects the Students' pleadings or entitlement to preliminary injunctive relief in this case, and other recent decisions support the Students' positions.

In July 2018, following a three-day bench trial on the merits, the U.S. District Court for the Middle District of Florida entered judgment in favor of Drew Adams, a Florida high school student, finding that his school district's policy barring him from the boys' restroom because he is transgender violated the Fourteenth Amendment to the U.S. Constitution and

Title IX of the Education Amendments of 1972 ("Title IX"). *Adams v. Sch. Bd. of St. Johns Cty.*, 318 F. Supp. 3d 1293 (M.D. Fla. 2018). In July 2021, the U.S. Court of Appeals for the Eleventh Circuit affirmed the district court's judgment.[1] The next month, the Eleventh Circuit granted a petition for rehearing en banc, vacating the July 2021 panel decision. In December 2022, the Eleventh Circuit, sitting en banc, reversed the district court's judgment. *Adams v. Sch. Bd. of St. Johns Cty.*, 57 F.4th 791 (11th Cir. 2022) (en banc).

Nothing in *Adams* changes the Students' entitlement to preliminary injunctive relief or the validity of their claims. The vast weight of authority, from both federal appellate and district courts, holds that restrictions on transgender students' access to multiple occupancy restrooms matching their gender identity discriminate based on sex, transgender status, gender conformity, and/or sex stereotypes and violate or likely violate the Equal Protection Clause and Title IX. The en banc decision in *Adams*—an out-of-circuit opinion wrongly decided both on the factual record and applicable law—stands as an outlier, at odds with the overwhelming weight of authority throughout the country. To the extent the Court considers *Adams* at all, Judge Jill Pryor's thorough dissenting opinion, which is faithful to both the factual record and relevant law, should guide the Court's analysis. *Adams*, 57 F.4th at 832–60 (Pryor, J., dissenting). But as the State Defendants have conceded, because *Adams* is non-binding, out-of-circuit authority, the en banc decision ultimately is "no

---

[1] The Eleventh Circuit had originally affirmed the district court order in August 2020. *Adams v. Sch. Bd. of St. Johns Cty.*, 968 F.3d 1286 (11th Cir. 2020). After a member of that court withheld the mandate, the panel majority sua sponte withdrew its initial opinion and issued a revised opinion in July 2021, again affirming the district court order. *Adams v. Sch. Bd. of St. Johns Cty.*, 3 F.4th 1299 (11th Cir. 2021).

substitute for this Court's independent legal analysis." *See* State Defs.' Resp. to Pls.' Mot. for Prelim. Inj. (ECF No. 54) at 13.[2]

## ARGUMENT

### I.   THE PROCEDURAL POSTURE HERE DIFFERS FROM THAT IN *ADAMS* IN SUBSTANTIAL AND SIGNIFICANT RESPECTS.

The procedural posture in *Adams* differs greatly from that in this case. In *Adams*, the district court issued a final judgment and made findings of fact and conclusions of law following a three-day bench trial. *Adams*, 318 F. Supp. 3d at 1298–1327. In so doing, the district court developed what the Eleventh Circuit referred to as "a thorough factual record." *Adams*, 3 F.4th at 1304.

As the en banc panel recognized, after a bench trial the appellate court reviews the district court's conclusions of law *de novo* but must review the district court's factual findings only for clear error. *Adams*, 57 F.4th at 799. Clear error is widely recognized as a high threshold. Indeed, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985); *see also Wallace v. NCL (Bahamas) Ltd.*, 733 F.3d 1093, 1100 (11th Cir. 2013) (clear error is a "highly deferential standard of review").

---

[2] *See Adams*, 57 F.4th at 860 (Pryor, J., dissenting) ("As to equal protection claims by transgender students, the facts unique to each case will determine whether a school district has met its burden under heightened scrutiny.").

