UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ANDREW BRIDGE, *et al.*,

*Plaintiffs,*

v.

OKLAHOMA STATE DEPARTMENT OF
EDUCATION, *et al.*

*Defendants.*

No.   CIV-22-787-JD

## STATE DEFENDANTS' SUPPLEMENTAL BRIEF

Submitted by:

ZACH WEST, OBA #30768
  *Director of Special Litigation*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Zach.West@oag.ok.gov

KYLE PEPPLER, OBA #31681
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Kyle.Peppler@oag.ok.gov

AUDREY WEAVER, OBA #33258
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Audrey.Weaver@oag.ok.gov

WILLIAM FLANAGAN, OBA #35110
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
William.Flanagan@oag.ok.gov

**COUNSEL FOR STATE DEFENDANTS**          **February 6, 2023**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ...................................................................................1

I.   *ADAMS* COUNSELS STRONGLY TOWARDS DISMISSAL OF THIS CASE. .....................1

     a.   *Adams* dismantles Plaintiffs' sweeping case law claims............................ 2

     b.   *Adams* is on point, legally and factually, with the present case. ................ 3

     c.   *Adams* embraced many of State Defendants' arguments and rejected
          many of Plaintiffs' arguments............................................................. 5

     d.   Per *Adams*, the restroom question is a legal one, not a factual one. .........10

     e.   *Adams* relied on additional arguments with which State
          Defendants agree................................................................................14

II.  ADDITIONAL AUTHORITY COUNSELS TOWARD DISMISSAL OF THIS CASE. ..........16

     a.   A federal district court upheld West Virginia's separation of public-school
          sports teams based on biological sex. ...............................................16

     b.   In an unpublished opinion, the Tenth Circuit reaffirmed that the
          Constitution permits the separation of the sexes in athletics..........................18

CONCLUSION ...................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Sch. Bd. of St. Johns Cty.,*
   57 F.4th 791 (11th Cir. 2022) ..................................................................*passim*

*B.P.J. v. W. Va. State Bd. of Educ.,*
   2:21-CV-00316, 2023 WL 111875 (S.D.W. Va. Jan. 5, 2023) ........................ 16, 17

*Bd. of Educ. v. Earls,*
   536 U.S. 822 (2002) ....................................................................................5

*Bostock v. Clayton County,*
   140 S. Ct. 1731 (2020) ................................................................................9

*Bucklew v. Precythe,*
   139 S. Ct. 1112 (2019) ...............................................................................11

*Frontiero v. Richardson,*
   411 U.S. 677 (1973) ....................................................................................9

*Geduldig v. Aiello,*
   417 U.S. 484 (1974) ...................................................................................14

*Gordon v. Jordan Sch. Dist.,*
   No. 21-4044, 2023 WL 34105 (10th Cir. Jan. 4, 2023) .......................... 18, 19

*Indep. Sch. Dist. No. 89 v. City of Okla. City,*
   1986 OK 47, 722 P.2d 1212 ........................................................................5

*Pennhurst State Sch. & Hosp. v. Halderman,*
   451 U.S. 1, 17 (1981) ................................................................................15

*Vernonia Sch. Dist. 47J v. Acton,*
   515 U.S. 646 (1995) ...................................................................................14

**Statutes**

20 U.S.C. § 1686 ...............................................................................................7

OKLA. STAT. tit. 70 § 1-125 ......................................................................... 3, 4

OKLA. STAT. tit. 70 § 27-106 .............................................................................17

**Rules**

34 C.F.R. § 106.33 ..............................................................................................7

**Other Authorities**

*En Banc Brief of Amici Curiae States of Tenn., et al., Adams,*
   57 F.4th 791 (No. 18-13592), 2021 WL 5028041 .......................................4

**INTRODUCTION**

On December 30, 2022, the *en banc* Eleventh Circuit held that the "unremarkable—and nearly universal—practice of separating school bathrooms based on biological sex" does not violate the Equal Protection Clause or Title IX. *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cty.*, 57 F.4th 791, 796 (11th Cir. 2022). A week later, in the present case, this Court requested supplemental briefing on new authorities like *Adams* to assist in ruling on the pending motions. Doc. 68. In the following pages, State Defendants explain why *Adams* and other recent decisions provide substantial support for denying an injunction of Senate Bill 615 ("S.B. 615") to Plaintiffs, Doc. 24, and for granting State Defendants' motion to dismiss, Doc. 47. As *Adams* illustrates, nothing in federal law prohibits public schools from separating bathrooms, locker rooms, showers, sports teams, and the like based on biological sex.

