# EXHIBIT 4

2023 WL 3961123
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Michael GRABOWSKI, a
single man, Plaintiff-Appellant,
v.
ARIZONA BOARD OF REGENTS; University of Arizona, Frederick Lee Harvey, Director of Cross-Country/Track and Field, Janet Harvey, Wife, James L. Li, Associate Head Coach of Cross-Country/Distance, Jean Wang, Wife, James L. Francis, Senior Associate Director of Athletics/Track and Field at the University of Arizona, Defendants-Appellees,
and
Hannah Vivian Peterson, Assistant Coach of Cross-Country/Distance, a single woman, Tammy Frances, Wife, Kim Hanson Barnes, Executive Senior Associate Director of Athletics, Andrew Barnes, Husband; David Wood Heeke, Director of Athletics, Elizabeth Pangborn Heeke, Wife, Benjamin James Crawford, Associate Athletics Trainer, a single man; Carlos Villareal, Student; Hunter Davila, Student; James L. Frances, Senior Associate Director of Athletics/Track and Field; Tammi Francis, Wife; Erika Kim Hanson Barnes, Executive Senior Associate Director of Athletics at the University of Arizona, Defendants.

No. 22-15714
|
Argued and Submitted March 8, 2023 Las Vegas, Nevada
|
Filed June 13, 2023

**Synopsis**
**Background:** Student-athlete filed § 1983 action against state university, its board of regents, and his coaches alleging deliberate indifference to his claims that his teammates harassed because of his perceived sexual orientation and retaliation, in violation of Title IX. The United States District Court for the District of Arizona, Scott Rash, J., 2022 WL 1128936, dismissed complaint, and student-athlete appealed.

**Holdings:** The Court of Appeals, Graber, Circuit Judge, held that:

[1] as matter of first impression, discrimination on basis of sexual orientation is form of sex-based discrimination under Title IX;

[2] as matter of first impression, discrimination on basis of perceived sexual orientation is actionable under Title IX;

[3] teammates' alleged persistent harassment of student-athlete on basis of his perceived sexual orientation did not violate Title IX;

[4] student-athlete stated plausible Title IX retaliation claim against university; and

[5] coaches were entitled to qualified immunity from liability under § 1983.

Affirmed in part, reversed in part, vacated in part, and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim; Motion for Judgment on the Pleadings.

West Headnotes (20)

[1]  **Civil Rights** ⚬ Sex Discrimination

Court of Appeals construes Title IX's protections consistently with those of Title VII when considering Title IX discrimination claim.

Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a); Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2]  **Civil Rights** ⚬ Discrimination by reason of sexual orientation or identity

Discrimination on basis of sexual orientation is form of sex-based discrimination under Title IX.

Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

**[3]** **Civil Rights** Discrimination by reason of sexual orientation or identity

Discrimination on basis of perceived sexual orientation is actionable under Title IX. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

**[4]** **Civil Rights** Sexual harassment; sexually hostile environment

Harassment against person or failure to conform to particular masculine or feminine sex stereotype—i.e., for not acting as their sex should act—is impermissible form of discrimination under Title VII and Title IX. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a); Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[5]** **Civil Rights** Sexual harassment; sexually hostile environment

School that receives federal funding can be liable under Title IX for individual claim of student-on-student harassment, but only if (1) school had substantial control over harasser and context of harassment, (2) plaintiff suffered harassment so severe that it deprived plaintiff of access to educational opportunities or benefits, (3) school official who had authority to address issue and institute corrective measures for school had actual knowledge of harassment, and (4) school acted with deliberate indifference to harassment such that indifference subjected plaintiff to harassment. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

**[6]** **Civil Rights** Sexual harassment; sexually hostile environment

Whether gender-oriented conduct is harassment under Title IX depends on constellation of surrounding circumstances, expectations, and relationships including, but not limited to, harasser's and victim's ages and number of persons involved. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

**[7]** **Civil Rights** Sexual harassment; sexually hostile environment

To state sexual harassment claim under Title IX, plaintiff must allege facts plausibly supporting potential link between education and alleged misconduct. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

**[8]** **Civil Rights** Discrimination by reason of sexual orientation or identity

Teammates' alleged persistent harassment of student-athlete on basis of his perceived sexual orientation did not violate Title IX, even if harassment was severe, and his coaches were aware of it, but were deliberately indifferent, absent allegation that his educational opportunities at state university were diminished as result. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

**[9]** **Civil Rights** Sexual harassment; sexually hostile environment

Deliberate indifference required to hold funding recipient liable for student-on-student sexual harassment under Title IX must, at minimum, cause students to undergo harassment, or make them liable or vulnerable to it; it requires that officials' response to harassment is clearly unreasonable in light of known circumstances. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

**[10]** **Civil Rights** Sex Discrimination

To establish prima facie claim of retaliation under Title IX, plaintiff must allege that (1) plaintiff participated in protected activity, (2) plaintiff suffered adverse action, and (3) there was causal link between protected activity and

adverse action. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

[11] **Civil Rights** ← Discrimination by reason of sexual orientation or identity

Student-athlete stated plausible retaliation claim against state university under Title IX by alleging that he reported to his coaches that his teammates were harassing him almost daily on basis of his perceived sexual orientation, that his coaches embarked on concerted effort to demoralize him after he singled out bullies, that university cancelled his scholarship and kicked him off track team, and that his dismissal from team occurred just a few weeks after he complained about bullying by team's top two runners. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

[12] **Civil Rights** ← Sexual harassment; sexually hostile environment

Peer-on-peer sexual harassment at school, if sufficiently severe, can rise to level of sex-based discrimination actionable under Title IX. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

