IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELI BRIDGE, on behalf of Andrew Bridge, a minor, by his next friends and parents, et al., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. CIV-22-00787-JD |
| OKLAHOMA STATE DEPARTMENT OF EDUCATION, et al., ) ) ) ) | |
| Defendants. ) | |

# ORDER

"Physical differences between men and women . . . are enduring" and the "'two sexes are not fungible . . . .'" *United States v. Virginia*, 518 U.S. 515, 533 (1996) (quoting *Ballard v. United States*, 329 U.S. 187, 193 (1946)). In fact, "sex, like race and national origin, is an immutable characteristic . . . ." *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (plurality opinion). With these principles in mind, the Court tackles a question that has not yet been addressed by the Supreme Court of the United States or the United States Court of Appeals for the Tenth Circuit: whether separating the use of male and female restrooms and changing areas in public schools based on a student's biological sex violates the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1, or Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq.[1]

---

[1] In *Bostock v. Clayton County, Georgia*, the Supreme Court held that an employer who fires an individual for being homosexual or transgender unconstitutionally discriminates against that person because of sex under Title VII. However, the Supreme

Before the Court is Andrew Bridge ("Bridge"), Mark Miles ("Miles"), and Sarah Stiles's ("Stiles") (collectively "Plaintiffs") Motion for Judicial Notice [Doc. No. 25] and a Motion to Dismiss [Doc. No. 47] filed by the Oklahoma State Department of Education ("OSDE"); Ryan Walters, in his official capacity as the State Superintendent of Public Instruction; Donald Burdick, Katie Quebedeaux, Zach Archer, Kendra Wesson, Trent Smith, and Sarah Lepak, all in their official capacities as members of the Oklahoma Board of Education; and Gentner Drummond, in his official capacity as Oklahoma Attorney General (collectively "State Defendants"). Independent School District No. 40 of Cleveland County, Oklahoma ("Noble Public Schools"), Independent School District No. 2 of Cleveland County, Oklahoma ("Moore Public Schools"), Independent School District No. 89 of Oklahoma County, Oklahoma ("Oklahoma City Public Schools"), and Harding Independence Charter District, Inc. ("HICD") are also defendants in this case (collectively "Defendants"). The Motion to Dismiss seeks dismissal of Plaintiffs' complaint [Doc. No. 1] under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court GRANTS both motions.

I.  **BACKGROUND**

On May 25, 2022, Oklahoma Governor Kevin Stitt signed Senate Bill 615 ("S.B. 615") into law. Okla. Stat. tit. 70 § 1-125. S.B. 615 states:

> To ensure privacy and safety, each public school and public charter school that serves students in prekindergarten through twelfth grades in this state

---

Court also made clear that its opinion did "not purport to address bathrooms, locker rooms, or anything else of the kind." 590 U.S. ----, 140 S. Ct. 1731, 1753 (2020).

> shall require every multiple occupancy restroom or changing area designated as follows:
>
> > 1. For the exclusive use of the male sex; or
> > 2. For the exclusive use of the female sex.
>
> Each public school or public charter school in this state shall provide a reasonable accommodation to any individual who does not wish to comply with the provisions of subsection B of this section. A reasonable accommodation shall be access to a single occupancy restroom or changing room.

*Id.* § 1-125(B)–(C). The law defines "sex" as "the physical condition of being male or female based on genetics and physiology, as identified on the individual's original birth certificate." *Id.* § 1-125(A)(1).

> "Multiple occupancy restroom or changing area" means an area in a public school or public charter school building designed or designated to be used by more than one individual at a time, where individuals may be in various stages of undress in the presence of other individuals. The term may include but is not limited to a school restroom, locker room, changing room, or shower room . . . .

*Id.* § 1-125(A)(2). If a school fails to comply with the statute, "the noncompliant school district or public charter school shall receive a five percent (5%) decrease in state funding for the school district or public charter school for the fiscal year following the year of noncompliance." *Id.* § 1-125(F).