3

Notwithstanding the en banc panel's recognition that it must generally defer to the district court's factual findings, the en banc panel largely ignored the factual record below or imposed its own skewed lens on the district court's findings. As Judge Jill Pryor recounted in her vigorous dissent, "the majority opinion d[id] not challenge these findings," yet "reframe[d] th[e] case to its liking" and "reverse[d] the district court without addressing the question presented, without concluding that a single factual finding [wa]s clearly erroneous, without discussing any of the unrebutted expert testimony, and without putting the School District to its evidentiary burden." *Adams*, 57 F.4th at 833, 842 (Pryor, J., dissenting); *see also id.* at 832 (Pryor, J., dissenting) (en banc panel's conclusion that gender identity had no bearing on transgender student's case rests on "disregard of the record evidence—evidence the majority does not contest").

Rather than deferring to the district court's factual findings or identifying any clear error in those findings, the en banc panel substituted its own facts, in particular introducing the term "biological sex" to excuse the school district's discrimination against transgender students. *Id.* at 842–44 (Pryor, J., dissenting). The en banc panel defined "biological sex" as "sex based on chromosomal structure and anatomy at birth" based solely on its own *ipse dixit*, disregarding "unrefuted evidence that gender identity is an immutable, biological component of sex, not something entirely separate." *Id.* at 796; *id.* at 842 (Pryor, J., dissenting). As the district court record in *Adams* established, as Judge Pryor recognized, and as the Students have demonstrated here through expert testimony, "biological sex" "encompasses numerous biological components, *including* gender identity," which should be viewed as the primary component particularly when, as here, "a student's biological

4

markers of sex diverge—as they will with all transgender students because, by definition, their gender identity is different from their sex assigned at birth." *Id.* at 842 (Pryor, J., dissenting) (emphasis added). The en banc panel's misuse of the term "biological sex" in contravention of the factual record in *Adams* is but one procedural error permeating the entire opinion and distinguishing it from this case. *See id.* at 844 (Pryor, J., dissenting).

Putting aside the significant procedural errors made by the en banc panel, the relevant standard of review here is much more favorable to the Students than the applicable standard in *Adams*. Unlike in *Adams*, where the transgender student was required to prove by a preponderance of the evidence at trial that the school board violated his rights under the Equal Protection Clause and/or Title IX and that this violation caused him damage, *see Adams*, 318 F. Supp. 3d at 1310, in reviewing the State Defendants' motion to dismiss in this case, the Court must view "the totality of the circumstances as alleged in the complaint in the light most favorable to [the Students], accepting the [Students'] well-pled facts as true and drawing all reasonable inferences in the [Students'] favor." *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019); *see also* Pls.' Opp'n to State Defs.' Mot. to Dismiss (ECF No. 53) at 3. And unlike in *Adams*, to prevail on their motion for preliminary injunction, the Students need demonstrate only a substantial likelihood that they will succeed on the merits, not that they have already proved their case by a preponderance of the evidence. *See* Pls.' Mot. for Prelim. Inj. at 11. These are less demanding standards of review than that in *Adams*, and the Students easily satisfy them on the current record.

The Court must decide the adequacy of the Students' pleadings based solely on the specific allegations in their complaint, not the unsupported "factual" assertions underlying

5

the *Adams* en banc ruling. Likewise, the Court must decide the Students' entitlement to preliminary injunctive relief based on the factual record here, which includes unrebutted expert and lay testimony regarding the irreparable harms inflicted on the Students by SB 615 and the School Defendants' disciplinary policies—a record that is at odds with the *Adams* en banc panel's view of the issues and evidence before it.

## II. THE *ADAMS* EN BANC DECISION IS AN OUTLIER, INCONSISTENT WITH THE VAST WEIGHT OF AUTHORITY, AND SHOULD HAVE NO IMPACT ON THE COURT'S CONSIDERATION OF THIS CASE.