I.    *ADAMS* COUNSELS STRONGLY TOWARDS DISMISSAL OF THIS CASE.

This Court asked for supplemental briefing on whether the *Adams* decision "impacts any of the issues or filings before this Court (and if so, which particular filings)." Doc. 68. An Eleventh Circuit decision is not binding on this Court, of course. And when it comes to non-binding case law, "a dissent or even an 'outdated' decision can be just as persuasive if not more so than a majority." Doc. 63 at 10 n.5. Thus, the impact *Adams* has on key issues and filings in this case is largely through its persuasiveness in explaining what the Constitution and federal law do or do not require.

The *Adams* majority opinion, authored by Judge Barbara Lagoa and joined by six of her colleagues, is highly persuasive in demonstrating that neither the Constitution nor Title IX prohibits the longstanding practice of separating school bathrooms based on sex. *Adams* is on

point, it adopted many of the arguments made by State Defendants in the present case, and it rejected multiple arguments made here by Plaintiffs. And critically, the *Adams* majority relied extensively on Supreme Court precedent on sex distinctions, which *is* binding—both on the Eleventh Circuit and this Court. At a bare minimum, then, *Adams* spells out in thorough detail why Plaintiffs are not likely to succeed here, and thus why their motion for a preliminary injunction should be denied. Doc. 24. Going further, *Adams* persuasively indicates that this debate is at its core a legal question, not a factual one. Thus, *Adams* counsels strongly in favor of this Court granting State Defendants' motion to dismiss. Doc. 47.

### a. *Adams* dismantles Plaintiffs' sweeping case law claims.

As an initial matter, Plaintiffs have repeatedly made wild claims about the state of federal case law regarding school restrooms. They have asserted, for example, that "State Defendants rely on … legal arguments that have been rejected by *countless* courts across the country addressing the *exact* type of discrimination alleged here." Doc. 53 at 1 (emphases added). They have also argued that "State Defendants rely on *widely rejected*, non-precedential dissenting opinions and *outdated* cases." *Id.* at 9-10 (emphases added). Even before *Adams*, this was not a fair portrayal of the state of play in federal courts. *See, e.g.,* Doc. 54 at 13-15. The Eleventh Circuit's release of the *Adams* decision, however, undeniably topples Plaintiffs' attempt to convince this Court that any ruling in State Defendants' favor would have to rely on "widely rejected" or "outdated" legal arguments found only in dissents.

Contrariwise, this Court could now rule in favor of State Defendants by simply citing to the most recent and prominent case law development in this arena. To the extent that counting judicial heads matters, as Plaintiffs' previous arguments imply, seven federal appellate

judges just agreed with many of the arguments put forth by State Defendants and rejected arguments like those made by Plaintiffs. *See infra* pp. 5-10. And if the recency or date of a decision matters, as Plaintiffs have indicated, this factor now counsels in favor of State Defendants. Stated differently, the Eleventh Circuit just became the first *en banc* appellate court to tackle this issue head-on, and it held decisively that protecting student privacy in restrooms through separation of the biological sexes is "unremarkable," constitutional, and copacetic under Title IX. *Adams*, 57 F.4th at 796. *Adams*, in short, has eliminated one of Plaintiffs' most prominent contentions in this lawsuit.

### b. *Adams* is on point, legally and factually, with the present case.

In the ways that matter, *Adams* is on point with the case presented here. Factually, *Adams* involved a school policy "under which male students must use the male bathroom and female students must use the female bathroom … on the basis of biological sex—which the School Board determines by reference to various documents, including birth certificates …." *Id.* at 797. Likewise, the Oklahoma law challenged here designates every multiple occupancy public school restroom for the "exclusive use" of the male or female sex "based on genetics and physiology, as identified on the individual's original birth certificate." OKLA. STAT. tit. 70 § 1-125(A)-(B). Furthermore, the school policy in *Adams* provided for "[s]ingle-stall, sex-neutral bathrooms … to accommodate any student," *Adams*, 57 F.4th at 797, and Oklahoma's law requires "access to a single-occupancy restroom or changing room" as a "reasonable accommodation," OKLA. STAT. tit. 70 § 1-125(C). Finally, the *Adams* policy was based on "concerns about the privacy, safety, and welfare of students pursuant to the School Board's duties under the governing Florida statute," *Adams*, 57 F.4th at 797, which are the same

concerns written into the very text of the governing Oklahoma statute, OKLA. STAT. tit. 70 §

1-125(B), a law enacted "[t]o ensure privacy and safety." There is no daylight, substantively,

between the school policy in *Adams* and the Oklahoma law at the center of this lawsuit.