[13] **Civil Rights** ← Sex Discrimination

Court of Appeals construes causal link element of Title IX retaliation framework broadly; plaintiff merely has to prove that protected activity and adverse action are not completely unrelated. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

[14] **Civil Rights** ← Education

Proximity in time between protected action and alleged retaliatory decision can provide circumstantial evidence of causation required to state retaliation claim under Title IX. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

[15] **Civil Rights** ← Government Agencies and Officers

**Civil Rights** ← Good faith and reasonableness; knowledge and clarity of law; motive and intent, in general

Determining whether officer receives qualified immunity involves two inquiries: (1) whether, taken in light most favorable to party asserting injury, facts alleged show officer's conduct violated constitutional right; and (2) if so, whether that right was clearly established at time of violation.

[16] **Civil Rights** ← Good faith and reasonableness; knowledge and clarity of law; motive and intent, in general

To determine whether constitutional right has been clearly established, for qualified immunity purposes, court must survey legal landscape and examine those cases that are most like instant case.

[17] **Civil Rights** ← Good faith and reasonableness; knowledge and clarity of law; motive and intent, in general

For purposes of qualified immunity, contours of right in question must be sufficiently clear that reasonable official would understand that what he is doing violates that right.

[18] **Civil Rights** ← Good faith and reasonableness; knowledge and clarity of law; motive and intent, in general

Court may begin its qualified immunity analysis by considering whether there is violation of clearly established law without determining whether constitutional violation occurred.

[19] **Constitutional Law** ← Rights, Interests, Benefits, or Privileges Involved in General

Due process violation requires deprivation of constitutionally protected liberty or property interest. U.S. Const. Amend. 14.

[20] Civil Rights  Schools

It was not clearly established in 2018 that student-athlete had protected due process property interest in his athletic scholarship at state university, and thus his coaches were entitled to qualified immunity from liability in student-athlete's § 1983 action alleging that coaches violated his due process rights when they removed him from track team and cancelled his athletic scholarship. U.S. Const. Amend. 14; 42 U.S.C.A. § 1983.

Appeal from the United States District Court for the District of Arizona, Scott H. Rash, District Judge, Presiding, D.C. No. 4:19-cv-00460-SHR

**Attorneys and Law Firms**

William G. Walker (argued), William G. Walker P.C., Tucson, Arizona, for Plaintiff-Appellant.

Alexandra Z. Brodsky (argued), Adele P. Kimmel, and Mollie Berkowitz, Public Justice, Washington, D.C., for Amici Curiae Public Justice and 18 Additional Civil Rights Organizations.

Patricia V. Waterkotte (argued) and Michael J. Rusing, Rusing Lopez & Lizardi PLLC, Tucson, Arizona, for Defendants-Appellees.

Hunter Davila, Cheyenne, Wyoming, pro se Defendant.

Before: Susan P. Graber, Mark J. Bennett, and Roopali H. Desai, Circuit Judges.

**OPINION**

GRABER, Circuit Judge:

**\*2** Plaintiff Michael Grabowski alleges that, when he was a first-year student-athlete at the University of Arizona, his teammates subjected him to frequent "sexual and homophobic bullying" because they perceived him to be gay. He claims that the Arizona Board of Regents and the University of Arizona ("University Defendants") were deliberately indifferent to his claims of sexual harassment and that they retaliated against him in violation of Title IX. He also brings claims under 42 U.S.C. § 1983 against two of his coaches, Frederick Harvey and James Li (collectively, "Defendant Coaches"). Finally, he seeks punitive damages against the Defendant Coaches.

The district court dismissed the action. Reviewing de novo, Soo Park v. Thompson, 851 F.3d 910, 918 (9th Cir. 2017) (dismissal for failure to state a claim); Knappenberger v. City of Phoenix, 566 F.3d 936, 939 (9th Cir. 2009) (judgment on the pleadings), we affirm in part, vacate in part, reverse in part, and remand in part.

We hold that Title IX bars sexual harassment on the basis of perceived sexual orientation. The operative complaint sufficiently alleges that Plaintiff suffered such harassment, that he asked Defendants to intervene, and that Defendants retaliated against him when they failed to investigate his accusations adequately. We therefore reverse the dismissal of his retaliation claim. But the operative complaint fails to allege a deprivation of educational opportunity, a required element of the harassment claim. As to the harassment claim, we affirm the dismissal and remand for the district court to consider Plaintiff's request to amend the complaint again, should he renew that request before the district court. Finally, we affirm the judgment for Defendants on the § 1983 claim and the claim for punitive damages.

FACTUAL AND PROCEDURAL HISTORY

Because we review a dismissal under Federal Rule of Civil Procedure 12(b)(6) and a judgment on the pleadings, we must take as true all plausible allegations in the operative complaint. S.F. Taxi Coal. v. City & County of San Francisco, 979 F.3d 1220, 1223 (9th Cir. 2020) (judgment on the pleadings); Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008) (dismissal for failure to state a claim). Accordingly, at this stage of the litigation, our recitation of the facts assumes that the non-conclusory allegations in the operative complaint are true.

Plaintiff attended the University of Arizona on an academic and athletic scholarship, starting in 2017. He was recruited to join the university's Cross Country and Track and Field Teams ("track team" or "team"), led by the Defendant Coaches.