Bridge is a transgender boy. *See* Compl. [Doc. No. 1] ¶ 60. This means Bridge identifies as male, but that Bridge's biological sex, based on anatomy and genetics, is female. *Id.* ¶¶ 2, 60. After coming out as transgender in 2020, Bridge began taking steps to appear more masculine such as getting a shorter haircut and wearing more masculine clothing. *Id.* ¶¶ 63, 64. Bridge attended Noble High School, which is a public school

3

operated by Noble Public Schools in Cleveland County, Oklahoma. *Id.* ¶¶ 19, 61.[2] Bridge used the boys' restroom at school during the 2021–2022 school year before S.B. 615 was passed. Compl. [Doc. No. 1] ¶ 68. Before the 2022–2023 school year began, school administrators informed Bridge that, moving forward, Bridge was not allowed to use the boys' restroom. *Id.* ¶ 69.

Miles is a transgender boy. *Id.* ¶ 72. This means Miles identifies as male, but that Miles's biological sex, based on anatomy and genetics, is female. *Id.* ¶¶ 2, 72. After beginning to identify as male in 2018, Miles began taking steps to appear more masculine such as getting a shorter haircut. *Id.* ¶¶ 76–77. Miles attends a public school operated by Moore Public Schools. *Id.* ¶¶ 20, 73. Miles began using the boys' restroom at school at the start of the 2021–2022 academic year. *Id.* ¶ 82. In January 2022, the freshman principal stated that Miles needed to use the single-occupancy restroom or the girls' restroom. *Id.* ¶ 83. Miles's parents filed a Title IX grievance with the school district but received a final decision denying relief on June 15, 2022, due to the enactment of S.B. 615. *Id.* ¶ 85.

Stiles is a transgender girl. *Id.* ¶ 91. This means Stiles identifies as female but that Stiles's biological sex, based on anatomy and genetics, is male. *Id.* ¶¶ 2, 91. Stiles

---

[2] "Two related doctrines, standing and mootness, keep federal courts within their constitutional bounds. Standing concerns whether a plaintiff's action qualifies as a case or controversy when it is filed; mootness ensures it remains one at the time a court renders its decision." *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016). Here, Bridge has graduated from high school since filing this suit. However, the Court is satisfied that Bridge has standing to challenge the constitutionality of S.B. 615 and that Bridge's claim is not moot.

attended Independence Charter Middle School ("ICMS"), which is a public school in Oklahoma County operated by HICD. *Id.* ¶¶ 21–22, 92. In 2021, Stiles came out as transgender to Stiles's family. *Id.* ¶ 95. Sue Stiles, Stiles's mother, subsequently met with the ICMS principal and the HICD superintendent. *Id.* ¶ 99. Both the principal and superintendent assured that Stiles could use the girls' restroom. *Id.* However, after S.B. 615 was enacted, Stiles was required to use the boys' restroom or single-occupancy restroom. *Id.* ¶ 101.

On September 6, 2022, Plaintiffs sued Defendants challenging the constitutionality of S.B. 615 under the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1, and Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq.[3]

## II. LEGAL STANDARDS

"Rule 12(b)(6) dismissal 'is appropriate if the complaint alone is legally insufficient to state a claim.'" *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1169 (10th Cir. 2023) (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017)). In considering a motion to dismiss under Rule 12(b)(6), the inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th

---

[3] Plaintiffs bring their equal protection claim against the State Superintendent, School Board Members, and Oklahoma Attorney General, as well as Noble Public Schools, Moore Public Schools, and HICD. They bring their Title IX claim against OSDE, Noble Public Schools, Moore Public Schools, HICD, and Oklahoma City Public Schools.

Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009).

"[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). "This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Id.* (internal quotations and citation omitted). "However, '[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein.'" *Id.* (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

Accordingly, the Court takes judicial notice of the public records in Plaintiffs' Motion for Judicial Notice [Doc. No. 25] detailing the federal financial assistance received by OSDE, Noble Public Schools, Moore Public Schools, and HICD, and documents describing the adoption and substance of policies implementing S.B. 615 by the Oklahoma State Board of Education, Noble Public School, Moore Public Schools, and HICD. *See High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1175 n.1 (10th Cir. 2019) (stating courts may take judicial notice of official government records).