Aside from the en banc panel's plain and improper disregard of the district court's factual findings in *Adams*, the en banc decision is wrong on the merits. As demonstrated in the parties' briefing on the motion to dismiss and motion for preliminary injunction here, the overwhelming weight of recent authority is in the Students' favor. *See, e.g.*, Pls.' Mot. for Prelim. Inj. at 12 & n.6. It is undisputed that every court of appeals to have considered these issues prior to the *Adams* en banc panel, and numerous district courts, have held that excluding transgender students from multiple occupancy school restrooms consistent with their gender identity violates or is likely to violate the Equal Protection Clause and Title IX. The Eleventh Circuit stands alone in concluding otherwise. The *Adams* en banc decision is nothing more than an outlier, wrongly decided on the facts and relevant law.

As an initial matter, the *Adams* en banc decision does not even attempt to grapple with or distinguish—let alone acknowledge—the numerous other federal appellate and district court decisions contrary to its reasoning or outcome, all of which the Students addressed in their briefing and with which the State Defendants did not seriously contend. *See* Pls.' Mot. for Prelim. Inj. at 12 & n.6; Pls.' Opp'n to State Defs.' Mot. to Dismiss at

6

13 & n.7; *see also* State Defs.' Resp. to Pls.' Mot. for Prelim. Inj. at 13 (acknowledging "favorable district and circuit court rulings" for the Students).

Despite the en banc panel's broad disregard of relevant case law, the *Adams* en banc decision at least supports the conclusion that SB 615 is subject to heightened or intermediate scrutiny, not rational basis review. The en banc panel recognized that a policy excluding transgender students from restrooms that do not match their "sex determined at birth" is a "sex-based classification." *Adams*, 57 F.4th at 801. Because that policy "classifies on the basis of biological sex," the en banc panel held that it was "subject to intermediate scrutiny." *Id.* at 803. The same is true here.

Not only does SB 615 contain a sex-based classification, but like the policy in *Adams*, SB 615 facially targets transgender students, as it is only those who are transgender who are barred from using a bathroom consistent with their gender identity. *See id.* at 845–46 (Pryor, J., dissenting); *see also* Pls.' Opp'n to State Defs.' Mot. to Dismiss at 8–9.[3] SB 615, like the policy in *Adams*, permits cisgender students to use the restroom matching their gender identity but prevents transgender students from doing the same. Accordingly, like the policy at issue in *Adams*, SB 615 "facially discriminates against transgender students by depriving them of a benefit that is provided to all cisgender students. It places all transgender students on one side of a line, and all cisgender students on the other side."

---

[3] The *Adams* en banc panel erred in not considering that such a policy discriminates not only based on sex but also on the basis of transgender status, which—as the Students have argued, *see* Pls.' Mot. for Prelim. Inj. at 14–16, and as Judge Pryor's dissent demonstrates—independently meets all of the requirements for heightened scrutiny. *See Adams*, 57 F.4th at 845–46 (Pryor, J. dissenting).

*Adams*, 57 F.4th at 846 (Pryor, J., dissenting); *id.* at 845 (Pryor, J., dissenting) ("[T]he bathroom policy categorically deprives transgender students of a benefit that is categorically provided to all cisgender students—the option to use the restroom matching one's gender identity."). Because SB 615 and the School Defendants' disciplinary policies facially discriminate against transgender students based on their transgender status, intermediate scrutiny applies independently of whether SB 615 is recognized as making a sex-based classification.

For these reasons, the en banc panel's reliance on *Geduldig v. Aiello*, 417 U.S. 484 (1974), was misplaced. *Geduldig* involved the exclusion of pregnancy-related disabilities from a state insurance program. The Supreme Court ruled that this exclusion did not discriminate based on sex because some women—those who were not pregnant—benefitted from a less comprehensive and less costly insurance program that otherwise would demand a higher rate of employee contribution or a lower scale of benefits for those suffering insured disabilities. *Id.* at 494–97. While some women (those disabled by pregnancy) were harmed by the exclusion, other women (as well as men who could not become pregnant) were not harmed and instead benefitted. As a result, the program was held not to discriminate against women as a class. *Id.* at 496. Unlike in *Geduldig*, however, under SB 615, no "benefits of the [law] accrue to" any transgender students. *Adams*, 57 F.4th at 846 (Pryor, J., dissenting) (quoting *Geduldig*, 417 U.S. at 496 n.20). Transgender students—and only transgender students—are harmed by being "denied the benefit of