Nor is there any daylight present when comparing the legal nature of the two cases. In

*Adams*, the plaintiff challenged the Florida school district's policy under the Equal Protection

Clause and Title IX—the exact two claims at issue in the present dispute. *Compare* Complaint,

Doc. 1 at 34-39, ¶¶ 125-147, *with Adams*, 57 F.4th at 800. And the Eleventh Circuit ruled on

both those claims, rejecting them completely and with little indication that alternative legal

arguments could somehow change the evaluation. *See, e.g.*, *Adams*, 57 F.4th at 809 ("[T]he

Supreme Court has repeatedly recognized the biological differences between the sexes by

grounding its sex-discrimination jurisprudence on such differences."). And it is not as if the

Eleventh Circuit was deprived of the full panoply of arguments on these issues. To the

contrary, *twenty-five* different amicus briefs were submitted to that court. *See id.* at 793. This

included a brief from the United States, whose arguments the Eleventh Circuit rejected, as

well as a brief from Oklahoma and 16 other states in favor of the Florida school district. *See*

*En Banc Brief of Amici Curiae States of Tenn., et al.*, *Adams*, 57 F.4th 791 (No. 18-13592), 2021 WL

5028041, at *3 ("The age-old practice of assigning students to restrooms based on biological

sex does not violate the Equal Protection Clause or Title IX."). Therefore, the cases are not

significantly different.

To be sure, there are aspects of the *Adams* lawsuit that do not match up perfectly with

the present case. But none of those details are obviously critical—or even particularly

relevant—to the Eleventh Circuit's ultimate and broadly phrased legal conclusion that

"separating school bathrooms based on biological sex passes constitutional muster and comports with Title IX." *Id.* at 796. For instance, there is no significance in the fact that *Adams* involved a single school district's policy, whereas the case presented here involves a statewide statute—especially when the two approaches are functionally identical when it comes to restrooms. The Eleventh Circuit, after all, repeatedly acknowledged that its decision would extend "far beyond" just the plaintiff or school district in that case. *Id.* at 816; *see also id.* ("[A]ffirming the district court's order … would, at the very least, generally impact living facilities, locker rooms, and showers, in addition to bathrooms, at schools across the country …."). Nor is a State or legislature any less of a "school authorit[y]" deserving of "deference" than a school district. *See id.* at 802 ("[I]n a public school environment[,] … the <u>*State*</u> is responsible for maintaining discipline, health, and safety." (emphasis added) (quoting *Bd. of Educ. v. Earls*, 536 U.S. 822, 830 (2002)); *Indep. Sch. Dist. No. 89 v. City of Okla. City*, 1986 OK 47, 722 P.2d 1212, 1214 ("[A] school district is a subordinate agency of the state.")). In sum, State Defendants are skeptical—to say the least—that this or any other distinction between *Adams* and Plaintiffs' case is meaningful.[1]

> ### c. *Adams* embraced many of State Defendants' arguments and rejected many of Plaintiffs' arguments.

To grant judgment on claims brought pursuant to the Equal Protection Clause and Title IX, the Eleventh Circuit endorsed many of the same arguments put forth by State Defendants, general and specific. *Compare, e.g.*, Doc. 54 at 1 (State Defendants: "The physical

---

[1] If Plaintiffs argue that some fact or another unaddressed here makes *Adams* significantly distinguishable, then State Defendants are willing to respond, if the Court so desires. That said, in State Defendants' view, *Adams* speaks plenty well for itself.

differences between males and females are real and immutable, not mere stereotypes."), with *Adams*, 57 F.4th at 810, 813 ("To say that the bathroom policy relies on impermissible stereotypes because it is based on the biological differences between males and females is incorrect. … '[S]ex' is not a stereotype."). In doing so, the Eleventh Circuit rejected various arguments laid out by Plaintiffs here. *Compare, e.g.*, Doc. 53 at 16-17 (asserting that Oklahoma's law is akin to racial segregation); *with Adams*, 57 F.4th at 806 ("The dissent equates concerns about privacy in the bathroom with unlawful complaints about racial segregation. But that is a false equivalence."). To list these instances exhaustively would be overly repetitive and exceed the permitted length of this supplemental brief, but several examples are worth raising, especially as they pertain to the appropriateness of granting the motion to dismiss. Doc. 47.