Plaintiff's teammates subjected him to "sexual and homophobic bullying" over the course of his first year on the track team. Beginning in August 2017, at the team's pre-season training camp, his teammates used homophobic slurs "almost daily." Plaintiff's father reported the bullying to Defendant Li, who promised to investigate the issue. Li spoke with Plaintiff about the bullying the next week. One month later, in early October 2017, Plaintiff's mother emailed the team's sports psychologist to request that she discuss the bullying with Plaintiff.

Plaintiff's teammates called him "gay" and a "fag," and on an "almost daily" basis they "made multiple additional references alleging that they perceived him as gay." His teammates posted an "untrue," "harassing, homophobic, [and] obscene video" about Plaintiff in the team's public chat group. When Plaintiff raised his concerns to Defendant Harvey about the "constant" homophobic bullying and the published video, Harvey did not respond.

"Every time [Plaintiff] mentioned the 'sexual and homophobic bullying' to either one of the Defendant [C]oaches," they dismissed it as "Plaintiff's need to 'adjust.'" In January 2018, Li promised Plaintiff's father that he would speak to Plaintiff about the bullying, and Plaintiff's mother again emailed the team's sports psychologist to report Plaintiff's "increasing sadness."

*3 In August 2018, Plaintiff met with his coaches. At that meeting, Li asked him if any bullying was going on, "as if he had no advance reporting of it." Plaintiff responded by naming the teammates who had subjected him to bullying; Li replied that Plaintiff "can't single out the two top runners on the team."

After Plaintiff identified his bullies to Li, Plaintiff's coaches embarked on a "concerted effort ... to demoralize him." One such effort occurred in early September 2018, when an assistant coach scolded Plaintiff for "faking" an illness after Plaintiff vomited twice during a team meeting and then performed poorly in a race. A blood test later revealed that Plaintiff had a viral illness at the time. Around that same time, Plaintiff met with his coaches again. When he raised the issue of homophobic bullying at that meeting, the coaches denied knowledge of bullying and told Plaintiff that "there's a certain atmosphere we are trying to establish on this team, and you do not fit in it." At one point, in response to Plaintiff's raising the harassment issue, Defendant Harvey "leapt out of his chair, ran up to within a few inches of Plaintiff's face, slammed his hands down hard on Plaintiff's arms ... and called Plaintiff a ... 'white racist.'" Plaintiff was so scared by Harvey's actions that he had a spontaneous bloody nose and fainted. At the end of the meeting, the coaches dismissed Plaintiff from the team.

Plaintiff then filed this action in federal court against the Arizona Board of Regents, the University of Arizona, and many individuals associated with the track team. Plaintiff amended his complaint twice to remove various defendants and claims. His third amended complaint—the operative complaint here—alleges that Plaintiff was harassed because of his perceived sexual orientation. He alleges that the University Defendants' deliberate indifference to that "severe, pervasive, and objectively offensive" harassment violated Title IX. He also asserts a retaliation claim against the University Defendants under Title IX. Finally, he seeks to hold the Defendant Coaches liable under § 1983 for constitutional violations, and requests punitive damages against them.

Defendants moved to dismiss Plaintiff's complaint for failure to state a claim. The district court granted the motion for all claims except the retaliation claim. The court denied leave to amend, reasoning that the complaint's deficiencies could not be cured by further amendment. Two months later, the court granted Defendants' motion for judgment on the pleadings for the retaliation claim, concluding that Plaintiff "failed to allege sufficient facts showing that he engaged in a protected activity," a required element for a retaliation claim. Plaintiff timely appeals.

DISCUSSION

We will address in turn Plaintiff's (A) discrimination claim under Title IX, (B) retaliation claim under Title IX, (C) § 1983 claim against the Defendant Coaches, and (D) claim for punitive damages.

A. Discrimination on the Basis of Sexual Orientation Under Title IX

Plaintiff alleges that Defendants discriminated against him "on the basis of sex," 20 U.S.C. § 1681(a), because he was mistreated due to the harassers' perception that he is gay. For example, he alleges that "[t]eammates regularly, and almost daily, claimed that Plaintiff ... was 'gay'; that he was a 'fag'; and made multiple additional references alleging that they perceived him as gay." Additionally, "other members of the team began accusing the Plaintiff of being gay, alleging to him and others that he was homosexual, gay, a fag." Those allegations plausibly suggest that Plaintiff's teammates acted because they perceived him to be gay. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (holding that courts must ask whether allegations contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' " (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))).

**\*4** We first must decide, then, whether discrimination on account of perceived sexual orientation qualifies as discrimination on the basis of sex for purposes of Title IX. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...." 20 U.S.C. § 1681(a) (emphasis added).

### 1. "On the Basis of Sex"

 **[1]** **[2]** In Bostock v. Clayton County, ––– U.S. ––––, 140 S. Ct. 1731, 207 L.Ed.2d 218 (2020), the Supreme Court brought sexual-orientation discrimination within Title VII's embrace. The Court held that discrimination "because of" sexual orientation is a form of sex discrimination under Title VII. Id. at 1743. We conclude that the same result applies to Title IX. "The Supreme Court has often looked to its Title VII interpretations of discrimination in illuminating Title IX." Emeldi v. Univ. of Or., 673 F.3d 1218, 1224 (9th Cir. 2012), as amended, 698 F.3d 715 (9th Cir. 2012) (citation and internal quotation marks omitted). And "[w]e construe Title IX's protections consistently with those of Title VII" when considering a Title IX discrimination claim. Doe v. Snyder, 28 F.4th 103, 114 (9th Cir. 2022); see id. (reasoning that Bostock's use of the phrases "on the basis of sex" and "because of sex" interchangeably suggests interpretive consistency across the statutes); see also Emeldi, 698 F.3d at 724 (noting that "the legislative history of Title IX 'strongly suggests that Congress meant for similar substantive standards to apply under Title IX as had been developed under Title VII' " (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 897 (1st Cir. 1988))). [1] Harmonizing the Court's holding in Bostock with our holding in Snyder, we hold today that discrimination on the basis of sexual orientation is a form of sex-based discrimination under Title IX.