### III. <u>ANALYSIS</u>

Plaintiffs argue that S.B. 615 prevents them from being treated like other

Oklahoma students and violates their constitutional and statutory rights, specifically under the Equal Protection Clause of the Fourteenth Amendment and Title IX. Conversely, State Defendants argue that S.B. 615 does not unconstitutionally discriminate and is substantially related to an important governmental interest and does not violate Title IX.

### A.     S.B. 615 does not violate the Equal Protection Clause.

Plaintiffs contend that because Bridge and Miles identify as boys but are not treated like all the other boys at their schools (i.e., allowed to use the boys' restroom), they are being unconstitutionally discriminated against in violation of the Equal Protection Clause. They argue similarly for Stiles. Lastly, they maintain that "[t]his discrimination is not simply due to a disparate impact of [S.B. 615]." Pls.' Resp. [Doc. No. 53] at 15.[4] Rather, they contend the discrimination targets Plaintiffs "because they are transgender." *Id.*

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." In essence, it requires "similarly situated" persons to be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Accordingly, for a statute that classifies individuals based on sex to be constitutional, the classification must serve "'important governmental objectives'" and be "'substantially related to the achievement of those objectives.'" *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)

---

[4] The Court uses ECF page numbering.

(quoting *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150 (1980)); *see also Craig v. Boren*, 429 U.S. 190, 197, 204 (1976) (analyzing whether unequal treatment based on sex is "substantially related to achievement of the statutory objective").

It is important to note, however, that "[e]qual protection of the laws doesn't guarantee equal results for all, or suggest that the law may never draw distinctions between persons in meaningfully dissimilar situations—two possibilities that might themselves generate rather than prevent injustice." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012) (internal quotations and citation omitted). "Instead, the Equal Protection Clause is a more particular and profound recognition of the essential and radical equality of all human beings." *Id.*

"To trigger the first part of the equal protection test, it's enough to say that the governmental action intentionally discriminates between persons . . . ." *Id.* at 689. Here, S.B. 615 separates individuals based on their biological sex and requires them to use the facilities that correspond to that sex. Thus, the statute classifies individuals based on sex.[5]

---

[5] Because the Court determines that intermediate scrutiny applies since S.B. 615 classifies individuals on the basis of sex, it does not reach the issue of whether transgender status is a quasi-suspect classification.

Further, concerning whether S.B. 615 discriminates based on transgender status, the Court determines, as the Eleventh Circuit did in its rehearing en banc, that "the [law] facially classifies based on biological sex—not transgender status or gender identity. Transgender status and gender identity are wholly absent from the [law's] classification. And both sides of the classification—biological males and biological females—include transgender students." *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 808 (11th Cir. 2022) (en banc). This is further supported by the way S.B. 615 "provide[s] a reasonable accommodation to any individual who does not wish to comply with the" requirement that individuals must use the restroom that corresponds to their biological sex.

To determine whether S.B. 615 survives intermediate scrutiny under the second part of the equal protection test, the Court must identify the State's reasons for enacting a sex-based classification. Then, the Court must ask whether the "reasons qualify as important governmental objectives and, if so, whether the gender-based means employed substantially serve those objectives." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 802 (10th Cir. 2019).

The text of S.B. 615 makes its objective clear: to ensure students' privacy and safety from the opposite sex. Okla. Stat. tit. 70 § 1-125. Although Plaintiffs maintain that the Court must conduct fact finding to determine the validity of this objective, determining what is (and is not) an important governmental objective is a legal question.