using the restrooms corresponding to their gender identities." *Id.* (Pryor, J., dissenting).[4] SB 615 harms transgender students as a class, discriminating against them on the basis of both their sex and their transgender status. This constitutes facial discrimination against transgender students. *Id.* (Pryor, J., dissenting); *see also Fain v. Crouch*, 2022 WL 3051015, at *8 (S.D.W. Va. Aug. 2, 2022) (rejecting argument that state law that denied transgender individuals treatment available to cisgender individuals was facially neutral under *Geduldig*).

While the *Adams* en banc panel found that the restroom policy there satisfied heightened scrutiny based on student privacy interests (and, tellingly, it did not rely on alleged concerns about student *safety* as a sufficient justification for the policy), that fact-specific determination has no bearing on whether or not—based on the current record and in the current procedural posture of this case—SB 615 serves an important governmental objective and is substantially related to achieving it. On the record in this case, there is no basis for dismissal of the Students' claims on the pleadings, and this Court should enter the preliminary injunction the Students seek. As Judge Pryor observed with respect to the policy in *Adams*, even if the State Defendants' asserted interest of student "privacy" is a

---

[4] The error of the *Adams* en banc panel is further confirmed by *Obergefell v. Hodges*, 576 U.S. 644 (2015). There the Supreme Court recognized that the restriction of marriage to different-sex couples treated gay men and lesbians as "unequal" to heterosexuals by locking gay men and lesbians and only them out of marriage. *Id.* at 670. It did not matter that state marriage restrictions never expressly referred to gay men or lesbians. It also did not matter that some gay men and lesbians did not have a partner they wished to marry. *All* gay men and lesbians were denied the ability to marry, just as *all* transgender students are denied the ability under SB 615 to use restrooms consistent with their gender identity. This is facial discrimination, which the Supreme Court in *Obergefell* held violated not only the fundamental right to marry but also the Equal Protection Clause. *See id.* at 672–75.

sufficiently important interest to satisfy heightened scrutiny, the State Defendants have failed to carry their burden to demonstrate that SB 615 is substantially related to that asserted interest.[5] *See* Pls.' Mot. for Prelim. Inj. at 16–19; Pls.' Reply in Supp. of Mot. for Prelim. Inj. (ECF No. 62) at 11–13. Just as in *Adams*, the State Defendants' purported evidence in support of SB 615 amounts to bald speculation from certain Oklahoma parents that "the mere presence of, for example, a transgender girl could make a cisgender girl feel as uncomfortable in the bathroom as she might be in the presence of a cisgender boy." *Adams*, 57 F.4th at 851 (Pryor, J., dissenting). But "generalized guesses about how school-aged cisgender students may or may not feel with transgender students in the bathroom is not enough to carry the heavy weight of heightened scrutiny." *Id.* (Pryor, J., dissenting).

The en banc panel's analysis with respect to Title IX is equally flawed. Just as Judge Pryor recognized with respect to the policy in *Adams*, "a but-for cause of [the Students'] discriminatory exclusion from [the restrooms associated with their gender identity] was 'sex' within the meaning of Title IX," resulting in violation of Title IX. *Id.* at 858 (Pryor, J., dissenting).[6] Any statutory or regulatory carveout to Title IX is irrelevant. The exceptions to Title IX simply suggest that "the act of creating sex-separated [facilities] in and of itself is not discriminatory." *Id.* (Pryor, J., dissenting); *see also* Pls.' Opp'n to State

---

[5] *See, e.g.*, *Adams*, 57 F.4th at 832 (Pryor, J., dissenting) (school district "bore the evidentiary burden of demonstrating a substantial relationship between its bathroom policy and its asserted governmental interests"); *id.* at 850–51 (Pryor, J., dissenting) ("The burden of justification is demanding and it rests entirely on the School District.").