In moving for dismissal under the Equal Protection Clause, State Defendants first argued that "Plaintiffs cannot establish that S.B. 615 intentionally discriminates based on transgender status," in part because "S.B. 615 separates multiple occupancy restroom facilities based on biological sex" and "does not otherwise account for or distinguish students based on gender identity, transgender status, or any other characteristic of any kind." Doc. 47 at 5. *Adams*, in turn, held that the Florida school district's policy did "not discriminate against transgender students," in part because it "facially classifies based on biological sex—not transgender status or gender identity," concepts which "are wholly absent" from the policy. *Adams*, 57 F.4th at 808. "To say that the bathroom policy singles out transgender students," *Adams* held, "mischaracterizes how the policy operates." *Id.* These arguments are the same, as are follow-up points made by State Defendants and the Eleventh Circuit. *Compare, e.g.*, Doc. 47 at 9 n.2 (arguing that an improper motive cannot be inferred from an allegedly negative or

disparate impact on transgender students), *with Adams*, 57 F.4th at 810 (observing that "a disparate impact alone does not violate the Constitution").

State Defendants next contended that "requiring students to use the restroom and locker room associated with their biological sex is substantially related to a sufficiently important government interest: protecting the privacy of students to disrobe and shower outside of the presence of the opposite sex." Doc. 47 at 11; *see also* Doc. 54 at 17-19. The Eleventh Circuit echoed this, holding that the "protection of students' privacy interests in using the bathroom away from the opposite sex and in shielding their bodies from the opposite sex is obviously an important governmental objective[,]" and that the school policy was "substantially related to that objective." *Adams*, 57 F.4th at 803-04. Again, no daylight can be seen here. Moreover, State Defendants pointed out that this "compelling government interest has been repeatedly upheld and recognized by courts," Doc. 47 at 11, whereas *Adams* observed that the "privacy afforded by sex-separated bathrooms has been widely recognized throughout American history and jurisprudence." *Adams*, 57 F.4th at 805. Like State Defendants, the Eleventh Circuit found the Equal Protection analysis to be quite straightforward at its core, and fully supported by history and judicial precedent.

As for Title IX, State Defendants argued for dismissal in part because Plaintiffs' interpretation of Title IX's protection of "sex" to cover gender identity "is foreclosed by the plain text and original understanding" of the statute, which expressly permits sex separation in certain instances. Doc. 47 at 18; *see also* 20 U.S.C. § 1686; 34 C.F.R. § 106.33 ("A recipient may provide separate toilet, locker room, and shower facilities on the basis of sex."). *Adams* agreed: "when Congress prohibited discrimination on the basis of 'sex' in education, it meant

biological sex[.]" *Adams*, 57 F. 4th at 812. Thus, "[t]he Title IX claim must fail because Title IX allows schools to separate bathrooms by biological sex." *Id.* at 800. In reaching this conclusion, *Adams* cited numerous era-specific dictionary definitions, just like State Defendants did. *Compare id.* at 812-13, *with* Doc. 47 at 21. And both State Defendants and *Adams* agreed that a contrary interpretation would render Title IX's protections against sex discrimination meaningless. Doc. 47 at 1, 20; *Adams*, 57 F.4th at 813, 814 n.7. In sum, State Defendants and the Eleventh Circuit sing the same tune.

Three additional points made by the Eleventh Circuit are worth discussing, as they rebut arguments relied on by Plaintiffs. *First*, Plaintiffs here have repeatedly conflated sex and gender identity, claiming that the term "biological sex" is "amorphous," "politicized," and unscientific. Doc. 53 at 5 & n.3. At the same time, Plaintiffs claim that dismissal cannot be granted because they have alleged that there is a "medical consensus" that biology underlies gender identity. *Id.* Similar arguments were made in *Adams*, and the Eleventh Circuit rejected them completely and on legal grounds. Specifically, the Eleventh Circuit expressly declined to hold that "transgender status and gender identity are equivalent to biological sex" because "such an assertion is contrary to the Supreme Court's reliance on physiological and biological differences between men and women in its sex-discrimination decisions …." *Adams*, 57 F.4th at 803 n.6; *see also id.* at 807 ("[E]ven the dissent acknowledges, as it must, that gender identity is different from biological sex."). The Eleventh Circuit stated unequivocally that *any* finding from a district court "equating gender identity as akin to biological sex" would have no "legal significance" and "constitute clear error" because it "would refute the Supreme Court's longstanding recognition that 'sex, like race and national origin, is an immutable characteristic

determined solely by the accident of birth.'" *Id.* at 807-08 (quoting *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (plurality opinion)). State Defendants have cited *Frontiero*, Doc. 47 at 10; Doc. 63 at 4, and other Supreme Court cases to make the same point, Doc. 54 at 10–13.