Plaintiff does not allege that he is gay; rather, he alleges that his harassers perceived him to be gay. We therefore next consider whether discrimination on the basis of perceived sexual orientation, as opposed to actual sexual orientation, is actionable under Title IX. [2]

 **[3]** Because we construe Title VII and Title IX protections consistently, Snyder, 28 F.4th at 114, we look again to Title VII caselaw to guide our analysis. The conclusion that discrimination on the basis of perceived sexual orientation is actionable under Title IX follows from two related branches of Title VII precedent. First, in Bostock, the Court established that, when an employer fires an employee for traits that it would tolerate in an employee of the opposite sex, that employer discriminates in violation of Title VII. 140 S. Ct. at 1741. There, three plaintiffs—two gay men and one transgender woman—sued their employers under Title VII, alleging unlawful discrimination because of sex. Id. at 1737–38. Each plaintiff was fired shortly after revealing their sexual orientation or transgender status to their employer. Id. at 1737. The Court held that each of those firings violated Title VII because "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." Id. at 1741. Prior to Bostock, several federal circuits had held that discrimination because of sexual orientation was not actionable under Title VII. Id. at 1833 & n.9 (Kavanaugh, J., dissenting) (collecting cases). But, as Bostock clarifies, Title VII prohibits discriminating against someone because of sexual orientation; such discrimination occurs "in part because of sex." Id. at 1743.

**\*5** Second, plaintiffs may bring a Title VII discrimination claim under the theory that their harassers perceived them as not conforming to traditional gender norms. In [Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)](), superseded by statute on other grounds as stated in [Comcast Corp. v. Nat'l Ass'n of Afr. Am.- Owned Media,]() —— U.S. ——, 140 S. Ct. 1009, 1017, 206 L.Ed.2d 356 (2020), the Supreme Court held that a woman who was denied a promotion for failing to conform to traditional female gender norms had an actionable claim under Title VII. [Id. at 250–51, 109 S.Ct. 1775]() (plurality opinion); see also [id. at 277, 109 S.Ct. 1775]() (O'Connor, J., concurring) (noting that the plaintiff showed "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion," which constitutes an actionable claim under Title VII).

There, an accounting firm passed over a female senior manager for a promotion to the partnership because she was "macho" and needed to "walk more femininely, talk more femininely, dress more femininely, ... and wear jewelry." [Id. at 235, 109 S.Ct. 1775](). A plurality of the Court reasoned that, "[i]n the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." [Id. at 250, 109 S.Ct. 1775]().

That reasoning applies "with equal force to a man who is discriminated against for acting too feminine." [Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 874 (9th Cir. 2001)](). In [Nichols](), a male employee was verbally abused because his co-workers and supervisor perceived him to be effeminate. [Id. at 870, 874](). His harassers derided him for carrying his serving tray "like a woman" and mocked him for not having sex with a female coworker. [Id. at 874](). And "at least once a week and often several times a day," his coworkers referred to him using female pronouns and called him derogatory names, such as "faggot" and "female whore." [Id. at 870](). Relying on [Price Waterhouse](), we held that the verbal abuse occurred because of sex in violation of Title VII: "At its essence, the systematic abuse directed at [the plaintiff] reflected a belief that [he] did not act as a man should act.... [T]hat ... verbal abuse was closely linked to gender." [Id. at 874]().

**[4]** The same logic applies to Plaintiff's allegations here. Under [Price Waterhouse]() and [Nichols](), an employer cannot discriminate against a person—male or female—for failure to conform to a particular masculine or feminine sex stereotype. [Nichols, 256 F.3d at 874](); [Price Waterhouse, 490 U.S. at 250, 109 S.Ct. 1775](). A sex stereotype is a belief that a person is not acting "as [their sex] should act." [Nichols, 256 F.3d at 874](). In [Nichols](), the harassers believed that the male plaintiff was behaving like a woman and not a man. That harassment was motivated by the stereotype that men should act masculine. [Id.]() Here, the harassment allegedly stemmed from the belief that the male Plaintiff was attracted to men instead of women. That harassment is motivated by the stereotype that men should be attracted only to women. Both instances of harassment are motivated by a core belief that men should conform to a particular masculine stereotype. Both are impermissible forms of discrimination in violation of Title VII and Title IX. See [Snyder, 28 F.4th at 114]().

We are not the first court to grapple with this issue. In [Roberts v. Glenn Industrial Group, Inc., 998 F.3d 111 (4th Cir. 2021)](), the Fourth Circuit held that Title VII protects plaintiffs who suffer discrimination because of their perceived sexual orientation. [Id. at 120–21](). There, the plaintiff sued under Title VII, alleging, among other things, that his supervisor sexually harassed him because of his perceived sexual orientation, including by repeatedly calling him "gay" and making "sexually explicit and derogatory remarks towards him." [Id. at 115–16](). The Fourth Circuit held that "a plaintiff may prove that same-sex harassment is based on sex where the plaintiff was perceived as not conforming to traditional male stereotypes." [Id. at 121](). The court noted that Title VII affords protection for a claim of discrimination because of perceived sexual orientation because the Court's reasoning in [Bostock]() "applie[s] ... broadly to employees who fail to conform to traditional sex stereotypes." [Id.]() We agree.