Separating students based off biological sex (which both parties agree the statute does) so that they are able to use the restroom, change their clothes, and shower outside the presence of the opposite sex is an important governmental objective.[6] "Understanding

---

[6] In their response brief to the State Defendants' Motion to Dismiss, Plaintiffs assert that, "while the [c]omplaint occasionally refers to multiple occupancy facilities or changing rooms, the Students clarify that they will not seek any relief in this action that applies beyond multiple occupancy restrooms because none of the Students currently has any occasion or need to access multiple occupancy facilities at their schools other than restrooms." Pls.' Resp. [Doc. No. 53] at 12 n.2. *Cf.* Compl. [Doc. No. 1] at 40 (seeking relief for "multiple occupancies and changing facilities"). However, Plaintiffs cannot amend their complaint in their response brief, and the Court does not allow it here. *See* Fed. R. Civ. P. 7(b); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." (quoting *Calderon v. Kan. Dept. of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999))). *See also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (stating that, for Rule 12(b)(6) motions, a court is required to only consider the facts alleged in the complaint). Regardless, the analysis for determining whether Plaintiffs should be provided access to the multiple occupancy restroom or

9

why is not difficult—school-age children 'are still developing, both emotionally and physically.'" *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 804 (11th Cir. 2022) (en banc) (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 636 (4th Cir. 2020), as amended (Aug. 28, 2020) (Niemeyer, J., dissenting)). And the Supreme Court has recognized the need for privacy between members of each sex in intimate settings. *See United States v. Virginia*, 518 U.S. 515, 550 n.19 (1996) ("Admitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements . . . ."). It has also recognized the State's role in "maintaining . . . safety" "in a public school environment." *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 830 (2002).

As Plaintiffs rightly state, "[a]ny law premised on generalizations about the way women are—or the way men are—will fail constitutional scrutiny because it serves no important governmental objective." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 801 (10th Cir. 2019) (internal quotations and citation omitted). However, S.B. 615 addresses much more than mere "generalizations" between males and females. Biological sex is distinct from gender generalizations, and "[u]se of a restroom designated for the opposite sex does not constitute a mere failure to conform to sex stereotypes." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007), *overruled in part on different grounds in Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019

---

changing facility of their choice is identical.

10

(10th Cir. 2021).[7]

Having established that Oklahoma has an important governmental interest in ensuring students are safe and have privacy from the opposite sex in restrooms, the Court turns to analyze whether S.B. 615 is substantially related to achieving that objective. Here, the governmental interest is almost identical to the means used to protect the interest. Protecting students' safety and privacy interests in school restrooms and changing areas is undoubtedly closely related to the statute's mandate that all multiple occupancy restrooms or changing areas be for the exclusive use of either the male or female sex as determined by "genetics" and "physiology."[8]

The means by which the statute seeks to further that important governmental interest also make practical sense. In addition to being an "unremarkable—and nearly universal—practice," separating restrooms based on biological sex establishes the

---

[7] As stated in *Tudor*, "*Etsitty* is no longer valid precedent to the extent that it conflicts with *Bostock*." 13 F.4th at 1028. But since *Bostock* did not address restrooms, this portion of *Etsitty* is still binding on this Court.

[8] In *Grimm v. Gloucester Cnty. Sch. Bd.*, the Fourth Circuit held that a restroom policy similar to the one here was "not substantially related to [the school board's] important interest in protecting students' privacy" because although students are entitled to privacy, allowing transgender students to use the restroom of their choice does not alter the amount of privacy students receive. 972 F.3d 586, 613–14 (4th Cir. 2020), as amended (Aug. 28, 2020) ("Put another way, the record demonstrates that bodily privacy of cisgender boys using the boys restrooms did not increase when Grimm was banned from those restrooms. Therefore, the Board's policy was not substantially related to its purported goal."). But this ignores why laws such as S.B. 615 are being passed in the first place. As evidenced by its text, S.B. 615 seeks to ensure students' privacy in intimate settings *from the opposite sex*—not from other students in general. *See* 70 Okla. Stat. § 1-125(B) (stating multiple occupancy restrooms and changing areas are to be for the "exclusive use" of one of the two sexes).