[6] *See Adams*, 57 F.4th at 856 (Pryor, J., dissenting) ("[O]nly cisgender students receiv[e] the benefit of being permitted to use the restroom matching their gender identity [while] transgender students [are] denied that benefit.").

Defs.' Mot. to Dismiss at 23–24. Like the plaintiff in *Adams*, the Students are not challenging the creation of sex-separated facilities in the present case, only their exclusion from multiple occupancy school restrooms that match their gender identity when cisgender students are not so excluded. *See Adams*, 57 F.4th at 832 (Pryor, J., dissenting). Title IX's exceptions do not "address how an educational institution may assign a person to a facility when the biological markers of his sex point in different directions" or "permit an educational institution to rely on its own discriminatory notions of what 'sex' means." *Id.* at 859 (Pryor, J., dissenting).

In sum, the *Adams* en banc decision should have no impact on the Court's decision in this case. That decision reflects a wholesale disregard of the factual record developed in the district court, a flawed and unsupported understanding of the role of gender identity in determining biological sex, and a failure to acknowledge relevant case law. The decision should be discounted as erroneous and contrary to the overwhelming weight of recent decisions finding in favor of transgender students on the issues presented here.

### III. OTHER RECENT DECISIONS FURTHER DEMONSTRATE THAT THE STUDENTS' CLAIMS SHOULD NOT BE DISMISSED AND THAT PRELIMINARY INJUNCTIVE RELIEF IS WARRANTED HERE.

The Court's January 5 Order also instructed the parties to "direct the Court to and discuss any other authority directly relevant to an issue raised in a pending motion that was issued after the briefing on that motion was filed." *See* ECF No. 68. Several recent decisions entered after the Students' briefing was completed on the motion to dismiss and motion for preliminary injunction warrant the Court's attention.

In *Hammons v. University of Maryland Medical System Corp.*, a transgender man sued various health systems associated with the University of Maryland, pursuant to Section 1557 of the Affordable Care Act ("ACA"), claiming sex discrimination in the health systems' refusal to allow him to have a hysterectomy performed at their hospital to treat his gender dysphoria. 2023 WL 121741, at *1 (D. Md. Jan. 6, 2023). Section 1557 of the ACA relies on the availability of a claim under Title IX. Therefore, "as under Title IX, Section 1557 prohibits discrimination 'on the basis of sex.'" *Id.* at *5 (citation omitted).

In granting summary judgment in favor of the transgender man, the court concluded that "maintaining a policy against providing gender-affirming care ... and applying that policy [to the transgender man] when cancelling his surgery [wa]s discrimination on the basis of sex." *Id.* at *7. In so holding, the court relied upon the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), on which the Students likewise relied in their briefing on the pending motions. Applying the reasoning of *Bostock*, the court in *Hammons* found that "if a hospital has a policy against performing a surgery to treat gender dysphoria—a condition inextricably related to a person's sex—but will perform that surgery to treat any other medical diagnosis, the hospital intentionally relies on sex in its decisionmaking." *Hammons*, 2023 WL 121741, at *7. The court also relied upon the Fourth Circuit's decision in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), which was discussed in the parties' briefs in this case. *Hammons*, 2023 WL 121741, at *7; *see also* Pls.' Mot. for Prelim. Inj. at 21; Pls.' Reply in Supp. of Mot. for Prelim. Inj.

at 14; Pls.' Opp'n to State Defs.' Mot. to Dismiss at 17–19.[7] *Hammons* thus provides further support for the conclusion that there is a substantial likelihood the Students will prevail on their Title IX claims. *See also C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*, 2022 WL 17788148, at *5–6 (W.D. Wash. Dec. 19, 2022) (insurance provider violated Section 1557 of the ACA, and by extension Title IX, by denying coverage for gender-affirming care in self-funded health care plans).