*Second*, Plaintiffs here, like the plaintiff and dissenters in *Adams*, spilled much ink arguing that these types of cases are controlled by the U.S. Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). But the Eleventh Circuit persuasively distinguished *Bostock* in a similar manner as that argued by State Defendants. *See, e.g.,* Doc. 47 at 24. Like State Defendants, the Eleventh Circuit found it significant that *Bostock* did "not purport to address bathrooms, locker rooms, or anything else of the kind[,]" because the "school [*Adams*] is not the workplace [*Bostock*]." *Adams*, 57 F.4th at 808 (quoting *Bostock*, 140 S. Ct. at 1753). Diving in further, the Eleventh Circuit observed that "[w]hile *Bostock* held that 'discrimination based on … transgender status necessarily entails discrimination based on sex,' … [t]his appeal centers on the converse of that statement—whether discrimination based on biological sex necessarily entails discrimination based on transgender status. It does not[.]" *Id.* at 808-09. This is almost precisely how State Defendants have framed the issue: "Although Plaintiffs correctly quote *Bostock*'s conclusion that discrimination based on transgender status necessarily entailed discrimination based on sex, they attempt to use this to establish the reverse: that classification on the basis of sex necessarily entails discrimination based on transgender status. The Supreme Court has never reached this inverse conclusion, nor would it make sense." Doc. 54 at 13; *see also* Doc. 63 at 6 ("the Supreme Court held that discrimination based on transgender status is discrimination based on sex—not the inverse"). State Defendants and the Eleventh Circuit agree: *Bostock* does not favor plaintiffs on these issues.

*Third*, Plaintiffs have attempted in this case to artificially limit the nature of the relief they are seeking, claiming at one point "that they will not seek any relief in this action that applies beyond multiple occupancy restrooms . . . ." Doc. 53 at 5, n.2; *see also* Doc. 62 at 13 ("[T]he Motion seeks relief only as to the ability to access multiple occupancy school restrooms. Any opinions concerning privacy concerns in locker rooms are thus irrelevant."). The plaintiff in *Adams* attempted a narrowing maneuver, as well, and the Eleventh Circuit refused to go along. Specifically, that court rejected "Adams's attempt to cabin the lawsuit to Adams's particular circumstances" because the statutory approach demanded "would touch upon the interests of all Americans—not just Adams—who are students, as well as their parents or guardians …." *Adams*, 57 F.4th at 800 n.3; *cf. id.* at 817 ("The district court did not identify any textual or other support—because there is none—for its claim that its reading of 'sex' applies only to high school bathrooms."). There is nothing narrow about these arguments.

### d. Per *Adams*, the restroom question is a legal one, not a factual one.

This Court also requested to know the "procedural sameness or differences between the *Adams* case and this case." Doc. 68. Procedurally, *Adams* was an appeal from a three-day bench trial, after which the federal district court granted judgment to the plaintiff (Adams) for supposed violations of Title IX and the Equal Protection Clause. *Adams*, 57 F.4th at 798. Moreover, the district court "enjoined the School Board from prohibiting Adams's use of the male bathrooms and granted Adams $1,000 in compensatory damages." *Id.* Although *Adams* emerged from a bench trial, the Eleventh Circuit gave little indication that its core rulings were based on any particularly unique facts of that case. Thus, *Adams* counsels strongly for, rather than against, granting State Defendants' motion to dismiss.

From start to finish, the Eleventh Circuit emphasized over and again the legal focus of its ruling. The opening lines of Judge Lagoa's majority opinion speak to the all-encompassing legal nature of the decision: "This case involves the unremarkable—and nearly universal—practice of separating school bathrooms based on biological sex," the *en banc* court declared. "We hold that … separating school bathrooms based on biological sex passes constitutional muster and comports with Title IX." *Id.* at 796. In addition, the Court rejected Adams's attempt to classify the situation as an "as-applied challenge" in part because of the necessity of establishing a "substantive *rule of law*" that would govern the proceedings. *Id.* at 800 n.3 (emphasis added) (quoting *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019)). The rule of law advocated by Adams, the court noted, "would touch on the interests of all Americans—not just Adams—who are students, as well as their parents or guardians, at institutions subject to the statute." *Id.* Thus, the court rejected Adams' proffered legal interpretation, in language that is unmistakably legally grounded rather than factually based: "[W]hen we apply first principles of constitutional and statutory interpretation, this appeal largely resolves itself," *Adams* explained. *Id.* at 800. The same principles apply here.