**\*6** Our holding also is consistent with precedent holding that discrimination because of other perceived characteristics

is a violation of Title VII. In [EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 135 S.Ct. 2028, 192 L.Ed.2d 35 (2015)](), for example, the Court held that a Muslim plaintiff, who wore a headscarf to a job interview and was denied that job, need not show that the employer knew that the applicant required a religious accommodation to prevail on a religious discrimination claim under Title VII. [Id. at 770, 773–74, 135 S.Ct. 2028](). Because Congress did not add a knowledge requirement to the intentional-discrimination provisions in Title VII, the plaintiff had to prove only that her employer was motivated by the perceived need for a religious accommodation. [Id. at 773–74, 135 S.Ct. 2028](). Our sister circuits have applied similar reasoning when considering claims of discrimination concerning other protected characteristics. See, e.g., [EEOC v. WC&M Enters., Inc., 496 F.3d 393, 401 (5th Cir. 2007)]() (holding that, to bring a claim for discrimination because of national origin, a plaintiff need not show that the "discriminator knew the particular national origin group to which the complainant belonged," because "it is enough to show that the complainant was treated differently because of his or her foreign accent, appearance, or physical characteristics" (alteration omitted) (citation and internal quotation marks omitted)); [Jones v. UPS Ground Freight, 683 F.3d 1283, 1299, 1304 (11th Cir. 2012)]() (holding that the "use of epithets associated with a different ethnic or racial minority than the plaintiff," paired with other alleged racial harassment, was sufficient to present a jury question as to whether the plaintiff endured a hostile work environment).

In sum, we hold that discrimination on the basis of perceived sexual orientation is actionable under Title IX. Our holding on that point does not resolve the issues before us, however. Plaintiff alleges that his teammates harassed him, but he sued the University Defendants for violating Title IX.[3]

## 2. University Defendants' Liability

 **[5]** A school that receives federal funding can be liable for an individual claim of student-on-student harassment, but only if (1) the school had substantial control over the harasser and the context of the harassment, [Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 645, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)](); (2) the plaintiff suffered harassment so severe that it deprived the plaintiff of access to educational opportunities or benefits, [id. at 650, 119 S.Ct. 1661](); (3) a school official who had authority to address the issue and institute corrective measures for the school had actual knowledge of the harassment, [Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 739 (9th Cir. 2000)](); see [Davis, 526 U.S. at 650, 119 S.Ct. 1661](); and (4) the school acted with "deliberate indifference" to the harassment such that the indifference "subject[ed the plaintiff] to harassment," [Karasek v. Regents of Univ. of Cal., 956 F.3d 1093, 1105 (9th Cir. 2020)]() (quoting [Davis, 526 U.S. at 644, 119 S.Ct. 1661]() (alterations in original)). We consider each element in turn.

First, taking as true all plausible allegations in the operative complaint, Plaintiff sufficiently alleges that the University Defendants had "substantial control over both the harasser and the context in which the known harassment occur[red]." [Davis, 526 U.S. at 645, 119 S.Ct. 1661](). In [Davis](), the Supreme Court noted that a school retains "substantial control" when "student-on-student sexual harassment ... takes place while the students are involved in school activities or otherwise under the supervision of school employees." [Id. at 646, 119 S.Ct. 1661]() (citation and internal quotation marks omitted). Here, Plaintiff alleges that some harassment occurred at a pre-season camp, which was a school-sponsored activity. Plaintiff does not allege a location for the other harassing incidents, but alleges that the harassment occurred on an "almost daily" and "regular" basis. It is reasonable to infer that at least some of those interactions occurred at team practices or at other school-sponsored activities under Defendant Coaches' supervision. Thus, at the motion to dismiss stage, Plaintiff alleges enough facts to support his claim that Defendants exercised substantial control over the circumstances in which the harassment occurred.

 *7  **[6]** The second, and more difficult, question is whether Plaintiff alleges facts to support an inference that the harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive [him] of access to the educational opportunities or benefits provided by the school." [Id. at 650, 119 S.Ct. 1661](). "Whether gender-oriented conduct is harassment depends on a constellation of surrounding circumstances, expectations, and relationships ... including, but not limited to, the harasser's and victim's ages and the number of persons involved." [Id. at 631, 119 S.Ct.

1661 (citing [Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)](#)). We "must also bear in mind that schoolchildren may regularly interact in ways that would be unacceptable among adults." [Id.](#) Here, Plaintiff alleges that the bullying he experienced from his college-age peers occurred "almost daily" for about a year, from August 2017 to August 2018. That frequency is enough to meet the severity standard.

[7] But to state a claim, Plaintiff also must allege facts plausibly supporting a "potential link between [his] education and [the alleged] misconduct." [Id. at 652, 119 S.Ct. 1661](#). Plaintiff has failed to do so. "[O]vert, physical deprivation of access to school resources" counts as a deprivation of educational opportunity. [Id. at 650–51, 119 S.Ct. 1661](#). For example, a male student physically threatening female students every day, such that he prevents the female students from using the school's athletic facilities, meets the standard. [Id.](#) But the harassment need not be as overt. Conduct that "undermines and detracts from the victims' educational experience," such that "the victim-students are effectively denied equal access to an institution's resources and opportunities," qualifies as well. [Id. at 651, 119 S.Ct. 1661](#). In [Davis](#), the plaintiff alleged that persistent sexual harassment over several months caused her grades to drop because she could not concentrate on her studies, and she had written a suicide note because of the conduct. [Id. at 634, 119 S.Ct. 1661](#). A simple decline in grades, on its own, is not enough. [Id. at 652, 119 S.Ct. 1661](#). But the plaintiff's decline in grades, paired with "persisten[t] and sever[e]" harassment, sufficed to state a cognizable claim under Title IX. [Id.](#)

Unlike the plaintiff in [Davis](#), Plaintiff does not allege that his grades declined because of the alleged harassment. To the contrary, his complaint states that his "grades at school and his relationships with other students that were not in the running program [were] always exemplary." Nor does Plaintiff allege that he stopped attending team practices or team-sponsored events because of the bullying.