clearest limiting principle regarding who can go in what restroom. *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 796 (11th Cir. 2022) (en banc). If the Court adopted Plaintiffs' position, any biological male could claim to be transgender and then be allowed to use the same restroom or changing area as girls. This is a major safety concern. The Court in no way suggests that Plaintiffs pose any safety risk to other students. It also does not cast any doubt on Plaintiffs' claims regarding the sincerity of how they identify, nor can it on 12(b)(6) review. However, if Plaintiffs' arguments were adopted, it would put school officials in the position of either having to conduct a subjective analysis of the sincerity of an individual's gender identity or merely take their word for it.[9] Not to mention that if (biological) sex-based classifications such as S.B. 615 were deemed to be equal protection violations, no law recognizing the inherent differences between male and female would pass constitutional muster. This is an untenable position.

In sum, S.B. 615 does not violate the Equal Protection Clause.

**B.     S.B. 615 does not violate Title IX.**

Plaintiffs argue that they were subjected to sex discrimination in violation of Title IX because of the way S.B. 615 defines "sex." They argue that since the Supreme Court has concluded transgender status is "inextricably bound up with sex" when analyzing

---

[9] As stated by State Defendants, "[t]o be clear[,] the argument is not that transgender individuals are more likely to be bad actors, but that others could exploit the seemingly standardless concept of 'gender identity' in order to gain access to vulnerable persons." *See* Mot. [Doc. No. 47] at 24.

Title VII, that excluding a transgender student from a restroom on the basis of biological sex is a violation of Title IX. Pls.' Resp. [Doc. No. 53] at 26. "Title VII, however, is a vastly different statute from Title IX . . . ." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005).

Title IX requires that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).[10] However, "nothing contained [in Title IX] shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686. "A recipient may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33. "Title IX is a broadly written general prohibition on discrimination, followed by specific, narrow exceptions to that broad prohibition." *Jackson*, 544 U.S. at 175.

"'Whatever temptations the statesmanship of policy-making might wisely suggest,' the judge's job is to construe the statute—not to make it better" or change it. *Jones v. Bock*, 549 U.S. 199, 216 (2007) (quoting Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 533 (1947)). This inquiry "must begin[] with the language of the statute itself." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69

---

[10] Defendants do not contest that Noble, Moore, and Oklahoma City Public Schools receive federal funding.

(2011). "The judge 'must not read in by way of creation,' but instead abide by the 'duty of restraint, th[e] humility of function as merely the translator of another's command.'" *Jones*, 549 U.S. at 216 (quoting Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 533–34 (1947)).

So, since S.B. 615 separates students and the restrooms they are allowed to use based on biological sex, Plaintiffs can only prevail if "sex" under Title IX means the sex with which an individual identifies (i.e., their gender identity), not their biological sex. Accordingly, the Court must necessarily interpret what the word "sex" means in the context of Title IX.

To begin, the Court looks to ordinary public meaning of the word "sex" at the time Title IX was enacted in 1972. At that time, "virtually every dictionary definition of 'sex' referred to the physiological distinctions between males and females—particularly with respect to their reproductive functions." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 632 (4th Cir. 2020), as amended (Aug. 28, 2020) (Niemeyer, J. dissenting) (collecting dictionary definitions). In 1961, the Oxford English Dictionary defined sex as "[t]he sum of those differences in the structure and function of the reproductive organs on the ground of which beings are distinguished as male and female, and of the other physiological differences consequent on these." *The Oxford English Dictionary* 578 (1961). In 1970, the American College Dictionary defined sex as "the sum of the anatomical and physiological differences with reference to which the male and the female are distinguished." *The American College Dictionary* 1109 (1970). In 1979, Webster defined it as "the sum of the structural, functional, and behavioral characteristics of living

14

beings that subserve reproduction by two interacting parents and that distinguish males and females." *Webster's New Collegiate Dictionary* 1054 (1979). This is by no means an exhaustive list. However, the above excerpts alone show that at the time Title IX was enacted, "sex" was defined by biology and reproductive functions.