In *Soule by Stanescu v. Connecticut Association of Schools, Inc.*, the Second Circuit found that a Connecticut interscholastic athletic conference could not be held liable under Title IX for permitting transgender students to compete on gender-specific athletic teams consistent with their gender identity. 57 F.4th 43 (2d Cir. 2022). The court found that the athletic conference lacked notice that such a policy could violate Title IX, proving fatal to Title IX claims brought by cisgender students. *Id.* at 54–55. In concluding that the athletic conference lacked such notice, the court cited "the Supreme Court's recent decision in

---

[7] The Students anticipate that the State Defendants may reference the recent decision in *B.P.J. v. West Virginia State Board of Education*, 2023 WL 111875 (S.D. W. Va. Jan. 5, 2023), in their supplemental briefing; however, that decision, which did not concern transgender students' use of school restrooms, is distinguishable from the facts here. Moreover, the *B.P.J.* court failed to follow binding Fourth Circuit precedent, including the *Grimm* decision. The *Hammons* court, on the other hand, properly applied circuit precedent and in so doing provided an analysis and reached an outcome that fully support the Students' position here. In *B.P.J.*, the court found constitutionally permissible a West Virginia statute excluding all "biological males," defined to include transgender girls, from participation on girls' sports teams. *Id.* at *1. The court denied the plaintiff's motion for summary judgment on her equal protection and Title IX claims, holding that the statute was substantially related to the important government interest of providing equal athletic opportunities for females and did not violate Title IX because transgender girls were not excluded from school sports entirely. *Id.* at *5–10. That decision—which, again, involved facts different from those here and, in any event, improperly disregarded controlling Fourth Circuit precedent—has been appealed. *See B.P.J. v. W. Va. State Bd. of Educ.*, No. 23-1078 (4th Cir.).

*Bostock* … and the decisions of [its] sister circuits interpreting Title IX," including decisions holding that Title IX does not prohibit schools from treating transgender students consistent with their gender identity and "establish[ing] that discrimination based on transgender status is generally prohibited under federal law." *Id.* at 55–56. Like *Hammons*, the *Soule* decision provides further support for the Students' Title IX claims, including the Students' reliance on *Bostock*.

## CONCLUSION

The *Adams* en banc decision is an outlier, wrong on the law and the facts, and should have no impact on this case. For the reasons discussed above and in their prior briefing, the Students have adequately pleaded claims under the Equal Protection Clause and Title IX and are entitled to preliminary injunctive relief.

DATED: February 6, 2023                    Respectfully submitted,

                                                                      /s/ Isaac D. Chaput
                                                                      Isaac D. Chaput

| | |
|---|---|
| Jon W. Davidson (*pro hac vice*) <br> (admitted only in California) <br> American Civil Liberties Union Foundation <br> 120 Broad Street, 18th Floor <br> New York, New York 10005-3919 <br> Telephone: (323) 536-9880 <br> Facsimile: (212) 809-0055 <br> jondavidson@aclu.org | Paul D. Castillo (*pro hac vice*) <br> Lambda Legal Defense and Education Fund, Inc. <br> 3500 Oak Lawn Ave., Ste. 500 <br> Dallas, Texas 75219 <br> Telephone: (214) 219-8585 <br> Facsimile: (214) 481-9140 <br> pcastillo@lambdalegal.org |
| Megan Lambert <br> Bar Number 33216 <br> American Civil Liberties Union of Oklahoma Foundation <br> PO Box 13327 <br> Oklahoma City, OK 73113 <br> Telephone: (405) 525-3831 <br> Mlambert@acluok.org | Mitchell A. Kamin (*pro hac vice*) <br> Covington & Burling LLP <br> 1999 Avenue of the Stars <br> Los Angeles, CA 90067 <br> Telephone: (424) 332-4800 <br> mkamin@cov.com <br><br> Isaac D. Chaput (*pro hac vice*) <br> Covington & Burling LLP <br> Salesforce Tower <br> 415 Mission Street, Suite 5400 <br> San Francisco, CA 94105 <br> Telephone: (415) 591-6000 <br> ichaput@cov.com <br><br> *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, I electronically filed Plaintiffs' Supplemental Brief Regarding *Adams v. School Board of St. Johns County* with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

/s/ Isaac D. Chaput
Isaac D. Chaput