The Eleventh Circuit gave no indication that it viewed the three-day bench trial as having been necessary or vital. To wit, the Eleventh Circuit did not view the existence of an important privacy concern in restrooms as a fact-specific finding. Rather, it noted that "courts have long found a privacy interest in shielding one's body from the opposite sex in a variety of *legal* contexts." *Id.* at 805 (emphasis added). The same goes for whether the restroom policy was substantially related to that interest. *See id.* And in response to fact-specific arguments about the privacy of individual stalls made by the district court, dissenters, and certain *amici*,

the Eleventh Circuit stated bluntly that their view was "not the *law*." *Id.* at 806 (emphasis added). Nor, the court emphasized, "is the law predicated on 'problems' or 'reports of problems' from students or their parents when it comes to the validity of sex-separated bathrooms[.]" *Id.* Finally, as discussed above, the Eleventh Circuit opined that any district court finding that gender identity and sex are akin to each other would have no "legal significance" under binding Supreme Court precedent. *Id.* at 807. The Eleventh Circuit could hardly have been clearer: sex-separated bathrooms are constitutional regardless of the facts, so long as a case at its core "involves an individual of one sex seeking access to the bathrooms reserved for those of the opposite sex." *Id.* at 808.

Certainly, *Adams* discussed various facts and factors revealed during the district court proceedings, sometimes in detail. But the court never indicated that those facts were critical to its decision. Rather, the court deployed those facts as either: (1) background material, helpful for understanding the case; (2) supportive of, but not decisive in, its legal conclusion; or (3) rebuttals to the district court and dissenters' reliance on the record. *See, e.g., id.* at 807 ("The dissent's argument relies on a misreading of the record ...."); *id.* at 803 n.5 ("[T]he dissent reaches this conclusion through a selective reading of the record, citing to exhibits and testimony where it sees fit.").

To give an example, at one point in its analysis the Eleventh Circuit quoted at length the school district's extensive "Best Practices" efforts to "accommodate LGBTQ students." *Adams*, 57 F.4th at 802-03; *see also id.* at 797-98. The court quickly indicated, however, that the relevance of this material was preliminary to, and separate from, "the constitutional question" in the case. *Id* at 803. And later it explained that "[c]ontrary to the dissent's claim, the School

Board, through the Best Practices Guidelines, did not discriminatorily 'single[] out transgender students'" by "providing them with an alternative—i.e., sex-neutral bathrooms." *Id.* at 810. That is to say, the Eleventh Circuit's lengthy citation of the factual record on this point was merely to provide background to the case and to rebut the dissent's wayward assertion that a reasonable accommodation is somehow evidence of discriminatory intent.

Similarly, the Eleventh Circuit spent time discussing a stipulation made by the parties in *Adams* "that certain parents of students and students in the St. Johns County School District object to a policy or practice that would allow students to use a bathroom that matches their gender identity" because they "believe that such a practice would violate the bodily privacy rights of students and raise privacy, safety and welfare concerns." *Id.* at 797. But nowhere did the Eleventh Circuit state or even imply that this stipulation somehow swung the case, or that a plaintiff who declined to make such a stipulation would prevail.[2] By all appearances, the court brought up the stipulation repeatedly because the district court and dissent's theories failed to take it into account. *See, e.g., Adams*, 57 F.4th at 807.

In the end, if privacy concerns suffice to sustain bathroom policies as a matter of law, and biological sex is grounded in Supreme Court precedent, then what possible factual disputes could be left to resolve in the present case? The parties have provided competing evidence on whether safety is also an important interest, but the Eleventh Circuit did not reach

---

[2] It is difficult to fathom on what ground a plaintiff could even try to deny or avoid this stipulation. Here, State Defendants have introduced into the record the declarations of Oklahoma parents who express these types of beliefs. *See* Doc. 54-1, 54-2, 54-3. In response, Plaintiffs did not deny that the parents hold these beliefs, but rather argued that the beliefs are speculative and misinformed. Doc. 62 at 12.

the safety questions to issue judgment in *Adams.* This Court need not do so, either.[3] A different way of looking at the situation is this: After *Adams*, would a district court in the Eleventh Circuit understand its governing appellate court to be calling for dismissal of these types of cases, or for extensive discovery and another bench trial?  A faithful reading of *Adams* clearly points to the former conclusion, not the latter.[4]

### e. *Adams* relied on additional arguments with which State Defendants agree.

The Eleventh Circuit also relied on several ancillary arguments that State Defendants have not had an opportunity to expound upon fully given page limitations. *See, e.g.*, *Adams*, 57 F.4th at 809 (relying on *Geduldig v. Aiello*, 417 U.S. 484 (1974), to support the argument that the "bathroom policy does not classify students based on transgender status"). Three such arguments are particularly noteworthy.