Instead, Plaintiff alleges that his mother asked that Plaintiff meet with the team's sports psychologist about the persistent sexual bullying, which he did. Months later, his mother contacted the team's sports psychologist again, expressing "serious concern about Plaintiff's increasing sadness and asking her to speak to Plaintiff as soon as possible." Finally, Plaintiff alleges in conclusory fashion:

> [H]is educational opportunities at the University of Arizona were significantly disrupted by the sexual and homophobic rants and subsequent discrimination by his teammates.

[8] Those allegations fail to provide a "potential link" between the quality of Plaintiff's education and the alleged harassment. Plaintiff experienced increasing sadness, but the operative complaint contains no facts describing how, if at all, his educational opportunities were diminished. Therefore, the district court did not err by dismissing this claim.

During oral argument, when asked what facts support Plaintiff's claim that he suffered a loss of educational opportunities, Plaintiff's lawyer asserted for the first time that he knew of additional facts that Plaintiff could add to support his claim. Because these facts,[4] if pleaded, might aid Plaintiff, we vacate the portion of the district court's order denying leave to amend that claim. On remand, if Plaintiff seeks leave to amend the complaint further, the district court is free to consider such a request.

*8 Turning to the third element, Plaintiff has sufficiently alleged that the Defendant Coaches had actual knowledge of the bullying. Plaintiff's father notified Coach Li of the bullying in August 2017 in a telephone call. And Plaintiff told Coach Harvey about the bullying at a Halloween party in October 2017.

[9] Finally, at this stage, Plaintiff has sufficiently alleged deliberate indifference. Deliberate indifference "must, at a minimum, cause students to undergo harassment, or make them liable or vulnerable to it." [Davis, 526 U.S. at 645, 119 S.Ct. 1661](#) (brackets omitted) (citation and internal quotation marks omitted). It requires that the officials' response to the harassment is "clearly unreasonable in light of the known circumstances." [Id. at 648, 119 S.Ct. 1661](#). "This is a fairly high standard—a 'negligent, lazy, or careless' response will not suffice.... Instead, the plaintiff must demonstrate that the school's actions amounted to 'an official decision ... not to

remedy' the discrimination." Karasek, 956 F.3d at 1105 (second ellipsis in original) (citations omitted). Though an official need not remedy the harassment to evade a claim of deliberate indifference, Davis, 526 U.S. at 648–49, 119 S.Ct. 1661, Plaintiff has alleged that Defendants took no meaningful action in response to his complaints of anti-gay bullying. In fact, Plaintiff has alleged that, other than meeting with him on two occasions, the Defendant Coaches ignored the complaints altogether and, during the second meeting, "lied about their knowledge of the sexual and homophobic bullying of Plaintiff." Those allegations are enough at the motion to dismiss stage to establish a claim of deliberate indifference.

To summarize, we hold that Plaintiff sufficiently alleges the first, third, and fourth elements of his Title IX harassment claim, but not the second element. We affirm the dismissal of this claim, vacate the portion of the district court's order denying leave to amend, and remand to allow the district court to consider any request for further amendment concerning the alleged deprivation of Plaintiff's educational opportunity.

B. Retaliation Under Title IX

[10] [11] We turn next to Plaintiff's retaliation claim. To establish a prima facie claim of retaliation under Title IX, a plaintiff must allege that (1) the plaintiff participated in a protected activity, (2) the plaintiff suffered an adverse action, and (3) there was a causal link between the protected activity and the adverse action. See Emeldi, 698 F.3d at 725–26. Plaintiff alleges that the Defendant Coaches dismissed him from the track team and cancelled his athletic scholarship in retaliation for reporting sex-based harassment. For the reasons that follow, we conclude that Plaintiff has stated a retaliation claim.

[12] First, Plaintiff sufficiently alleges that he participated in a protected activity when he reported the sex-based bullying to his coaches. In the Title IX context, speaking out against sex discrimination is protected activity. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 176–77, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005).[5] Peer-on-peer sexual harassment at school, "if sufficiently severe, can ... rise to the level of [sex-based] discrimination actionable under [Title IX]." Davis, 526 U.S. at 650, 119 S.Ct. 1661. Here, Plaintiff alleges that his teammates called him homophobic names almost "daily" over the span of a year. As we have held above, that alleged harassment is severe enough to rise to the level of discrimination under Title IX. Accordingly, Plaintiff's reporting of that discrimination is a protected activity. Jackson, 544 U.S. at 176–77, 125 S.Ct. 1497.

*9 Second, Plaintiff sufficiently alleges an adverse action when he claims that his scholarship was cancelled and that he was kicked off the track team. See Emeldi, 698 F.3d at 726 (noting that an action is adverse when "a reasonable person would have found the challenged action materially adverse," such that it would "dissuade[ ] a reasonable person from making or supporting a charge of discrimination" (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)) (internal quotation marks and brackets omitted)).