Plaintiffs argue that if the Court focuses exclusively on the term "sex", then it will forget that "'[t]he question isn't just what 'sex' mean[s], but what [a statute barring sex discrimination] says about it.'" *See* Pls.' Resp. [Doc. No. 53] at 27 (citing *Bostock*, 140 S. Ct. at 1739). However, given the text of Title IX, which is different than that of Title VII, the definition of "sex" *is* determinative. Title IX explicitly allows schools to "maintain[] separate living facilities" and "separate toilet, locker room, and shower facilities" for the "different sexes." Thus, if the term "different sexes" is referring to different *biological* sex, then Oklahoma's law is perfectly in sync with Title IX.[11]

At the time Title IX was enacted, the ordinary public meaning of "sex" was understood to mean the biological, anatomical, and reproductive differences between male and female. It is up to Congress to change that meaning, not this Court.

---

[11] Plaintiffs repeatedly argue that the "meaning of 'biological sex' is a politicized one, not one grounded in science." Pls.' Resp. [Doc. No. 53] at 12 n.3. Admittedly, other circuits have reached the conclusions advocated for by Plaintiffs. *See Grimm*, 972 F.3d at 618 (stating that the school board "rel[ied] on its own discriminatory notions of what 'sex' mean[t]" because it defined "sex" by referring to the anatomical and physiological differences between males and females); *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1048 (7th Cir. 2017) (concluding that biological sex is merely a "sex-based stereotype[]"). However, for the reasons stated previously and absent binding precedent to the contrary, the Court rejects the view that gender identity is synonymous with biological sex or that biological sex is a stereotype.

Accordingly, S.B. 615 does not violate Title IX because it falls into one of the statute's narrow exceptions allowing schools to require that the different biological sexes use different living facilities such as restrooms.

### C. Granting State Defendants' Motion to Dismiss is proper.

Plaintiffs contend that dismissal is improper because this case involves factual disputes that require discovery before they can be resolved. However, "if, as a matter of law, the complaint . . . is insufficient, a motion to dismiss is proper." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1100 (10th Cir. 2017) (internal quotations and citation omitted). "If such a dismissal operates on the merits of the complaint, it will also ordinarily be entered with prejudice." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

Plaintiffs' complaint makes clear that Bridge's biology is that of a female, Miles's biology is that of a female, and Stiles's biology is that of a male. And, as explained above, the dispositive fact for each of Plaintiffs' claims is their biological sex. No fact-finding conducted by the Court could change this reality or make Plaintiffs' claims cognizable. *See Teigen v. Renfrow*, 511 F.3d 1072, 1075 (10th Cir. 2007) (affirming 12(b)(6) dismissal of an equal protection claim). Therefore, Plaintiffs' claims are legally insufficient, and they have failed to state a claim for which relief may be granted.

## IV. CONCLUSION

For these reasons, and absent binding Supreme Court or Tenth Circuit precedent to the contrary, the Court concludes that Plaintiffs have failed to state a claim on which relief can be granted. Consequently, the Court GRANTS State Defendants' Motion to

Dismiss [Doc. No. 47] and DISMISSES Plaintiffs' complaint [Doc. No. 1] as to the State Defendants with prejudice. In light of the Court's dismissal of State Defendants, the Court denies as moot Plaintiffs' Motion for Preliminary Injunction [Doc. No. 24] as to the State Defendants.[12]

IT IS SO ORDERED this 12th day of January 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[12] In light of the above analysis, it is clear that Plaintiffs cannot show a substantial likelihood of success on the merits for their Motion for Preliminary Injunction. Since such a showing is required to obtain a preliminary injunction, the Court refrains from addressing the other necessary factors and denies Plaintiffs' Motion for Preliminary Injunction [Doc. No. 24] as to the remaining defendants. *See State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 890 (10th Cir. 2021) ("When the failure to satisfy one factor is dispositive, a court need not consider the other factors.").