*First,* as mentioned above, the Eleventh Circuit discussed as a preliminary matter the deference that courts give to government authorities in the public school context. Fourteenth Amendment rights, the Eleventh Circuit correctly observed, "'are different in public schools than elsewhere' because of 'the schools' custodial and tutelary responsibility for children.'" *Id.* at 802 (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995)). "Given schools'

---

[3] Because the Florida policy survived intermediate scrutiny, the Eleventh Circuit found it unnecessary to reach other questions, as well, such as whether Adams was "similarly situated" to biological boys and whether "transgender persons constitute a quasi-suspect class." *Id.* at 803 nn.5-6. It did express "grave" skepticism as to whether the plaintiff would prevail on these points, though. *Id.*

[4] Even when the Eleventh Circuit says something like "there is no evidence of purposeful discrimination against transgender students by the School Board," *id.* at 811, this does not appear to be an invitation for evidentiary fishing expeditions. In the very next paragraph, after all, the court cites the well-known proposition that "in all cases of statutory interpretation, *the purpose must be derived from the text.*" *Id.* (cleaned up) (emphasis added) (citations omitted).

responsibilities, the Supreme Court has afforded deference to their decisions," the Eleventh Circuit explained. *Id.* As acknowledged by the Eleventh Circuit, this deference does not control the case here, but it is a helpful lens through which to view the proceedings.

*Second*, the Eleventh Circuit at various points discussed the issue of "gender fluidity—i.e., the practice, which the dissent acknowledges, in which some individuals claim to change gender identities associated with the male and female sexes and thereby treat sex as a mutable characteristic." *Id.* at 803 n.6. This practice, the Eleventh Circuit opined, undermined (among other things) the dissent's argument that transgender individuals belong to a suspect class, because such a finding requires immutability. *Id.* State Defendants agree. As above, State Defendants do not think this point critical, but they agree with the Eleventh Circuit that it provides further justification for upholding the longstanding historical practice of separating restrooms based on biological sex.

*Third*, even if the term "sex" in Title IX were unclear, the Eleventh Circuit indicated that it would have ruled in the school district's favor under the Constitution's Spending Clause. "Congress passed Title IX pursuant to its authority under the Spending Clause," the Eleventh Circuit observed, and "if Congress intends to impose a condition on the grant of federal moneys [under its Spending Clause authority], it must do so unambiguously." *Id.* at 815 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). State Defendants concur with *Adams* that the "notion that the School Board [or any other defendant] could or should have been on notice that its policy of separating male and female bathrooms violates Title IX and its precepts is untenable." *Id.* at 816. Because there is no universe in which it is

clear and unambiguous that "sex" in Title IX means something *other* than biological sex, State Defendants must also prevail against Plaintiffs' Title IX challenge under the Spending Clause.

## II. ADDITIONAL AUTHORITY COUNSELS TOWARD DISMISSAL OF THIS CASE.

This Court also requested supplemental briefing discussing "any other authority directly relevant to an issue raised in a pending motion that was issued after the briefing on that motion was filed." Doc. 68. State Defendants direct the Court's attention to two decisions that have been released recently, both involving secondary school sports. These decisions are relevant because of the broad implications of Plaintiffs' legal and factual theories. As the Eleventh Circuit observed in *Adams*, "equating 'sex' to 'gender identity' or 'transgender status' would also call into question the validity of sex-separated sports teams." *Id.* at 817. Judge Lagoa wrote separately to opine on this issue, expressing concern that "[d]eparting from a biological and reproductive understanding of" sex "would have vast societal consequences and significantly impact girls' and women's rights and sports." *Id.* at 821 (Lagoa, J., specially concurring). Put simply, decisions upholding sex-separated sports teams as constitutional by their very nature counsel in favor of upholding sex-separated restrooms, as well.

### a. A federal district court upheld West Virginia's separation of public-school sports teams based on biological sex.

The first case, *B.P.J. v. W. Va. State Bd. of Educ.*, No. 2:21-CV-00316, 2023 WL 111875 (S.D.W. Va. Jan. 5, 2023), was a challenge to West Virginia's definitions of "girl" and "woman" for the purposes of participation in secondary school sports. Like *Adams* and the present dispute, the plaintiff in *B.P.J.* challenged the law under Title IX and the Equal Protection Clause. *Id.* at *3. And like the Oklahoma law being challenged here, West Virginia's "Save

Women's Sports Bill" defined the terms "girl" and "woman" based on biological sex, or an individual's biology and genetics at birth. *Id.* at *1-2.[5]