[13] [14] Finally, Plaintiff sufficiently alleges a causal link between his reports of bullying and his removal from the team. First, his dismissal from the team occurred just a few weeks after he complained about the bullying to his coaches. "We construe the causal link element of the retaliation framework 'broadly'; a plaintiff 'merely has to prove that the protected activity and the adverse action are not completely unrelated.' " Ollier v. Sweetwater Union High Sch. Dist., 768 F.3d 843, 869 (9th Cir. 2014) (quoting Emeldi, 698 F.3d at 726) (brackets omitted). Circumstantial evidence can establish causation. Emeldi, 698 F.3d at 727. For example, proximity in time between the protected action and the alleged retaliatory decision can provide circumstantial evidence of causation. Id. at 726 (citing Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1035 (9th Cir. 2006)).

According to the complaint, Plaintiff or his parents complained of the anti-gay bullying on seven occasions between August 2017 and September 2018. Plaintiff's parents raised the issue with either the Defendant Coaches or the team's sports psychologists in August and in October of 2017 and January 2018. Plaintiff himself first raised the issue to Defendant Harvey on October 31, 2017, at the team's Halloween party. Nearly a year later, on August 24, 2018, Plaintiff raised the issue again with Defendant Li. At that meeting, Plaintiff named the two students who were bullying him, and Defendant Li replied that Plaintiff "can't single out the two top runners on the team." Plaintiff was dismissed from the team three weeks after that final complaint. The short time between Plaintiff's final report of bullying to his coaches

and his dismissal from the track team supports a plausible inference that he was removed from the team in retaliation for complaining about bullying by "the two top runners on the team." See, e.g., Ollier, 768 F.3d at 869 (holding that there was a sufficient causal link between the protected activity and an adverse action when the plaintiffs complained in May and July 2006 of discrimination that violated Title IX, and the plaintiffs' softball coach was then fired in July 2006).

Second, Plaintiff alleges that the Defendant Coaches embarked on a "concerted effort" to "demoralize" him after he singled out the bullies. Taken together, the allegations suffice to provide a causal link. We therefore reverse the judgment on the pleadings with respect to the retaliation claim and remand for further proceedings.

### C. Section 1983 Claim Against the Defendant Coaches

We next turn to Plaintiff's § 1983 claim against the Defendant Coaches. Plaintiff alleges that the Defendant Coaches violated his due process rights when they (1) removed him from the track team and (2) cancelled his athletic scholarship.[6] The Defendant Coaches contend that they are entitled to qualified immunity. We agree.

*10 [15] [16] [17] Determining whether officials receive qualified immunity involves two inquiries: (1) whether, "taken in the light most favorable to the party asserting the injury," the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was " 'clearly established' at the time of the violation." Tolan v. Cotton, 572 U.S. 650, 655–56, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) (per curiam) (brackets omitted) (citations omitted). To determine whether a constitutional right has been clearly established, we must "survey the legal landscape and examine those cases that are most like the instant case." Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996) (citation and internal quotation marks omitted). The contours of the right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citation omitted).

[18] [19] [20] We begin our qualified immunity analysis, as we may, "by considering whether there is a violation of clearly established law without determining whether a constitutional violation occurred." Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ., 616 F.3d 963, 969 (9th Cir. 2010) (citing Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). A due process violation requires a deprivation of a constitutionally protected liberty or property interest. Shanks v. Dressel, 540 F.3d 1082, 1090 (9th Cir. 2008). Plaintiff maintains that he has a property interest both in his place on the track team and in the accompanying athletic scholarship. But the caselaw fails to demonstrate that either asserted right was clearly established at the time of the alleged violation.

Plaintiff cites two cases in which we assumed, without deciding, that a property interest in an athletic scholarship exists. In Rutledge v. Arizona Board of Regents, 660 F.2d 1345 (9th Cir. 1981), aff'd on other grounds sub nom. Kush v. Rutledge, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983), the plaintiff sued his university for violations of his civil rights after they demoted him from a first-string position on the football team and refused to allow him to "red shirt" or transfer to another school after an injury. Id. at 1352–53. That refusal effectively cancelled the plaintiff's athletic scholarship. Id. at 1353. We held that the plaintiff did not have a protected interest in his first-string position on the team. We cabined our holding to the alleged right to a particular status on a team and did not rule on general membership on the team. Id. at 1352 (citing Walsh v. La. High Sch. Athletic Ass'n, 616 F.2d 152, 159–60 (5th Cir. 1980). We also "assume[d], without deciding," that NCAA rules prohibiting the cancellation or revocation of a scholarship except for good cause "create[ ] an interest in 'property' within the meaning of the Fourteenth Amendment." Id. at 1353 (emphasis added)). We made that assumption again in Austin v. University of Oregon, 925 F.3d 1133 (9th Cir. 2019). See id. at 1139 ("We assume, without deciding, that the student athletes have property and liberty interests in their education, scholarships, and reputation as alleged in the complaint."). Neither Rutledge nor Austin established the legal principle that Plaintiff asserts because they merely assumed the property interest arguendo. Rutledge, 660 F.2d at 1353; Austin, 925 F.3d at 1139.