Reversing direction after an earlier decision to enjoin the law, the Southern District of West Virginia in early January granted several state defendants summary judgment, finding that the West Virginia law did not violate Title IX or the Equal Protection Clause. *Id.* at *10. There, the question the plaintiff presented to the court was whether defining sex based on biology was "substantially related to the government interest in providing equal athletic opportunities for females." *Id.* at *6. Answering this question in the affirmative, the court held that "[t]he state is permitted to legislate sports rules on this basis because sex, and the physical characteristics that flow from it, are substantially related to athletic performance and fairness in sports." *Id.* at *8; *see also id.* at *9 ("The legislature's definition of 'girl' as being based on 'biological sex' is substantially related to the important government interest of providing equal athletic opportunities for females."). The court reasoned that "[w]hether a person has male or female sex chromosomes determines many of the physical characteristics relevant to athletic performance," and "[t]he fact is . . . that a transgender girl is biologically male and, barring medical intervention, would undergo male puberty like other biological males." *Id.* at *7-8. While the court was sympathetic to the complaints of the plaintiff, and even critical of the state for not "adopt[ing] a different policy," it nonetheless reaffirmed that "it is not for the court to impose such a requirement here." *Id.* at *8.

---

[5] In addition to S.B. 615, Oklahoma recently enacted the Save Women's Sports Act, OKLA. STAT. tit. 70 § 27-106, which requires athletic teams to be designated based on biological sex.

As to the plaintiff's Title IX claim, the court recognized that "[t]here is no serious debate that Title IX's endorsement of sex separation in sports refers to biological sex." *Id.* at *9. Therefore, the court's incontrovertible conclusion that "transgender girls are biologically male[,]" and "biological males are not similarly situated to biological females for purposes of athletics" was equally dispositive to the Title IX claim. *Id.* The court further highlighted that "despite [the plaintiff's] repeated argument to the contrary, transgender girls are not excluded from school sports entirely. They are permitted to try out for boys' teams, regardless of how they express their gender." *Id.* There are various aspects of the *B.P.J.* court's Equal Protection and Title IX analyses that can be applied to the analogous issues before this Court in State Defendants' motion to dismiss. *See, e.g.,* Doc. 47 at 7-11, 17-18, 25.

> **b. In an unpublished opinion, the Tenth Circuit reaffirmed that the Constitution permits the separation of the sexes in athletics.**

In the second relevant case, *Gordon v. Jordan Sch. Dist.*, No. 21-4044, 2023 WL 34105 at *4 (10th Cir. Jan. 4, 2023) (unpublished), a Tenth Circuit panel reaffirmed the fact that the Constitution permits the separation of "girls and boys" for purposes of athletic programs. There, the plaintiffs challenged a school's refusal to create a separate football league for high-school girls under Title IX and the Equal Protection Clause. Although the facts of the *Gordon* case are not on all fours, the claims presented touch on similar legal issues, and Tenth Circuit panel's discussion is relevant to this Court's determination of the motion to dismiss. *See, e.g.,* Doc. 47 at 9-11, 17-18.

In *Gordon*, the lower court conducted a bench trial and ultimately found that the school policy was facially neutral and not discriminatory, because the existing co-ed football league allowed "girls and boys to play on the same football teams." *Id.* at *4. The Tenth Circuit upheld

the lower court findings. *Id.* Even though the girls insisted that the co-ed football league deprived them of certain advantages they would have on an all-girls team, "the advantages of a girls-only league wouldn't cast doubt on the facial neutrality of coed teams." *Id.* Most importantly for our purposes here, the Tenth Circuit observed that "[c]ertainly the Constitution doesn't bar separation of all athletic programs for girls and boys." *Gordon*, 2023 WL 34105, at *4. Just as certain, in State Defendants' view, is the fact that the Constitution doesn't bar separation of restrooms for girls and boys, either.

## **CONCLUSION**

For the foregoing reasons, this Court should deny a preliminary injunction to Plaintiffs and grant State Defendants' motion to dismiss.

Respectfully submitted,

s/*Zach West*

ZACH WEST, OBA #30768
   *Director of Special Litigation*
AUDREY A. WEAVER, OBA #33258
KYLE PEPPLER, OBA #31681
WILLIAM FLANAGAN, OBA #35110
   *Assistant Solicitors General*
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone:(405) 521-3921
Zach.West@oag.ok.gov
Audrey.Weaver@oag.ok.gov
Kyle.Peppler@oag.ok.gov
William.Flanagan@oag.ok.gov
*Counsel for State Defendants*