Caselaw from other courts likewise does not support the proposition that Plaintiff had a clearly established property interest in his athletic scholarship.[7] See Colo. Seminary v. Nat'l Collegiate Athletic Ass'n, 570 F.2d 320, 322 (10th Cir. 1978) (per curiam) (affirming the trial court's reasoning in Colo. Seminary v. Nat'l Collegiate Athletic Ass'n, 417 F. Supp. 885 (D. Colo. 1976), which stated that "the [contract interest implied by playing collegiate sports on scholarship] is ... too speculative to establish a constitutionally protected right," id. at 895 n.5); Justice v. Nat'l Collegiate Athletic Ass'n, 577 F. Supp. 356, 364, 366–67 (D. Ariz. 1983) (holding that the NCAA did not infringe upon football players' "constitutionally protected contractual property interests ... by virtue of their athletic scholarship[s]" when it excluded them from post-season and televised games). The Defendant Coaches are therefore entitled to qualified immunity as to the due process claim under § 1983. The dismissal of that claim is affirmed.

### D. Punitive Damages

**\*11** Finally, Plaintiff seeks punitive damages from the Defendant Coaches because they allegedly acted "maliciously and with intent to falsely harm" him.

The only substantive allegation of liability against the Defendant Coaches is the § 1983 claim; the harassment and retaliation claims are brought against the University Defendants. As we have held, the district court properly dismissed the § 1983 claim against the individual defendants. Accordingly, no claim remains against the Defendant Coaches to which punitive damages could attach.[8] The district court therefore properly dismissed this claim as well.

### CONCLUSION

Harassment on the basis of perceived sexual orientation is discrimination on the basis of sex under Title IX. But the operative complaint fails to allege a deprivation of Plaintiff's educational opportunity, a required element for holding the University Defendants liable for the alleged harassment. We affirm the district court's dismissal of the discrimination claim and vacate the portion of the order denying leave to amend. On remand, the district court may consider any request for further amendment of the complaint. We reverse the dismissal of Plaintiff's retaliation claim. Finally, we affirm the dismissal of the § 1983 claim and the claim for punitive damages.

**AFFIRMED in part, VACATED in part, REVERSED in part, and REMANDED for further proceedings. Each party shall bear its own costs on appeal.**

**All Citations**

--- F.4th ----, 2023 WL 3961123

### Footnotes

1    Since the Court's decision in Bostock, at least one other circuit has adopted the approach that we take here, in a similar context. See Grimm v. Gloucester Cnty. Sch. Bd., 972 F.3d 586, 616 (4th Cir. 2020), as amended (Aug. 28, 2020) (holding that, "[a]lthough Bostock interprets Title VII ..., it guides our evaluation of claims under Title IX" for a discrimination claim based on transgender identity).

2    We have previously held that individuals who allege discrimination based on perceived, and not actual, sexual orientation are part of an identifiable class for the purpose of asserting a § 1983 Equal Protection claim under the Fourteenth Amendment, Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1130–34 (9th Cir. 2003), but we have not yet considered this issue in the Title IX context.

3    Before us, Plaintiff argues only that the University Defendants are liable under Title IX. We therefore have no occasion to address whether Title IX could give rise to individual liability of school officials. See, e.g., Gililland

Grabowski v. Arizona Board of Regents, --- F.4th ---- (2023)
Case 5:22-cv-00787-JD   Document 79-4   Filed 06/21/23   Page 14 of 14
2023 WL 3961123

| | |
|---|---|
| | v. Sw. Or. Cmty. Coll., No. 6:19-cv-00283-MK, 2021 WL 5760848, at *7 (D. Or. Dec. 3, 2021) ("Although the Ninth Circuit has not addressed the question, courts have consistently held that Title IX does not subject school officials to liability in their individual capacities." (citation and internal quotation marks omitted)). |
| 4 | Counsel stated that Plaintiff had to leave the University of Arizona "as soon as the semester was over" due to the loss of his athletic scholarship, after which Plaintiff obtained another athletic scholarship at a different university. |
| 5 | Plaintiff's retaliation claim is valid even though his discrimination claim is insufficiently pleaded. "The protected status of [a plaintiff's] alleged statements holds whether or not [the plaintiff] ultimately would be able to prove [his or her] contentions about discrimination." Emeldi, 698 F.3d at 725 (citing Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994)). |
| 6 | Before the district court, Plaintiff labeled his § 1983 claim as both an equal protection and a due process claim, but the analysis focused solely on the alleged due process violation. In other words, Plaintiff failed to argue an equal protection claim to the district court. To the extent that Plaintiff attempts to assert an equal protection claim on appeal, that claim is forfeited. See Kaufmann v. Kijakazi, 32 F.4th 843, 847 (9th Cir. 2022) (holding that a plaintiff forfeits a constitutional argument by failing to raise it to the district court). |
| 7 | In November 2022, the Second Circuit held that a "one-year athletic scholarship—because it was for a fixed period and only terminable for cause, and because [the plaintiff] reasonably expected to retain the scholarship's benefits for that set period—created a contractual right that rose to the level of a constitutionally protected property interest." Radwan v. Manuel, 55 F.4th 101, 125 (2d Cir. 2022). But Radwan was decided well after the conduct in question here, so it cannot affect our conclusion that Plaintiff's asserted right was not clearly established at the time of the alleged violation. Moreover, Plaintiff's complaint alleges no facts about the terms of his athletic scholarship. We express no view on the underlying legal issue. |
| 8 | In his opening brief, Plaintiff states that, "[i]f the court permits the causes of action against the individual defendants to proceed, then punitive damages should be available." Here, we are not permitting the § 1983 cause of action to proceed, so the claim for punitive damages necessarily fails. See Papike v. Tambrands Inc., 107 F.3d 737, 744 (9th Cir. 1997) (holding that because the plaintiff's claims were properly dismissed, "[t]he claim for punitive damages obviously fails as well"). |

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.